IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EBONY TATE, for herself and on behalf of her minor children, E'MONIE BOOTH, LA'NIYA BOOTH, LEGEND BOOTH and LAKAI'YA BOOTH; and CYNTHIA EASON, | ) ) ) ) ) ) | |
| Plaintiffs, | ) | Case No. 18-cv-07439 |
| v. | ) ) | |
| THE CITY OF CHICAGO; Chicago police officers PATRICK BOYLE (star #975); JENNIFER BURMISTRZ (star #14060); MATTHEW EVANS (star 5815); MICHAEL FLEMING (star #15085); JOHN FOERTSCH (star #9195); MICHAEL HIGGINS (star #3766); PATRICK KENNEDY (star #14414); JEFFREY LAWSON (star #8353) LIEUTENANT JAMES D. CASCONE (star #560); S. ANTISUK (star #6607); BARDSLEY (star #13848); CUOMO (star #5853); SGT. HROMA (star #1729); JAMES (star #4308); KILPONEN (star #12854); LINKER (star #12858); LOPEZ (star #11987); MCCALLUM (star #16333); PANTANO (star #11886); ZENERE (star #17319); and unknown Chicago police officers, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Charles P. Kocoras<br><br>Magistrate Judge Jeffrey T. Gilbert<br><br>Jury Demanded |
| Defendants. | ) ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
JOINT MOTION TO BIFURCATE AND STAY COUNT I**

*Plaintiffs' Counsel*
Al Hofeld, Jr.
Law Offices of Al Hofeld, Jr., LLC
30 N. LaSalle Street, #3120
Chicago, Illinois 60602
(773) 241-5844
Fax - 312-372-1766
al@alhofeldlaw.com

Plaintiffs respectfully submit the following response in opposition to defendants' joint motion to bifurcate and stay plaintiffs' count I *Monell* claim ("defendants' motion"):

**I.     INTRODUCTION**

At stake in plaintiffs' *Monell* claim, brought solely by the minor children, is discovery into and City's liability for the Chicago Police Department's ("CPD") pattern and practice of using excessive force against young children.  The U. S. Department of Justice ("DOJ") 2017 investigative report concluded that CPD has a pattern or practice of using "excessive less lethal force against children" (https://www.justice.gov/opa/file/925846/download, at 34)(last checked April 30, 2019).  Similarly, the 2016 mayoral-appointed Police Accountability Task Force ("PATF") report concluded:  "The existing relationship between CPD and youth – particularly youth of color – can be described as antagonistic, to say the least"; youth "are also being mistreated by those who have sworn to protect and serve them"; and "[m]ost CPD officers are not adequately trained or equipped to interact with youth." (https://chicagopatf.org/wp content/uploads/2016/04/PATF_Final_Report_4_13_16-1.pdf, at 54-55)(last checked April 30, 2019).  However, in the wake of these conclusions, CPD has made zero reforms to address this problem, with the result that plaintiffs E'monie, La'Niya, Legend and LaKai'ya Booth were injured on August 9, 2018.  (Third Amended Complaint ("TAC"), ¶¶ 179a-e and 136-164).

In this case, plaintiffs allege that CPD SWAT officers needlessly pointed assault rifles in the faces of the four children (who are ages 4, 8, 11 and 13) as well as at their mother and grandmother in front of the children's eyes when officers entered their apartment, the wrong residence, to execute a search warrant for someone with whom they had no connection whatsoever.  (TAC, ¶¶ 33-71, 89).  Defendant officers did not arrest or charge any plaintiff nor find any contraband in plaintiffs' home; rather, the target of the warrant and his gun were found

1

in another building. (Id. ¶¶ 90-96). Plaintiffs were innocent victims of careless policing and excessive force, and the children are now traumatized as the result. (Id. ¶¶ 109-128).

By bringing a *Monell* claim, plaintiffs are acting as a "private attorney general" vindicating the underlying Congressional intent for the Civil Rights Acts. *Cadiz v. Kruger*, 2007 U. S. Dist. LEXIS, 88458, at *26-32 (N. D. Ill. Nov. 29, 2007) (*quoting City of Riverside v. Rivera*, 477 U. S. 561, 577 (1986)). Section 1983 "is designed to provide compensation for injuries arising from the violation of legal duties, and thereby, of course, *to deter future violations*" (emphasis added). *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U. S. 687, 727 (1999); *See also City of Riverside v. Rivera,* 477 U. S. 561, 574-76 (1986); and *Owen v. City of Independence*, 445 U. S. 622, 627 (1980). As set forth below, plaintiffs' narrowly-tailored, *Monell* claim is highly important to them and to the public interest. (Declaration of Ebony Tate attached as <u>Appendix A</u>). The *Monell* discovery plaintiffs seek is limited and moderate. And plaintiffs' *Monell* claim does not depend on the outcome of their claims against the individual officers.

As this Court recently held, defendants' motion to bifurcate is an attempt "to achieve a *de facto* dismissal of the *Monell* claim" in order to avoid any discovery or merits adjudication. *Gomez v. Guevara*, 18-cv-03335, Dkt. 65, at pp. 9-10 (N. D. Ill. April 8, 2019) (attached as <u>Appendix B</u>). The City's proposed "Limited Consent" judgment is illusory, "'agreeing to pay a judgment against its officers that the City may be statutorily or contractually obligated to pay anyway.'" Id. at 10 (*quoting Cadiz v. Kruger*, 2007 U. S. Dist. LEXIS 88458, *34 (N. D. Ill. Nov. 29, 2007)).[1] Most objectionable, City's limited consent judgment "attempts to circumvent the public policy goals of *Monell* claims by insulating the City from litigating and accepting

---

[1] The so-called "consent" is also not authorized by the Federal Rules of Civil Procedure and is, therefore, procedurally deficient. *Swanigan v. City of Chicago*, 775 F. 3d 953, 959-62 (7th Cir. 2015).

responsibility if their practices and policies result in constitutional injuries." *Giles v. Ludwig*, 2013 U. S. Dist. LEXIS 172086, *10, note 1 (N. D. Ill. Dec. 6, 2013). To this end, defendants' motion essentially seeks to take away plaintiffs' choice of theories, claims and how to proceed on their claims. *Cadle v. City of Chicago*, 2015 U. S. Dist. LEXIS 148344, *12 (N. D. Ill. November 2, 2015). If City's motion to bifurcate is granted, "it effectively deprives [plaintiffs] of [their] right and ability to be the 'master of [their] complaint and proof,' and to proceed, as is guaranteed by the Supreme Court and 42 U. S. C. § 1983, on [their] independent *Monell* claim against the City." *Estate of McIntosh v. City of Chicago*, 2015 U. S. Dist. LEXIS 116780, *33-34 (N. D. Ill. Sept. 2, 2015). It is plaintiffs, not defendants, who are entitled to be the master of their complaint and to pursue claims, even for minimal pecuniary award. *Cadiz v. Kruger*, 2007 U. S. Dist. LEXIS, 88458, at *19-20.[2]

## II. PROCEDURAL POSTURE

Plaintiffs have served their first and second sets of discovery requests, including *Monell* requests, on all defendants (attached as Appendices C and D, respectively). Defendants' standard motion to bifurcate and City's offer of limited consent judgment seek, as usual, to bifurcate and postpone discovery, litigation and trial on plaintiffs' *Monell* claim. (Motion at 2). Written *Monell* discovery is stayed pending the Court's ruling on the motion.

## III. APPLICABLE STANDARDS FOR DECISION

There is a recent and growing body of precedent in this district denying bifurcation in § 1983 cases. *Gomez v. Guevara*, 18-cv-03335, Dkt. 65 (N. D. Ill. April 8, 2019)(Kocoras, J.); *Mendez v. City of Chicago*, 18-cv-5560 (N. D. Ill. Feb. 20, 2019)(transcript of bench ruling

---

[2] *See also Rodriguez v. City of Chicago*, 2018 U. S. Dist. LEXIS 120594, *10 (N. D. Ill. July 19, 2018); *Cadle v. City of Chicago*, 2015 U. S. Dist. LEXIS 148344, at *9-10; *Warren v. Dart*, 2012 U. S. Dist. LEXIS 70792, *6 (N. D. Ill. 2012); and *Terry v. Cook County Dep't of Corr.*, 2010 U. S. Dist. LEXIS 68623, at *5 (N. D. Ill. July 8, 2010).

attached as Appendix E).³ In *Mendez*, a pending case with the same *Monell* claim against the City, Judge Lee denied a nearly identical motion to bifurcate, accepting the main arguments plaintiffs make below. Id.

While Fed. R. Civ. Pro 42(b) authorizes separate trials, this rule "is read in light of the overarching policy principle behind the Federal Rules, which seeks the just, speedy, and inexpensive resolution of every trial. Accordingly, because bifurcation risks additional delay, it has remained the exception and not the rule." *A. L Hansen Mfg. Co. v. Bauer Products, Inc.*, 2004 WL 1125911, at *2 (N. D. Ill. 2004); *See also Real v. Bunn-O-Matic Corp.*, 195 F. R. D. 618, 620 (N. D. Ill. 2000)("The piecemeal trial of separate issues in a single lawsuit is not to be the usual course"); and *Awalt v. Marketti*, 2012 WL 1161500, at *10 n. 2 (N. D. Ill. 2012)("The Court has looked at every decision in this District involving bifurcation of Monell claims… since the Seventh Circuit decided Cook County Sheriff's Dept. It is clear that the weight of authority holds that bifurcation is now heavily disfavored.") (internal citations omitted).

Despite defendants' "one size fits all" motion, a court's determination whether to grant or deny bifurcation is a case-by-case decision, looking at the specific facts and claims in each case. Id.; *see also, Mendez v. City of Chicago*, 18 C 5560, at p. 2 (N. D. Ill. Feb. 20, 2019) (Appendix E); and *Estate of McIntosh v. City of Chicago*, 2015 U. S. Dist. LEXIS 116780, at *7.

Finally, as the Seventh Circuit has made clear, bifurcation of the *Monell* claim in § 1983 actions expedites the disposition of a case *only* where the resolution of the claims against the

---

³ *See also Rodriguez v. City of Chicago*, 2018 U. S. Dist. LEXIS 120594 (N. D. Ill. July 19, 2018); *Scott v. Bunich*, 2018 U. S. Dist. LEXIS 53834 (N. D. Ill. March 30, 2018)*; Bonds v. City of Chicago*, 2018 U. S. Dist. LEXIS 41683 (N. D. Ill. March 14, 2018); *Estate of Loury v. City of Chicago*, 2017 U. S. Dist. LEXIS 60459 (N. D. Ill. April 20, 2017); *Cadle v. City of Chicago*, 2015 U. S. Dist. LEXIS 148344 (N. D. Ill. November 2, 2015); *Estate of McIntosh v. City of Chicago*, 2015 U. S. Dist. LEXIS 116780 (N. D. Ill. Sept. 2, 2015); *Giles v. Ludwig*, 2013 U. S. Dist. LEXIS 172086 (N. D. Ill. Dec. 6, 2013); *Warren v. Dart*, 2012 U. S. Dist. LEXIS 70792 (N. D. Ill. 2012).           .

individual defendant officers will likely end the entire case. *Swanigan v. City of Chicago*, 775 F. 3d 953, 963 (7th Cir. 2015); *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 895 (N. D. Ill. 2000); and *Bonds v. City of Chicago*, 2018 U. S Dist. LEXIS 41683, at *7.

## IV. STRUCTURE OF PLAINTIFFS' *MONELL* AND NON-*MONELL* CLAIMS: THE *GRAVAMEN* OF LIABILITY AND HARM IS EXCESSIVE FORCE AGAINST THE CHILDREN

Defendants' motion to bifurcate glosses over the unique structure of plaintiffs' claims. For purposes of deciding whether to bifurcate, this structure matters. Count I, plaintiffs' *Monell* claim, is asserted solely by the child plaintiffs and is predicated exclusively on the use of excessive force against children. (TAC, ¶¶ 170-194, especially ¶¶ 187-194, which is sub-titled, "The City of Chicago's *De Facto* Policies Resulted in Violations of Plaintiffs' - Especially E'monie, La'Niya, Legend and LaKai'ya's – Constitution Right to be Free of Unnecessary or Excessive Force"). All of the *Monell* polices and customs alleged in count I relate solely to the use of excessive force against children (Id. ¶¶ 171-186), and plaintiffs' *Monell* claim is not in any way based on and does not incorporate by reference the factual allegations that are the basis for plaintiffs' illegal search and false arrest claims against the individual defendants in remaining counts II – VIII. (Id. ¶¶ 170-194; ¶¶ 195 - 269). ¶ 170 of count I incorporates only those factual allegations that constitute or are the background for excessive force. In contrast to plaintiffs' *Monell* claim, counts II – III, the § 1983 counts against the individual defendants, are brought by all plaintiffs for unlawful search and false arrest. Plaintiffs' complaint does not contain a separate § 1983 count against the defendant officers for excessive force.[4]

---

[4] Because they wish to proceed on their *Monell* count, plaintiffs did not include in their complaint a separate count for excessive force against the defendant officers. If the court is inclined to bifurcate, then plaintiffs may amend to add a count for excessive force against the individual defendants. While a reference to excessive force is included in plaintiffs' count III, § 1983 unreasonable manner of entry and search, excessive force is not the thrust of that claim. Plaintiffs are willing to strike that reference in count III and dismiss counts V and VII if necessary in order to proceed on their *Monell* claim.

5

Finally, excessive force is not only the predicate for plaintiffs' *Monell* claim but also the *gravamen* of plaintiffs' complaint. The TAC's introduction (¶¶ 1-12), the thematic subtitles in the fact section (at pp. 7, 10, 23, and 24) and the fact that the first count is the children's *Monell* count, should make it clear that, at least to the plaintiffs, this is primarily an excessive force case. Similarly, by far the most serious and lasting injury alleged to have been sustained by plaintiffs is the psychological harm to the children from officers' excessive force against them and against their mother and grandmother, which the children witnessed. (TAC, ¶¶ 136-169).

> **A. Plaintiffs' *Monell* Claim is Narrowly Drawn and Laser-Focused on *the Absence* of CPD Policy and Reform to Prevent Officer Excessive Force Against Young Children**

The heart of plaintiffs' *Monell* policy claim is that the City fails to protect young children from officers' use of excessive force, particularly during the execution of residential search warrants. (TAM, ¶¶ 171, 176, 181). The plaintiffs asserting the *Monell* claim are limited to the four children. (Id. ¶ 170). Moreover, where, as here, plaintiffs allege that City's *Monell* practices are deficient in a very specific and narrow way, *Monell* discovery will not be a significant burden. *Wilson v. City of Chicago*, 2008 U. S. Dist. LEXIS 60658, at *6-7 (N. D. Ill. July 24, 2008) (allegation that police training to deal with mentally ill people was deficient). For instance, plaintiffs' *Monell* claim focuses prominently on *the absence of* provisions in CPD policy, supervision, and training requiring officers to take steps to avoid the use of excessive or unnecessary force against and in the presence of children. (TAM, ¶¶ 172-174). Plaintiffs' allegation of a failure to investigate and discipline officers is limited to instances of excessive force against children. (Id. ¶ 175). Plaintiffs' allegations of deliberate indifference are limited to City's awareness of specific conclusions contained in publicly available investigative reports and City's subsequent failure to make specifically enumerated reforms addressing those conclusions

6

of a pattern and practice of excessive force against children. (Id. ¶¶ 177, 179a-e and 186). Plaintiffs' also allege that City has specific policies that encourage SWAT officers to use excessive force against children and that City has a code of silence pursuant to which fellow SWAT officers did not report those who pointed their guns at the children. (¶¶ 180, 182-183).

V.     ARGUMENT

    A.     The *Monell* Discovery Plaintiffs Seek is Narrow, Specific and Moderate

Contrary to City's speculation (motion at 5, 6)[5], the discovery plaintiffs seek is narrowly focused and moderate, concentrating on the specific ways in which City's policies and practices are deficient. (*See* requests for admission 7-23 and requests for production 64-93 in Appendices C and D). Here there is no reason to believe that plaintiffs' *Monell* discovery will be a fishing expedition. *Wilson v. City of Chicago*, 2008 WL 4874148, at *2. Courts are now skeptical of the City's exaggerated, non-specific and speculative claims about the high costs of *Monell* discovery, like City's assertion here, and routinely reject them. *Rodriguez v. City of Chicago*, 2018 U. S. Dist. LEXIS 120594, at *11.[6] Where a plaintiff makes representations to the Court that his *Monell* discovery will be moderate and this allays the court's concern about overbreadth, courts usually the motion to bifurcate discovery. *Estate of Loury v. City of Chicago*, 2017 U. S. Dist. LEXIS 60459, at *11; *Cadle v. City of Chicago*, 2015 U. S. Dist. LEXIS 148344, at *5; *Allison v. Gallagher*, 2012 U. S. Dist. LEXIS 144138, *4-5 (N. D. Ill. October 5, 2012).

---

[5] For example, there is no basis in plaintiffs' TAC or discovery requests for defendants' fabricated assertion on page 6 of their motion that plaintiffs will seek to depose witnesses from the Mayor's office or the City Council.

[6] *See also Scott v. Bunich*, 2018 U. S. Dist. LEXIS 53834, at *19-20; *Bonds v. City of Chicago*, 2018 U. S. Dist. LEXIS 41683, at *12; *Cadle v. City of Chicago*, 2015 U. S. Dist. LEXIS 148344, at *4-5; and *Cadiz v. Kruger*, 2007 U. S. Dist. LEXIS 88458, at *10.

Consistent with their narrowly drawn *Monell* claim in this case, the child plaintiffs' discovery: foregoes discovery of a generalized failure to train, supervise, intervene, investigate and discipline officers for the use of excessive force (against adults), except in limited instances where potential evidence may not distinguish between adults and children; foregoes discovery of a generalized failure to train, supervise, intervene, investigate and discipline officers for *all* misconduct involving children; focuses largely on confirming the absence of CPD policies and training requiring officers to take steps to avoid using force against children; relies heavily on publicly available documents, so as not to overly burden the City; and is limited to a six-year period (the proposed "*Monell* period"). Stated affirmatively, plaintiffs seek *Monell* discovery of just three, discrete customs or policies as follows: 1) the existence of a custom of excessive force against young children in the six years preceding the incident date of August 9, 2018; 2) a failure to investigate and discipline such allegations/incidents; and 3) an absence during this period of official policy and training to proscribing ore discouraging excessive force against or in the presence of children.

Plaintiffs' first set of discovery requests, the vast majority of which are non-*Monell* requests, focus in laser beam fashion on these three customs. (*See* Appendix C). Moreover, I permitted to do Monell discovery, plaintiffs will conduct discovery in the following ways that limit the City's discovery burden. To discover the existence of the first custom above, a pattern of excessive force against young children, plaintiffs will rely primarily on key conclusions from a few pages of the publicly available DOJ and PATF reports, with or without witnesses. Because these reports are publicly available, this would not burden the City. Plaintiffs will also seek discovery of a time-limited set of CPD electronic data for the number of citizen complaints of 1) excessive force and 2) home searches where a child was a complainant, victim or witness. These

are straightforward searches performed on CPD's electronic complaint databases that are standard in *Monell* cases. In 2016, plaintiffs' and City's counsel did this precise search for a five-year period in *Simmons v. City of Chicago*, and City is *currently* performing this search for a five-year period in *Mendez v. City of Chicago, et al*. So, it need only do the same search again here. *Bonds v. City of Chicago*, 2018 U. S. Dist. LEXIS 41683, *12 (N. D. Ill. March 14, 2018).

      To discover evidence of the second custom, a failure to investigate and discipline complaints of excessive force against young children, plaintiffs will rely on key conclusions from the accountability sections of the DOJ and PATF reports, not document production from CPD. Using the same electronic complaint data search results described above, plaintiffs will also analyze CPD data points such as the number of child excessive force complaints filed, the number investigated, the number sustained/not sustained, and the number where discipline was imposed/reduced/not served. In order to show examples of City's failure to investigate and/or discipline excessive force against children, plaintiffs will discover, from a review of "face sheets" (1-page summaries of officer complaint register ("CR") files), some summary digest reports and a limited number of full CR investigative files, a small number of instances, factually similar to this case, in which officers were alleged or found to have used excessive force against young children, and the ensuing investigation, finding or discipline was non-existent, inadequate or flawed.

      Third, to discover the absence of official policy to protect children from unnecessary use of force, plaintiffs will conduct confirmatory discovery that CPD lacks the policies and training curriculum set forth below. Current versions of CPD written policies (regarding use of force, search warrants, body cameras) are publicly available on the internet in searchable format, so

9

City would only have to produce any prior versions six years before the incident. Plaintiffs' discovery will confirm that City does not have:

- explicit officer training to avoid the use of force against and in the presence of children whenever possible and to use a trauma-informed approach to policing children and their families; as part of the procedure for obtaining residential search warrants, explicit officer training to determine whether children live in the targeted residence, to determine when they are likely to be away from home, to execute warrants at times when children are not likely to be home, and training in de-escalation for instances when officers enter a residence and unexpectedly encounter children;

- a use-of-force policy that explicitly requires officers to avoid using force against or in the presence of children whenever possible; and a requirement to use a trauma-informed approach to policing children and their families in situations when some force may be necessary, especially during the execution of residential search warrants; and

- as part of the procedure for obtaining residential search warrants, an explicit requirement to determine if children live in the residence and, if so, to determine when they will be away from the residence; as part of the policy for executing residential search warrants, an explicit requirement for officers to take precautions to avoid traumatizing children when entering residences, such as executing warrants at times when children are not likely to be home and de-escalation of tactics when officers enter and unexpectedly encounter children;

Finally, plaintiffs seek confirmatory discovery that at least one policymaker, such as the CPD Superintendent, was aware of DOJ's and PATF's conclusions and recommendations for reform regarding excessive force and children and that CPD nevertheless did not make any of the

10

reforms enumerated above before the incident date, including in the Consent Decree. Again, both CPD reforms (if announced, as they usually are) and the Consent Decree are publicly available documents and, therefore, impose no burden on the City. Relatedly, plaintiffs would seek to confirm that CPD has rejected offers of training from independent agencies that provide 1) officer training in trauma-informed policing with children and 2) consulting services to assist departments in formulating use-of-force policies that are cognizant of children.

For oral discovery, plaintiffs seek six or less short depositions of CPD/City witnesses on the topics above in order to discover City's positions on plaintiffs' evidence. Plaintiffs will also ask defendant officers some *Monell*-related questions at their depositions regarding their training and their understanding of and compliance with CPD policies. Plaintiffs will likely have two *Monell* experts, one a police practices expert who they will also use for non-*Monell,* police practice issues as well. Based on the discovery outlined above, plaintiffs' experts would render opinions on plaintiffs' three, discrete *Monell* customs. Depending on defendants *Monell* rebuttal evidence, if any, plaintiffs reserve the right to broaden the scope of *Monell* discovery proportionally.

      **B.**    **Defendants' Discovery Proposal is Impractical**

Defendants' proposed stay of *Monell* discovery would realize cost savings "only if one assumes that the parties are never required to go back and conduct *Monell* discovery at some later date." *Cadiz v. Kruger*, 2007 U. S. Dist. LEXIS 88458, at *13 (N. D. Ill. Nov. 29, 2007). For reasons addressed below, this is not a reliable assumption. Moreover, City ignores the fact that there is significant, factual overlap in the witnesses, likely experts, and evidence that would be involved in each phase of bifurcated litigation. This overlap could create double work for the parties in terms of taking depositions and soliciting trial testimony. *Gomez v. Guevara*, 18-cv-

11

03335, Dkt. 65, at 8-9 (Appendix B). For example, plaintiffs need to ask defendant officers about their understanding of and compliance with CPD use-of-force and search warrant policies, which do not require officers to avoid force against young children. In a bifurcated case, plaintiffs would need to depose them twice and call them as witnesses in both trials. This would decrease, not increase, judicial economy.

Finally, as defendants conceded (motion at 5), in this case discovery will be substantial with or without discovery into the *Monell* claim, so staying the latter would yield only marginal savings of time an expense. *Cadiz v. Kruger*, 2007 U. S. Dist. LEXIS, 88458, at *13. For example, plaintiffs will still disclose the same number of liability and damages experts, which means defendants likely will as well. In fact, fewer depositions are needed on plaintiffs' *Monell* claim than on their claims against the officers, given that an entire SWAT team, gun team and (according to some sources) the FBI participated in obtaining and executing the search warrant for plaintiffs' apartment.[7] If the Court is inclined to make some bifurcation, then under these circumstances a greater savings of the court's and parties' resources would result if the Court stayed the individual claims and ordered discovery and trial on the *Monell* claim first. *Simmons v. City of Chicago*, 2017 U. S. Dist. LEXIS 222887, *3-4 (N. D. Ill. Aug. 29, 2017).

    **C.**    **Bifurcation Would Waste Judicial Resources Because Plaintiffs'** ***Monell*** **Claim Does Not Depend on the Outcome of their Claims Against the Individual Defendants**

        **1.**    **The Structure of Plaintiffs' Claims Favors Unitary Discovery and Trial**

---

[7] Although plaintiffs have named 20 defendant officers (because it was not yet clear which officers were actually involved in obtaining the search warrant for plaintiffs' apartment and in making the final decision to execute it or which officers pointed guns at plaintiffs), plaintiffs do not expect to depose all of them, and they *do* expect to dismiss half or more of them before discovery ends. Plaintiffs believe that only a handful of officers were involved in obtaining the warrant and in pointing guns at plaintiffs. Plaintiffs have every financial and time-management interest in keeping discovery contained.

Given the unique structure of plaintiffs' claims in this case and the fact that defendant officers assert qualified immunity defenses, bifurcation would not only not expedite the case but would prolong and complicate discovery and require two, largely duplicative trials. Under defendants' proposal, plaintiffs' *Monell* claim would not be ready for trial when their claims against the officers go to trial.

First, defendants' motion simply glosses over the fact that the children's *Monell* claim is factually distinct from plaintiffs' § 1983 claims against the individual officers. (Motion at 4-5). Based on this glaring omission, defendants argue, falsely, that plaintiffs' *Monell* claim fits the *Swanigan* mold for bifurcation when it does not. In this case, City's liability on the *Monell*/excessive force claim is not dependent on the outcome of plaintiffs' illegal search and false arrest claims against the individual officers. Thus, plaintiffs' search warrant and false arrest claims against defendant officers could all fail, and plaintiffs' *Monell* claim would still pend, unresolved. That is to say, even if all of the claims against the officers were resolved in their favor at summary judgment or trial, the case would not end: plaintiffs' *Monell* count, the only count premised on excessive force, would still be left. "A stay of *Monell* discovery pre-supposes that the *Monell* claim never will be tried, and that is not necessarily an appropriate assumption." *Cadle v. City of Chicago*, 2015 U. S. Dist. LEXIS 148344, at *7. How then would the excessive force allegations in plaintiffs' *Monell* claim be tested at summary judgment or trial if there's no claim for excessive force against the officers?

    **2.    Defendant Officers' Assertion of Qualified Immunity Creates an Unresolved "Liability Gap" That Requires Denial of Defendants' Motion**

Second, defendants' fundamental thesis that bifurcation makes sense because an adverse finding as to plaintiffs' individual claims would necessarily dispose of the children's *Monell*

claim "is not necessarily accurate" for an additional reason. *Cadle v. City of Chicago*, 2015 U. S. Dist. LEXIS 148344, at *6-7. In *Thomas v. Cook County Sheriff's Dept*., 604 F. 3d 293, 305 (7th Cir. 2009), the Seventh Circuit rejected the City's argument and explained that there is no hard and fast rule that individual officer liability is always required in order to find liability under *Monell*. The Court found that, "a municipality may be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." (Id.). In other words, a jury could find the defendant officers who carried out the City's policies not liable by reason of their defense of qualified immunity but still hold the City liable by finding that those policies caused the violation of plaintiffs' constitutional rights. This is a *Thomas*-type case.

In this case, *all defendant officers have asserted qualified immunity as an affirmative defense,* (Defendant Officers Answer to Plaintiffs' Third Amended Complaint, Dkt. 72, p. 66, affirmative defense #1), and they have not offered to waive it. Thus, in a bifurcated case, if defendant officers are found immune at summary judgment or trial, then there would be no defendant left to try the case against, and bifurcation would not avoid a second, duplicative trial. *Simmons v. City of Chicago*, 14-cv-09042 (N. D. Ill. June 29, 2015) (transcript of bench ruling on City's motion to bifurcate attached as Appendix F)("Now there's nobody left… There's no party left to try the case against. It's not workable"); *see also Estate of McIntosh v. City of Chicago*, 2015 U. S. Dist. LEXIS 116780 at *27-28.

Courts in this District now analyze the propriety of bifurcation bearing in mind that a municipal policy can cause a constitutional deprivation even if a jury finds the individual officers not liable. *See e.g.*, *Gomez v. Guevara*, 18-cv-03335, Dkt. 65, at 6-8 (Appendix B). In this case, not all of plaintiffs asserted *Monell* customs would require clear, official misconduct on the part of the individual defendants. For example, an officer who enters a residence to execute a search

14

warrant when children are present and points his gun at all of the occupants, including young children, may be found to have simply followed the City's current training and policies, which do not require an officer obtaining or executing a search warrant to determine beforehand if children live in the residence, to determine when children are likely to not be home, to make an effort to execute the warrant at a time when the children are not likely to be home, and to de-escalate officers' usual, forceful entry tactics if they unexpectedly encounter young children. Absent a clear prohibition in CPD training and policy against pointing guns at young children when entering a residence to execute a search warrant, officers at least have a qualified immunity argument to make to the jury. Thus, because here City may be held liable under plaintiffs' *Monell* claim without a finding that the individual officers engaged in clearly proscribed conduct, bifurcation would not serve judicial economy. *Gomez v. Guevara*, 18-cv-03335, Dkt. 65, at 6-8 (Appendix B).[8] Thus, it is both "not necessarily accurate" and "premature" for defendants to assert there can be no *Monell* liability in the absence of underlying individual liability. *Cadle v. City of Chicago*, 2015 U. S. Dist. LEXIS 148344, at *6-7.

### D. Plaintiffs Would Suffer Prejudice from Bifurcation: It Would Prevent Them from Pursuing the Most Important Relief to Them

Defendants argue that the only value in plaintiffs' *Monell* claim is monetary, misstate that plaintiffs only seek monetary damages, and ignore plaintiffs' prayer for injunctive relief. (Motion at 7; TAC, ¶¶ 165-69 and p. 46). However, plaintiffs have important, public interest motivations and objectives – such as protecting other children against unnecessary and excessive

---

[8] Moreover, defendants' argument that an adverse ruling on the individual claims would dispose of the Monell claim rests on *City of Los Angeles v. Heller*, 475 U. S. 796, 799 (1986), (motion at p. 4), but in *Heller* jurors were not instructed on any affirmative defense that the officer may have asserted, and they were not presented with any qualified immunity issues. *Thomas v. Cook County Sheriff's Dept.*, 604 F. 3d 293 at 304. In fact, few, if any, of the decisions City cites in favor of bifurcation were decided post-*Thomas*.

15

force - that would be furthered by a judgment holding the City liable on the *Monell* claim. (Appendix A, at 2-3). Courts acknowledge that, even if there are no additional financial benefits to maintaining a *Monell* claim, there are "legitimate" and "critical reasons" why plaintiffs may wish to do so. *Estate of Loury v. City of Chicago*, 2017 U. S. Dist. LEXIS 60459, at *15-17; see *supra*. A judgment against the City can be a "catalyst for a change" that encourages the City to reform the practices that led to constitutional violations and to alert citizens to the issue. *McIntosh v. City of Chicago*, 2015 U. S. Dist. LEXIS 116780, at *34-35. It can also deter future official misconduct whereas mere monetary compensation may not. *Giles v. City of Chicago*, 2013 U. S. Dist. LEXIS 172086, at *8. Such relief provides non-monetary benefits not only to plaintiffs but to society generally. *Cadle v. City of Chicago*, 2015 U. S. Dist. LEXIS 148344, at *10. A verdict against the City, as opposed to mere "rogue" officers, can shine a light on unconstitutional policies and could achieve future deterrence and reform in police practices with children. *Medina v. City of Chicago*, 100 F. Supp. 2d 893, at 896-97. Only a verdict against the City could achieve these important, non-economic objectives. M*edina v. City of Chicago*, 100 F. Supp. at 896; *Cadiz v. Kruger*, at *32 (bifurcation would render these possible benefits "a dead letter").

Plaintiffs included a *Monell* claim because they seek the public interest in holding the City accountable for its actions and inaction in failing to protect young children against police officers' excessive force. Plaintiffs feel strongly about their *Monell* claim. (Appendix A). While they understand they could win money damages from the officers without pursuing their *Monell* claim, they want to be a voice for reform and deterrence. (Id.).

In this case, the public interest in preventing or reducing future violations is great. If excessive force is unconstitutional when used against adults, it is far more egregious and harmful

16

when directed at innocent and defenseless young children who, as a result, can be emotionally scarred for life. This makes the non-economic incentives in this case great and argues in favor of allowing plaintiffs to proceed on their *Monell* claim.

    E.    **Defendants' Remaining Arguments for Bifurcation Also Fail**

Defendants also argue that evidence presented at a joint trial would cause prejudice to defendants. (Motion at 8-11). This argument made at this at this stage is universally recognized as being premature when neither party nor the court "has the least idea" what the evidence at trial will be. *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 897.[9] The time to evaluate the prejudice issue is shortly before trial. *Bonds v. City of Chicago*, 2018 U. S. Dist. LEXIS 41683, at *15. In any event, such potential prejudice can be addressed through the use of motions in limine and limiting instructions. *Gomez v. Guevara*, 18-cv-03335, Dkt. 65, at 4 (Appendix B); and *Cadle v. City of Chicago*, 2015 U. S. Dist. LEXIS 148344, at *9. In the meantime, "[d]iscovery proceeding simultaneously on all claims does not prejudice defendants…." *Estate of Loury v. City of Chicago*, 2017 U. S. Dist. LEXIS 60459, at *13-14; *see also Cadiz v. Kruger*, 2007 U. S. Dist. LEXIS, 88458, at *16.

**VI.**    **CONCLUSION**

For at least the reasons stated above, the Court should deny in full City's motion to bifurcate issues.

                                              Respectfully submitted,

                                              s/Al Hofeld, Jr.
                                              Al Hofeld, Jr.

---

[9] *See also Rodriguez v. City of Chicago*, 2018 U. S. Dist. LEXIS 120594, at *12; *Scott v. Buncich*, 2018 U. S. Dist. LEXIS 53834, at *21; *Estate of Loury v. City of Chicago*, 2017 U. S. Dist. LEXIS 60459, at *9-10; and *Cadle v. City of Chicago*, 2015 U. S. Dist. LEXIS 148344, at *9.

17

*Plaintiffs' Counsel*
Al Hofeld, Jr.
Law Offices of Al Hofeld, Jr., LLC
30 N. LaSalle Street, #3120
Chicago, Illinois 60602
(773) 241-5844
Fax - 312-372-1766
al@alhofeldlaw.com

### NOTICE OF FILING AND CERTIFICATE OF SERVICE BY ELECTRONIC MEANS

    I, Al Hofeld Jr., attorney for plaintiffs, hereby certify that on April 30, 2019, filing and service of the foregoing ***Plaintiffs' Response in Opposition to Defendants' Joint Motion to Bifurcate and Stay Count I,*** was accomplished pursuant to ECF as to Filing Users, and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.


                                                /s/ Al Hofeld, Jr.
                                                Al Hofeld, Jr.

Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
30 N. LaSalle Street, Suite 3120
Chicago, Illinois 60602
(773) 241-5844
Fax - 312-372-1766
al@alhofeldlaw.com