# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EBONY TATE, for herself and on behalf of her minor children, E'MONIE BOOTH, LA'NIYA BOOTH, LEGEND BOOTH and LAKAI'YA BOOTH; and CYNTHIA EASON,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE CITY OF CHICAGO, *et al*.,<br><br>*Defendants*. | Case No. 18-cv-07439<br><br>JUDGE CHARLES P. KOCORAS<br><br>MAGISTRATE JUDGE JEFFREY T. GILBERT |

## CBS BROADCASTING INC.'S MOTION TO QUASH DEFENDANTS' SUBPOENAS *DUCES TECUM*

BRYAN CAVE LEIGHTON PAISNER LLP
Brian A. Sher
Steven G. Trubac
161 N Clark Street, Ste 4300
Chicago, IL 60601
Phone: (312) 602-5000
Fax: (312) 602-5050
brian.sher@bclplaw.com
steve.trubac@bclplaw.com

BALLARD SPAHR LLP
Jay Ward Brown (*pro hac vice* pending)
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
Phone: 202-661-2200
Fax: 202-661-2299
brownjay@ballardspahr.com

*Counsel for non-parties CBS Broadcasting Inc. (d/b/a CBS2 Chicago) and David Savini*

Non-party CBS Broadcasting Inc. (d/b/a CBS2 Chicago) on behalf of itself and its employee David Savini (together, "CBS2"), by and through undersigned counsel, respectfully submits this motion to quash the subpoenas *duces tecum* issued by the individual defendants on February 12, 2020. *See* Ex. 1 (true and correct copies of subpoenas directed to Dave Savini and Derek Dalton).[1] The defendants demand that CBS produce all *unpublished* audio or video recordings of statements by any of the plaintiffs, all *unpublished* documents that reflect any such statements, and all *unpublished* communications between CBS2 and plaintiffs or their counsel created since August 9, 2018. *Id.*

As an initial matter, CBS2 requests that the Court hold consideration of this Motion, and any obligation of CBS2 to comply with the subpoenas, in abeyance pending resolution of the parties' settlement negotiations and their completion of other fact discovery, for which they have requested an extended deadline. *See* Dkt. 149, 153. In the event the parties do not settle and move forward with fact discovery, CBS2 requests that the Court quash the subpoenas as unenforceable on either of two bases.

First, these unpublished newsgathering materials should be subject to, and protected by, a reporter's privilege. But apart from any privilege, the materials demanded are cumulative and unnecessary, production of responsive materials would be unduly burdensome, and the subpoenas are therefore unreasonable. Moreover, these subpoenas are but two of six subpoenas in three separate civil lawsuits issued by defendants' counsel to CBS2, and there is every reason to believe defendants' counsel plans to issue further subpoenas to CBS2. This drip-drip of subpoenas places special burdens on a news organization irrespective of any reporter's privilege.

---

[1] CBS2 understands that the subpoena delivered to Derek Dalton, General Manager of CBS2 Chicago, was directed to him in his capacity as managing agent of, and therefore custodian of records for CBS2 Chicago, and not to him personally.

Accordingly, CBS2 respectfully requests that, in the event the parties move forward with this action and fact discovery, the Court quash these subpoenas before CBS2 is forced to incur any additional temporal or monetary burdens to contest or otherwise respond to them.

## RELEVANT BACKGROUND

### A. The Search Of The Tate Home

This lawsuit concerns a search of the Tate family home by a Chicago Police Department (CPD) SWAT team on August 9, 2018. Third Am. Compl. ¶ 2, Dkt. 70. During the search, a team of approximately ten SWAT officers allegedly broke down plaintiffs' front door, entered without identifying themselves, wore face coverings hiding their identities, and carried large machine guns or assault rifles that they repeatedly pointed at the four children, their mother and grandmother. *Id.* ¶¶ 2, 7, 35-38, 41-43, 52-57, 59. The individual defendants also allegedly ordered the family to sit outside for more than an hour while the home was searched, refusing to let the grandmother retrieve any clothes, leaving her exposed in a t-shirt and underwear to the elements and gawkers. *Id.* ¶¶ 3-6, 74-76, 83-86. As a result of the search, plaintiffs allege that the children "suffer severe, emotional and psychological distress and injury" that "are long-lasting and may never fully heal." *Id.* ¶¶ 11, 136-57. Plaintiffs also allege that Ms. Tate and Ms. Eason also "suffered serious psychological harm" from the search. *Id.* ¶¶ 12, 142, 144-45.

In Counts II-IV of their Third Amended Complaint, plaintiffs allege against the individual defendants causes of action arising under 42 U.S.C. § 1983 for unlawful search, false arrest, and false imprisonment; in Counts V-VIII plaintiffs allege against the individual defendants causes of action arising under Illinois state law for assault, false arrest, false

2

imprisonment, intentional and/or negligent infliction of emotional distress, and trespass.[2]

### B. CBS2's News Coverage Of Allegedly Improper CPD Searches

CBS2 broadcast its first news report regarding the incident, prepared by Savini, in November 2018. *See* Decl. of Michele Youngerman ("Youngerman Decl.") ¶ 4, attached hereto as Ex. 2. CBS2 subsequently disseminated at least one additional report regarding the Tate search. *Id.* ¶ 5. Since August 2018, CBS has produced and disseminated dozens of news reports, including a 28-minute documentary, about the numerous Chicago-area families whose homes law enforcement officers allegedly improperly searched. *Id.* ¶¶ 5-7. In total, CBS2 has approximately 126 hours of video content, and such a large quantity of reporters' notes, audio files, emails, and other documents related to the investigation, that it is burdensome even to locate and quantify these materials. *Id.* ¶¶ 13-14.

### C. The Two Subpoenas In This Case

On February 12, 2020, defendants served the third-party subpoenas seeking:

1. "From August 9, 2018 to the present, any and all notes or other documents of interviews and statements made by" the six plaintiffs;

2. "From August 9, 2018 to the present, any and all video/audio 'outtake' recordings, or any video/audio not publicly disseminated containing statements of" the six plaintiffs; and

3. "From August 9, 2018 to the present, any and all communications, correspondence, text messages or other messages between Dave Savini, or any other CBS employee, and any of the [six plaintiffs] and/or their respective attorneys."

---

[2] Plaintiffs allege Counts V-VI with respect to the City of Chicago and defendant SWAT officers; plaintiffs allege Counts VII-VIII with respect to these parties, as well as to defendant warrant officers. In the remaining counts, plaintiffs allege against the City of Chicago both federal and state law causes of action. *See* Third Am. Compl. ¶¶ 234-263.

3

*See* Ex. 1. In-house counsel for CBS met and conferred with counsel for the individual defendants on February 20, 2020 and again on February 25, 2020. Counsel could not come to an agreement about the subpoenaed materials.

### D. Additional Subpoenas Issued To CBS2 For Its Newsgathering Material

In addition to the two subpoenas at issue in this matter, defendants' counsel also served on CBS2 four third-party subpoenas related to two additional civil lawsuits filed by Chicago-area families who also allege their homes were improperly searched. *See Mendez, et al. v. City of Chicago*, No. 1:18-cv-05560 (N.D. Ill.) (Lee, J.) and *Bures, et al. v. City of Chicago*, No. 1:19-cv-02040 (N.D. Ill.) (Kennelly, J.).[3]

In addition to the subpoenas already issued by defendants' counsel, CBS2 believes that it will receive additional subpoenas for related reporting. At least three additional Chicago-area families are also suing the City of Chicago and law enforcement officers alleging that their homes were improperly searched, and defendants' counsel, when representing defendants in *Mendez*, already subpoenaed materials for eight additional named individuals and an unknown universe of unnamed individuals (which he conditionally withdrew).[4] CBS2 has reported

---

[3] The *Bures* subpoenas are currently under consideration by another court in this District. In *Mendez*, Magistrate Judge Kim granted in part and denied in part defendants' motion to enforce the subpoenas. Order, *Mendez*, No. 1:18-cv-05560, Dkt. 196. The court granted the motion as to the outtakes, and denied the motion as to CBS2's notes and communications finding that "communications between Plaintiffs (including their attorney) and CBS can be secured from Plaintiffs themselves and that any usefulness of notes prepared and generated by CBS cannot outweigh the burden placed on CBS to compile the same." *Id.*

[4] Defendants' counsel subpoenaed not only CBS2's outtakes, notes, and communications for the named plaintiffs, but also for 20 additional named individuals and "[a]ny other individual suing the City of Chicago and Chicago Police Officers for incidents covered in CBS's news coverage on search warrants." *See* Defs.' Mot. to Compel Ex. 1, *Mendez*, No. 1:18-cv-05560, Dkt. 164-1. After CBS2 objected to those overbroad subpoenas, defendants' counsel agreed to limit the scope of the subpoenas to the four named plaintiffs and filed a motion to compel CBS2's compliance with the subpoenas as modified. *See* Defs.' Mot. to Compel, Dkt. 164.

extensively on these searches and believes defendants' counsel will issue further subpoenas for newsgathering materials related to those families – as well as for materials related to any other families who may sue in the future over allegedly improper searches.

### E. CBS2's Efforts Related To The Subpoenas Thus Far

CBS2, as a non-party, has already expended substantial resources responding to these and the related subpoenas. CBS2 employees have spent more than three business days to date cataloging the raw video footage compiled during the last 18 months. *See* Youngerman Decl. ¶ 16. A CBS employee spent an additional three business days cataloguing, preserving and producing raw video footage in response to the order in *Mendez*. *Id*. ¶ 17. This says nothing of the efforts CBS2 employees expended in negotiating with defendants' counsel.

### ARGUMENT

### I. AT A MINIMUM, THE COURT SHOULD HOLD IN ABEYANCE CONSIDERATION OF CBS2'S MOTION AT THIS TIME

The parties in this action represented to the Court on February 11, 2020 that they were engaged in settlement negotiations, and as such, they requested an extension of time to complete fact discovery until July 31, 2020. *See* Joint Status Report, ¶¶ 2, 4, Dkt. 151 (Feb. 11, 2020). Despite this development, the individual defendants served the third-party subpoenas on CBS2 the very next day – February 12, 2020 – with a due date of February 26, 2020. *See* Ex. 1.

Defendants do not, as discussed below (*see infra* Sections II and III), have an unfettered right to CBS2s' materials. And, given the significant First Amendment concerns at stake here, not to mention the more banal but nevertheless significant financial burden on a non-party, CBS2 respectfully requests that the Court hold in abeyance consideration of this motion, and any duty of CBS2 to produce responsive materials, until the parties resolve their settlement negotiations *and* until the individual defendants have completed their fact discovery. Only at that time might

5

defendants begin to demonstrate that they were unable to obtain from other sources information essential to their defense possessed by CBS2. Requiring production of sensitive newsgathering materials before then merely disadvantages a non-party without any corresponding benefit.

## II. THE SUBPOENAED MATERIALS SHOULD BE PROTECTED FROM DISCLOSURE BY THE REPORTER'S PRIVILEGE

Plaintiffs in this action allege that the individual defendants violated several Illinois state laws, *see* Third Am. Compl. ¶¶ 234-63, and also allege variations on a Section 1983 claim, *see id.* ¶¶ 195-233. In this context, CBS2's reporting materials should be protected from disclosure by the reporter's privilege. As the Seventh Circuit has noted, even in cases where the "principal claim" is based on federal law, "[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Mem'l Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) (citation omitted). Indeed, where a "state holds out the expectation of protection to its citizens, [its citizens] should not be disappointed by a mechanical and unnecessary application of the federal rule." *Id.* (citation omitted).

Illinois, as a matter of public policy, affords a privilege to news gatherers, such as CBS2, to protect their sources and information, whether confidential or not, published or unpublished, from compelled disclosure. *See* 735 ILCS 5/8-901. That public policy should be honored here.[5] The purpose of the Illinois reporter's privilege "'is to assure reporters access to information, thereby encouraging a free press and a well-informed citizenry.'" *Kelley v. Lempesis*, No. 13 CV 4922, 2015 WL 4910952, at *2 (N.D. Ill. Aug. 17, 2015) (citation omitted). The privilege "preserve[s] the autonomy of the press . . . thereby permitting the public to receive complete,

---

[5] And, if this Court's subject-matter jurisdiction over this case arose from diversity instead of a federal question, CBS2 could assert that privilege here. *Webb v. CBS Broad., Inc.*, No. 08 C 6241, 2011 U.S. Dist. LEXIS 3458, at *27-28 (N.D. Ill. Jan. 13, 2011).

6

unfettered information." *In re Arya*, 226 Ill. App. 3d 848, 852, 589 N.E.2d 832, 834 (4th Dist. 1992).

Included within the scope of this protection are the "resource materials and information gathered by a journalist." *Dunn v. Hunt*, No. 02-L-10310, 2003 Ill. Cir. LEXIS 7, at *6 (Ill. Cir. Ct., Cook Cty. July 25, 2003); *see also People v. Slover*, 323 Ill. App. 3d 620, 624, 753 N.E.2d 554, 558 (4th Dist. 2001) (the privilege protects "more than simply the names and identities of witnesses, informants, or other persons providing news to a reporter."). Defendants' subpoenas seek *all* of CBS2's journalistic materials regarding the search of the Tate home that reflect statements made by or communications with plaintiffs or their attorneys. These newsgathering materials are precisely the type of materials shielded from compelled disclosure by the Illinois statutory reporter's privilege. *Arya*, 589 N.E.2d at 859-62, 839-41 (notes and videotapes); *Kelley*, 2015 WL 4910952, at *2 (unaired footage); *People v. McCullough*, 40 Media L. Rep. 1316, 1317-18 (Ill. Cir. Ct., DeKalb Cty. Nov. 8, 2011) (reporter's notes);[6] *Horstman v. Hoffman*, 39 Media L. Rep. 1208, 1210 (Ill. Cir. Ct., Cook Cty. Nov. 16, 2010) (drafts, correspondence, communications, and notes); *People v. Goldman*, 34 Media L. Rep. 2310, 2312 (Ill. Cir. Ct., Lake Cty. Sept. 1, 2005) (outtakes); *People v. Degorski*, Media L. Rep. 1954, 1956 (Ill. Cir. Ct., Cook Cty. May 20, 2005) (researchers' notes and other work product).[7]

Federal law also supports the application of the reporter's privilege. While the Supreme Court has yet to address whether a reporter's privilege exists in a civil case, every other circuit to consider the question has held that such a privilege does, in fact, exist. *See, e.g., Cusumano v.*

---

[6] Copies of cited cases available only on electronic databases are attached hereto as Exhibit 3.

[7] To the extent any responsive materials are contained within documents subject to the attorney-client privilege, CBS2 also objects to production of the remainder of any such documents on that basis. A privilege log, organized by category of responsive documents, is attached hereto as Exhibit 4.

*Microsoft Corp.*, 162 F.3d 708, 716 (1st Cir. 2008); *Price v. Time, Inc.*, 416 F.3d 1327 (11th Cir. 2005); *Ashcraft v. Conoco, Inc.*, 218 F.3d 282 (4th Cir. 2000); *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29 (2d Cir. 1999); *Shoen v. Shoen*, 48 F.3d 412 (9th Cir. 1995); *Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981); *Miller v. Transamerican Press, Inc.*, 621 F.2d 721 (5th Cir. 1980); *Riley v. City of Chester*, 612 F.2d 708 (3d Cir. 1979); *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433 (10th Cir. 1977); *Cervantes v. Time, Inc.*, 464 F.2d 986 (8th Cir. 1972).

The Seventh Circuit has never decided whether a reporter's privilege exists in a civil setting. Seventeen years ago, a panel declined to find that a reporter's privilege applied where (1) the source of the information sought disclosure (2) for use in a foreign criminal prosecution (3) where there was "no conceivable interest in confidentiality." *See McKevitt v. Pallasch*, 339 F.3d 530, 531-33 (7th Cir. 2003). Notably, the party objecting to disclosure waived the Illinois privilege. *Id.* at 733. And, while *McKevitt* failed to recognize the existence of a reporter's privilege as to *audio recordings* of interviews, as another court in this District observed, "the decision in *McKevitt* did not discuss the subject of reporters' notes" and "[n]othing in *McKevitt* suggests that a reporter's notes are discoverable in civil litigation simply because the reporter interviewed a party to that litigation." *Hobley*, *v. Burge*, 223 F.R.D. 499, 505 (N.D. Ill. 2004).

Here, the materials the individual defendants seek through their subpoenas, and the context in which they seek them, routinely fall within the ambit of the protections of the reporter's privilege. *See, e.g.*, *Gonzales*, 194 F.3d at 35 (privilege extends to non-confidential resources); *United States v. Cuthbertson*, 651 F.2d 189, 191 (3d Cir. 1981) (protecting unpublished information). It is well-established that newsgathering activities have a degree of protection under the First Amendment, rooted in a concern that litigants will be tempted to use the media as unofficial investigators if parties are not required to exhaust all possible alternative

8

sources before subpoenaing journalists. *See Branzburg v. Hayes*, 408 U.S. 665, 709-10 (1972) (Powell, J., concurring). As even the court in *McKevitt* acknowledged, "[o]fficial harassment of the press undertaken not for purposes of law enforcement but to disrupt a reporter's relationship with his news sources would have no justification." 339 F.3d at 533 (quoting *Branzburg*, 408 U.S. at 707-08)); *see also Arya*, 589 N.E.2d at 835 (quoting Governor Ogilvie while signing Act as stating that privilege "allows reporters to seek the truth wherever it is to be found, without fear that their sources of information will be cut off by unnecessary disclosures").

These concerns are at their apex here. CBS2 has been investigating the searches of Chicago-area homes pursuant to allegedly faulty search warrants for more than 18 months, and its investigation continues today. At least six Chicago-area families have civil lawsuits pending for claims related to these searches, and CBS2 has already received three sets of subpoenas for its reporting materials related to these searches and lawsuits. What is more, as discussed above, the individual defendants have no need for CBS2's material at this time given the parties' ongoing settlement negotiations and request for extension of time to complete fact discovery.

To state it directly: The individual defendants – law enforcements officers – in these cases are harassing CBS2 not for purposes of uncovering information necessary to their defense, but in order to stop Chicago-area families from speaking to CBS2 about their experiences. The Illinois reporter's privilege, the federal common law, and the First Amendment do not tolerate this threat to CBS2's ability to gather and report the news. This is exactly the kind of rare case that the Supreme Court said it would not tolerate. *See Branzburg*, 408 U.S. at 707; *id.* at 710 (Powell, J., concurring) ("the courts will be available to newsmen under circumstances where legitimate First Amendment interests require protection"). As such, CBS2 respectfully requests that this Court quash these subpoenas on the basis of the reporter's privilege.

9

**III.     DEFENDANTS' SUBPOENAS ARE NOT REASONABLE**

Regardless of this Court's determination concerning the protection afforded to CBS2 by the Illinois reporter's privilege, federal common law, or the First Amendment, the subpoenas should be quashed for an entirely separate reason pursuant to the general rules governing discovery under Rules 26 and 45.  Pursuant to Rule 26(c), "justice requires protection for a party *or person* [such as non-party CBS2] from . . . *undue burden or expense*. . . . [And w]ith this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process."  *Mosely v. City of Chicago*, 252 F.R.D. 421, 430 (N.D. Ill. 2008) (emphasis added, internal quotations omitted); *see also* Fed. R. Civ. P. 26(b)(1), 26(b)(2)(C).

Courts must quash a Rule 45 non-party subpoena if it "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).  And as the Seventh Circuit emphasized, courts, when considering a Rule 45 subpoena, must "make sure that a subpoena duces tecum directed to the media . . . is *reasonable* in the circumstances."  *McKevitt*, 339 F.3d at 533.  For these subpoenas to be reasonable, the defendants must establish more than relevance of the subpoenaed materials to their defense in the underlying civil litigation.  *Patterson v. Burge*, No. 03-C-4433, 2005 U.S. Dist. LEXIS 1331, at *5 (N.D. Ill. Jan. 6, 2005) ("non-parties are not treated exactly like parties in the discovery context, and the possibility of mere relevance may not be enough; rather, non-parties are entitled to somewhat greater protection."); *see also Mgmt. Info. Techs., Inc. v. Alyeska Pipeline Serv. Co.*, 151 F.R.D. 471, 477 (D.D.C. 1993) ("Reporters cannot be dragged into civil litigation every time a case presents an issue that would provoke a newspaper story.").

The question whether defendants' subpoenas are reasonable requires the Court to consider four factors:

> (1) the likelihood that compliance will result in production of the information, (2) whether the discovery is unreasonably cumulative or duplicative, (3) whether the information sought is readily obtainable

10

> from another, more convenient, less burdensome (but equally reliable) source, and (4) whether the burden of the proposed discovery outweighs its likely benefit.

*Taylor v. City of Chicago*, No. 14-C-737, 2015 U.S. Dist. LEXIS 146954, at *8-9 (N.D. Ill. Oct. 29, 2015); *see also Mosely*, 252 F.R.D. at 433 (information sought must be "both necessary to the defendants and *unavailable from anyone but*" CBS2) (emphasis added).

When considering the reasonableness of a non-party subpoena, courts also take into account the status of the non-party as a journalist. *See, e.g.*, *Mosely*, 252 F.R.D. at 427; *Patterson*, 2005 U.S. Dist. LEXIS 1331 (quashing subpoena to reporter for unpublished materials where requester failed to show information could not be obtained from alternative sources); *Hobley*, 223 F.R.D. at 505 (partially quashing subpoena for notes related to conversations with plaintiff because defendants demonstrated only that materials "*might* reflect" something plaintiff said that "*might* be helpful to the Defendants"). Indeed, even were this Court to find that no reporter's privilege applies to this case, it is nevertheless entirely proper for it to consider the burdens that will be placed on CBS2 and its role as a news organization should its compliance be ordered, and to quash the subpoenas on that basis alone.

**A. The Individual Defendants Have No Need For CBS2's Newsgathering Materials**

In order for the individual defendants to have a right to the subpoenaed material, it must be "both necessary to the defendants and *unavailable from anyone but*" CBS2. *Mosely*, 252 F.R.D. at 433 (emphasis added). Defendants cannot subpoena CBS2 "merely to satisfy curiosity or in the hope – however improbable – that something might turn up." *Id*. at 437. Defendants must also demonstrate why they need CBS2's materials with respect to each of the six named plaintiffs. *See, e.g.*, *Taylor*, 2015 U.S. Dist. LEXIS 146954 (analyzing and determining defendants' need, and right to, depose journalist regarding five separate interviews and denying, or greatly limiting, that right with respect to four interviews); *Mosely*, 252 F.R.D. at 437-38

11

(granting defendants' motion to compel production of notes and tapes with respect to one individual, but denying defendants' subpoena as to materials related to several additional interviews).

Given that the parties to this action are currently engaged in settlement negotiations and have asked for an extension of time to complete fact discovery, the individual defendants have no current need for CBS2's newsgathering materials. If the parties do ultimately need to complete fact discovery, there is also no reason at this time to think that CBS2 possesses any information that is not otherwise readily available from the six named plaintiffs in this action. Defendants can depose the plaintiffs to obtain testimony regarding the search, and as the court in *Mendez* correctly noted, defendants can obtain communications between plaintiffs or their attorneys and CBS2 directly from plaintiffs. *See Mendez*, No. 1:18-cv-05560, Order, Dkt. 196.

### B. The Burden To CBS2 Outweighs Any Potential Benefit To These Defendants

In contrast, the burden on CBS2 of producing the responsive materials is significant on both on an administrative and a newsgathering level. *See Taylor*, 2015 U.S. Dist. LEXIS 146954, at *9 ("Regarding burden, courts must assess more than mere 'administrative hardships' and, instead, should consider the myriad interests that production might compromise or injure."). And with each subpoena defendants' counsel issues, the burden on CBS2 grows in both the time and the financial resources to contest the subpoenas and respond if ordered to do so. "The kind of discovery requested here not only burdens the news organizations but burdens the public interest in a robust press." *Patterson*, 2005 U.S. Dist. LEXIS 1331, at *12.

Since July 2018, the CBS2 investigative team has spent thousands of hours researching, reporting and producing approximately 50 news reports and a 28-minute documentary. Youngerman Decl. ¶¶ 11-12. Defendants in this action seek, through their subpoenas, video or

audio recordings and notes or other documents reflecting statements by the plaintiffs, and all communications between CBS2 and the plaintiffs or their counsel, compiled by CBS2 over 18 months as part of a significant investigative news project regarding allegedly unlawful searches in the City of Chicago. To date, CBS2 employees have already spent days reviewing, cataloguing, downloading and producing responsive materials in the *Mendez* action. *See* Youngerman Decl. ¶ 17. If ordered to comply with defendants' subpoenas in this action, CBS2 employees will be forced to dedicate significant additional resources to search for, and review, responsive outtakes, notes and communications that they compiled over the last 18 months while reporting on the Tate search. *Id*. ¶¶ 18-19. Journalists or not, these are significant burdens extended over multiple months and placed *on a non-party* to a litigation.

Moreover, with respect to the defendants' demand for notes, documents, and communications between CBS2 and plaintiffs, the fact that CBS2 employees "would almost certainly have to be deposed to interpret them before any use could be made of them, multipl[ies] the burden." *Hobley*, 223 F.R.D. at 505 (observing that reporter's notes about interview are "significantly less useful" in establishing what subject of interview said given that notes do not constitute subject's "original work"). Thus, the collection and disclosure of responsive materials would only be the beginning of CBS2's obligations in this matter.

Compelled compliance is also particularly problematic with respect to the CBS2 investigative team's work to earn the trust of their sources and the community through their ongoing research and reporting regarding these searches. *See* Youngerman Decl. ¶¶ 21-24. If forced to disclose unpublished materials regarding their sources – regardless of how many subpoenas defendants' counsel issues – CBS2 reasonably believes that its ability to continue investigating the searches will be significantly impaired. *Id*. ¶ 24-25.

For these precise reasons, the court in *Mendez* refused to enforce the subpoenas to CBS2 insofar as they sought any communications between plaintiffs or their attorneys and CBS2 and CBS2's notes because the former could be obtained from plaintiffs, and "any usefulness of notes prepared and generated by CBS cannot outweigh the burden placed on CBS to compile the same." *Mendez*, No. 1:18-cv-05560, Order, Dkt. 196. That court, however ordered CBS2 to produce all unpublished video recordings of the named plaintiffs in that action. *Id.* CBS2 respectfully maintains that the court in *Mendez* failed properly to balance the evident burden on CBS2 against the mere potential benefit to those defendants of access to the video recordings of the plaintiffs. The burden on CBS2 is now even clearer here, and the potential benefit to these defendants of access to the recordings remains entirely speculative. Accordingly CBS2 requests that this Court quash defendants' subpoenas in their entirety for the reasons stated herein.

## IV. CONCLUSION

For all these reasons, CBS2 respectfully requests that this Court hold this motion in abeyance pending the parties' completion of other discovery and, if the Court adjudicates this motion, that the Court quash the subpoenas issued to CBS2.

Dated: February 26, 2020

Respectfully submitted,

*/s/ Brian A. Sher*
Brian A. Sher
Steven G. Trubac
BRYAN CAVE LEIGHTON PAISNER LLP
161 N Clark Street, Ste 4300
Chicago, IL 60601
Phone: (312) 602-5000
Fax: (312) 602-5050
brian.sher@bclplaw.com
steve.trubac@bclplaw.com

Jay Ward Brown (*pro hac vice* pending)
Ballard Spahr LLP
1909 K Street NW, 12th Floor
Washington, DC 20006-1157
Phone: 202-661-2200
Fax: 202-661-2299
brownjay@ballardspahr.com

*Counsel for non-parties CBS Broadcasting Inc. (d/b/a CBS2 Chicago) and David Savini*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 26, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record.

*/s/ Brian A. Sher*
Brian A. Sher
