IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EBONY TATE, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF CHICAGO, et. al., <br><br> Defendants. | No. 18 C 7439 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

This case comes before the Court on CBS Broadcasting Inc.'s ("CBS") Motion to Quash Defendants' Subpoenas Duces Tecum [ECF No. 158]. For the reasons discussed below, CBS's Motion is granted in part and denied in part. The Motion is granted to the extent CBS need not produce any documents described in the first and third categories of Defendant Officers' February 12, 2020 subpoenas, namely, any notes or documents concerning interviews with Plaintiffs or any communications, correspondence, text messages or other messages between individuals at CBS, Plaintiffs, or Plaintiffs' attorneys. The Motion is denied to the extent CBS is ordered to produce any and all video or audio recordings containing Plaintiffs' statements regarding the search of their residence on August 9, 2018, and the events that followed.

**BACKGROUND**

On August 9, 2018, officers from the Chicago Police Department executed a search warrant at Plaintiffs' basement apartment in search of an individual who was identified by a confidential informant as being a convicted felon in possession of a semi-automatic handgun. [ECF Nos. 70, 72] at ¶ 31. As the officers executed the search warrant at the home, Plaintiffs allege that the officers

repeatedly pointed machine guns or assault rifles at Plaintiffs, four of whom are minor children. [ECF No. 70] at ¶ 2. According to Plaintiffs, the family was made to sit outside of the home for over an hour, exposed to the elements, while the search was conducted. [ECF No. 70] at ¶ 3. Cynthia Eason, one of the Plaintiffs and the grandmother of the minor children who were present, was allegedly forced to sit outside in nothing more than a t-shirt and underwear during that time. [ECF No. 70] at ¶¶ 4-6. As a result of the search, Plaintiffs allege they suffered severe, long-lasting emotional and psychological harm. [ECF No. 70] at ¶¶ 11-12. Plaintiffs subsequently filed suit under 42 U.S.C. § 1983 for unlawful search, false arrest, and false imprisonment. Plaintiffs further brought causes of action arising under state law for assault, false arrest, false imprisonment, and intentional or negligent infliction of emotional distress. Plaintiffs' complaint also includes a custom, policy, or practice claim under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

In July 2018, CBS began investigating and producing news reports about allegations being made by numerous Chicago-area families, including Plaintiffs, that the Chicago Police Department had improperly searched their homes. [ECF No. 158-2] at ¶ 3. CBS broadcast its first news report touching on the incident at Plaintiffs' home in November 2018 and subsequently broadcast at least two additional news reports concerning the search of Plaintiffs' home or discussing Plaintiffs themselves. [ECF No. 158-2] at ¶ 5. CBS further produced and broadcast a 28-minute documentary about the Chicago-area families who were allegedly the subject of improper searches by the Chicago Police Department, including Plaintiffs. [ECF No. 158-2] at ¶ 7.

On February 12, 2020, Defendant Officers issued subpoenas to non-party CBS seeking the following three categories of information regarding the allegations in this case:

"1. From August 9, 2018 to the present, any and all notes or other documents of interviews and statements made by:
　　A. Ebony Tate

    B. E'Monie Booth
    C. La'Niya Booth
    D. Legend Booth
    E. LaKai'ya Booth
    F. Cynthia Eason

2. From August 9, 2018 to the present, any and all video/audio 'outtake' recordings, or any video/audio not publicly disseminated containing statements of:
    A. Ebony Tate
    B. E'Monie Booth
    C. La'Niya Booth
    D. Legend Booth
    E. LaKai'ya Booth
    F. Cynthia Eason

3. From August 9, 2018 to the present, any and all communications, correspondence, text messages or other messages between Dave Savini, or any other CBS employee, and any of the above listed individuals named in Requests 1 and 2, and/or their respective attorneys." [ECF No. 158-1] at 5.

CBS now asks this Court to quash the above-referenced subpoenas on two grounds. First, CBS argues that the subpoenas require disclosure of reporting materials otherwise shielded by the Illinois "reporter's privilege" and the Court therefore should quash the subpoenas under Rule 45(d)(3)(A)(iii). Second, CBS argues that compliance with the subpoenas would impose an undue burden on them under Rule 45(d)(3)(A)(iv) because of their status as a non-party media organization and the potential volume of material responsive to the above requests.

## DISCUSSION

Although CBS invokes both the letter and spirit of the Illinois reporter's privilege in support of its Motion, neither shield the materials sought in this federal question case. The Seventh Circuit has clearly established that state-law privileges – specifically, Illinois' statutory version of the reporter's privilege, 735 ILCS 5/8–901 – are not "legally applicable" in federal question cases such as this. *McKevitt v. Pallasch,* 339 F.3d 530, 533 (7th Cir. 2003) (enforcing subpoena against third-party journalists) (citing FED.R.EVID. 501; *Patterson v. Caterpillar, Inc.,* 70 F.3d 503, 506 (7th Cir. 1995)).

3

Building upon its holding in *McKevitt*, the Seventh Circuit struck the death knoll for any federal question application of the Illinois reporter's privilege in *United States Dept. of Educ. v. National Collegiate Athletic Ass'n,* 481 F.3d 936, 938 (7th Cir. 2007) when it rejected the NCAA's assertion of an investigatory privilege, stating: "There isn't even a reporter's privilege in federal cases." (citing *Branzburg v. Hayes,* 408 U.S. 665 (1972); *University of Pennsylvania v. EEOC,* 493 U.S. 182, 201 (1990); *McKevitt,* 339 F.3d 530). Other courts in this circuit are in accord. *Mosely v. City of Chicago,* 252 F.R.D. 421, 424 (N.D. Ill. 2008) (the Illinois reporter's privilege is inapplicable in federal question cases); *Thayer v. Chiczewski,* 257 F.R.D. 466, 469 (N.D. Ill. 2009).

The Court therefore can find no basis, in law or in "equity," for recognizing a reporter's privilege in these proceedings. Yet even were such a privilege cognizable, CBS may have waived any privilege it could have asserted by not complying with Rule 45 of the Federal Rules of Civil Procedure. FED.R.CIV.P. 45(d)(3)(A)(iii) ("On timely motion, the court for the district where compliance is required must quash or modify a subpoena that…requires disclosure of privileged or other protected matter, *if no exception or waiver applies*.") (emphasis added). Just as a party asserting privilege in the face of a discovery request must compile a privilege log under Rule 26(b)(5), Rule 45(e)(2)(A)(ii) requires a non-party withholding subpoenaed information under a claim of privilege to "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." CBS not only did not serve a privilege log in compliance with Rule 45(e)(2)(A)(ii), but it is further silent in both its Motion [ECF No. 158] and Reply [ECF No. 180] as to any excuse for its noncompliance. Although CBS may have agreed with Defendant Officers that it did not need to serve a privilege log with its objections to the subpoenas, it has not said so. But neither have Defendant Officers argued waiver in response to CBS asserting the reporter's privilege now. The Court raises the issue only because it is relevant to any analysis under Rule 45. Ultimately,

4

this Court's substantive ruling that the reporter's privilege does not apply here is not based on any waiver of that privilege.

The issue before the Court, then, rests squarely on a determination under Federal Rules of Civil Procedure 26 and 45. Rule 45 empowers a party to issue a subpoena directing a non-party to produce documents or other items in that person's possession, FED.R.CIV.P. 45(a)(1)(A)(iii), yet this power is not unlimited. "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," FED.R.CIV.P. 45(d)(1), and courts "must quash or modify a subpoena that…subjects a person to undue burden." FED.R.CIV.P. 45(d)(3)(A)(iv). Courts should further ensure that a third-party subpoena "directed to the media, like any other subpoena duces tecum, is reasonable in the circumstances, which is the general criterion for judicial review of subpoenas." *McKevitt*, 339 F.3d at 533.

Whether a subpoena is "reasonable in the circumstances" or imposes an "undue burden" is a case-specific inquiry: there is "no formula for determining reasonableness." *United States v. Banks*, 540 U.S. 31, 36 (2003). Nor is any "category of information or class of witness [] immune from subpoena." *Mosely*, 252 F.R.D. at 427. Rather, whether to quash a subpoena rests squarely within the court's discretion, *Griffin v. Foley,* 542 F.3d 209, 223 (7th Cir. 2008), with due consideration to the following factors: "(1) the likelihood that compliance will result in production of the information, (2) whether the discovery is unreasonably cumulative or duplicative, (3) whether the information sought is readily obtainable from another, more convenient, less burdensome (but equally reliable) source, and (4) whether the burden of the proposed discovery outweighs its likely benefit." *Taylor v. City of Chicago*, 2015 WL 6561437, at *3 (N.D. Ill. 2015) (citing *Mosely*, 252 F.R.D. at 427); *see also, Northwestern Memorial Hospital v. Ashcroft,* 362 F.3d 923, 927 (7th Cir. 2004).

5

The Court takes each of the three categories of information sought by Defendant Officers in turn, starting with the only subpoena request with which the Court ultimately believes CBS must comply: Defendant Officers' request for any and all video or audio outtake recordings, or any video or audio not publicly disseminated containing Plaintiffs' statements. When the Court balances the burden of compliance against the benefits of the requested production of these video or audio clips, *Northwestern Memorial Hospital,* 362 F.3d at 927, any recorded statement made by Plaintiffs about the subject matter that is at the very heart of this litigation is clearly relevant to the claims and defenses in this case and proportionate to the needs of the case. It is further likely, if not definite, that CBS's compliance with the above subpoena request will result in production of the information sought. Whatever the ultimate probative value of the additional video and audio sought, both CBS and Defendant Officers agree that CBS is, in fact, in possession of unedited footage of interviews with Plaintiffs. [ECF No. 170] at 10; [ECF No. 180] at 10. So, too, is CBS the only source from which such information could readily be obtained. Although the Court recognizes there will be some burden on CBS to compile the video and audio files requested, the likely benefit significantly outweighs this burden. Plaintiffs' statements, captured verbatim in audio and video form currently in CBS's exclusive possession, are not only substantively relevant to the claims and defenses in this case, but highly relevant to possible damage calculations and credibility determinations at trial.

By bringing this lawsuit, Plaintiffs have put their own statements to third parties at issue where they otherwise may not have been, insofar as they bear directly on the subject matter at the core of this litigation. Nor can Plaintiffs or CBS reasonably be said to have a heightened privacy interest or concern about a potential chilling effect on truthful interviews given to the news media as a whole if Defendant Officers' subpoenas are enforced here, and that also bears on the Court's analysis. Ordering that CBS produce the above audio and video clips involving Plaintiffs is consistent with both Plaintiffs' and CBS's expectation at the time the interviews were given that the

content of those interviews, in whatever form, would be made available for public consumption. *See, e.g., Mosley,* 252 F.R.D. at 431 ("…it is illogical to argue the future non-confidential interviewees will be deterred from cooperating with [a reporter] because she might have to reveal in the future something she had the absolute right to reveal in the first place.").

The Court disagrees with CBS that a decision about whether this material should be produced should be deferred until fact discovery is complete or it is clear this case will not settle. Defendant Officers need the video or audio recordings containing Plaintiffs' statements during discovery and not just before any trial. Indeed, both Defendant Officers and Plaintiffs have asked the Court to defer Defendant Officers' filing of a response to Plaintiffs' motion for a protective order concerning the depositions of the minor Plaintiffs until fourteen days after the Court decides CBS's Motion to Quash, and the Court granted that motion. [ECF Nos. 190, 193]. CBS's Motion to Quash needs to be decided now precisely so this case can move forward through fact discovery and depositions.

As for the request that CBS produce any and all notes or other documents of interviews and statements made by Plaintiffs, the Court finds this subpoena is unreasonably cumulative and unduly burdensome as framed. Although court-ordered compliance with the above request would likely result in production of some responsive notes or documents, that information is almost certain to be cumulative of the video or audio recordings that ultimately memorialize those interviews, which the Court has ordered CBS to produce. The video and audio recordings are also likely to be the best evidence of Plaintiffs' statements to CBS, as contrasted with the personal notes of a reporter who would assuredly need to be deposed (and CBS undoubtedly would object to such a deposition) in order to decipher the notes and render them in any way useful for trial. *See, e.g., Patterson v. Burge,* 2005 WL 43240, at *4 (N.D. Ill. 2005). The particular burdens demonstrated by CBS in this case – namely, the hours that would be required to compile any responsive notes or documents from any reporter or employee involved in Plaintiffs' interviews over the past eighteen months of news

production on the Chicago-area searches – outweigh any minimal benefit to either side in this case from production of those materials or the relevance of those materials to the claims and defenses raised.

Finally, the Court declines to order production of any communications, correspondence, text messages or other messages between individuals at CBS, Plaintiffs, or Plaintiffs' attorneys for many of the same reasons discussed above. Not only have Defendant Officers failed to show that the likely benefit of this material outweighs the significant burden compliance would impose on CBS under Rule 45, but the information sought is readily available from Plaintiffs themselves. Plaintiffs are a more convenient, less burdensome, and equally reliable source of the information Defendant Officers' seek, particularly given Plaintiffs' status as parties to the litigation and CBS's own status as a non-party media organization.

For all of these reasons, CBS is ordered to comply with Defendant Officers' February 12, 2020 subpoenas to the extent it must produce any and all video or audio recordings containing Plaintiffs' statements regarding the search of their residence on August 9, 2018 and the events that followed. The Court hereby quashes the subpoenas with respect to the requests for any notes or documents concerning interviews with Plaintiffs and any communications, correspondence, text messages or other messages between individuals at CBS, Plaintiffs, or Plaintiffs' attorneys.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 3, 2020