IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EBONY TATE, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF CHICAGO, et. al., <br><br> Defendants. | No. 18 C 7439 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**ORDER**

This case comes before the Court on Plaintiffs' Motion for a Protective Order [185] ("Plaintiffs' Motion") regarding the depositions of three minor Plaintiffs: Legend, La'Niya, and E'monie Booth. No party objects to these depositions being taken. Instead, the parties disagree about the conditions under which the depositions will proceed given the minors' ages and any special needs they may have. Having reviewed the written record and heard oral argument during a hearing on September 17, 2020 [219], the Court grants Plaintiffs' Motion in part and orders the noticed depositions of Legend, La'Niya, and E'monie Booth to proceed under the conditions set out in this Order.

    **I.**    **Procedural Safeguards Governing all Three Depositions at Issue**

Two overarching considerations inform the Court's analysis and its exercise of discretion here. First is the emotional health of the minor Plaintiffs. In a case like this, there is the looming possibility that the minors may suffer adverse effects if their depositions are taken without proper procedural safeguards. Second, the deposition of a named plaintiff – or, as here, three named plaintiffs – goes to the very heart of this case and will almost certainly adduce relevant evidence to which Defendants are entitled under Rule 26 of the Federal Rules of Civil Procedure. The Court does not take lightly that Legend, La'Niya, and E'monie will be more emotionally vulnerable during an adversarial deposition process because they are children. But neither can the Court ignore the reality that each minor's recollection of the incident from which this case arises, given their status as named plaintiffs to the litigation, is squarely at issue.

With the above considerations in mind, the Court adopts the following procedures for the depositions of the three minor Plaintiffs in this case. The Court notes that the parties agree to some

of these procedures and disagree about others. To the extent the parties disagree, the Court has resolved the disputes as discussed below.

The depositions of Legend, La'Niya, and E'monie Booth shall proceed at Plaintiffs' counsel's office, with no more than one attorney per side present (*i.e.,* one each of Plaintiffs' counsel of record, Defendant Officers' counsel of record, and Defendant Detectives' counsel of record). Neither the individual Defendant Officers nor Defendant Detectives are to attend the depositions in person. Legend, La'Niya, and E'monie shall be given the option to have their mother, grandmother, or both present during their respective depositions, and each will be allowed to take as many or as few breaks as he or she wants during questioning. The depositions shall be videotaped, and unless otherwise specified in this Order, all three depositions are to proceed in the ordinary course under the Federal Rules of Civil Procedure. In particular, Defendants, as the party who noticed the depositions, are to proceed first with their examination of each witness, after which Plaintiffs will be entitled to examine any of these witnesses if they wish to do so. FED.R.CIV.P. 30(c)(1) ("The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615.").

With regard to the order of questioning at the depositions, Plaintiffs argue they should be entitled to first conduct their examination of the minor witnesses for two reasons. First, Plaintiffs believe there is a significant possibility some or all the minors will be unavailable to testify at trial. Second, Plaintiffs contend that the minors may need a friendly examiner, presumably Plaintiffs' counsel, to question them first in order to make them comfortable and make it easier to elicit their testimony. The Court is unpersuaded that either reason justifies overturning ordinary deposition protocol for these witnesses. As Plaintiffs' counsel conceded at the hearing on September 17, 2020, [219], the unavailability of each witness for trial testimony is not a foregone conclusion at this point. Nor have Plaintiffs' shown a substantial likelihood under Rule 32 that any of the witnesses will be unavailable for trial. FED.R.CIV.P. 32(a)(4)(C) (a witness is legally unavailable when he or she cannot attend or testify because of age, illness, infirmity, or imprisonment). All three minor witnesses are young, but none is of such a tender age that it is clear he or she will be unable or unwilling to testify if or when this case goes to trial. It is unlikely this case will be tried for at least another year – and more likely, much longer than that – at which time the minors will be teenagers. On this record, the Court cannot assume that one or more of the minor Plaintiffs will be unavailable for trial, nor is the Court inclined to change the structure of the depositions at issue based on such an assumption.

As to Plaintiffs' second argument, the Court also is unconvinced that allowing Plaintiffs' counsel to examine the minor witnesses first safeguards the minors' emotional health any more than if Defendants' counsel were to proceed first. The deposition of a child or an adult can be a fraught event under even the best of circumstances, and regardless of whether Plaintiffs or Defendants lead-off the depositions, Legend, La'Niya, and E'monie will still need to face

2

substantive questioning from an adverse party about uncomfortable subjects. Reversing the order of questioning will do little to mitigate the stress of this reality. Plaintiffs' own medical expert, Dr. Berkowitz, does not recommend reversing the order of questioning as a condition necessary to protect the welfare of any of the minors. Declarations of Dr. Berkowitz [185-1, 185-3]. The Court is confident that Plaintiffs' counsel, as well as the witnesses' mother or grandmother, will do what they can do to make the minor witnesses as comfortable as possible before the deposition begins and during questioning from both sides. In the Court's view, again on the record before it, there is no good reason for Plaintiffs' counsel to question the minor Plaintiffs first at a deposition noticed by Defendants. The Court's objective here is not to structure or micromanage the depositions of Plaintiffs' witnesses in a way that will provide Plaintiffs with a strategic or tactical advantage in the litigation, but rather to safeguard the health and well-being of the minors during questioning and enable the parties to create a record that will be useful in this proceeding. The Court does not agree that it is necessary for Plaintiffs' counsel to question the witnesses first to accomplish either goal. Accordingly, Defendants may proceed first with their examinations of these witnesses, with Plaintiffs' counsel's examinations, if any, to follow as necessary.

Furthermore, neither party is permitted to ask leading questions unless the particular minor being deposed is reticent to testify fully and leading questions become necessary to elicit testimony relevant to the claims and defenses in this case. *See, e.g., United States v. Boyles,* 57 F.3d 535, 547 (7th Cir. 1995). The right to use leading questions under the Federal Rules of Evidence, regardless of whether those rules are enforced at a deposition or at trial, is not absolute. *United States v. Hall,* 165 F.3d 1095, 1117 (7th Cir. 1999). The Court has the discretion to circumscribe the right to use leading questions in certain circumstances, including where the individual subject to questioning is an inherently more vulnerable child witness. *Mendez v. City of Chicago,* 2020 WIL 3510692 (N.D Ill. 2020) ("The inability to ask leading questions is a procedural safeguard that can be used to protect child witnesses."). The Court is exercising that discretion here.

The Court does not accept Plaintiffs' argument that a child witness is only susceptible to the pressures of leading questions when those questions are being asked by an adverse party. As a matter of common sense, the dangers Plaintiffs identify as inherent in directing leading questions to a child witness – that the form of the questions may "suggest, intimidate, shape, limit or otherwise manipulate the child's telling of what happened" – apply equally to questions from both sides here. Plaintiffs' Motion [185] at 15. Put another way, if the leading form of a question is what creates the risk of suggestion or manipulation with a child witness, then that risk will be present regardless of whether the questions come from Plaintiffs or Defendants. Both sides must, in fairness, be prohibited from using leading questions except where absolutely necessary. Indeed,

neither the case law[1] nor literature[2] Plaintiffs cite in support of restricting only an adversarial party's use of leading questions draw such a distinction. Both sides have an interest in developing the truthful testimony of the three minor witnesses, not just Plaintiffs, and the best way to achieve that objective is to limit the use of leading questions by both sides as described above.[3]

Finally, both sides may show exhibits to the minor Plaintiffs during the depositions, including the minors' CBS interviews.[4] But the parties may not show video of the incident in question to the minors, to the extent any video exists. Both parties also are permitted to examine the witnesses concerning any relevant subject, not simply "liability and damages," a limitation that Plaintiffs urge here. As the Court has explained, the primary goal of this protective order is to limit the emotional strain on the minor Plaintiffs, not provide Plaintiffs a strategic or tactical advantage by limiting Defendants to only those subjects that Plaintiffs feel are appropriate or helpful to their own case. Defendants are entitled to seek relevant information from the minors as named Plaintiffs here, and it is not the Court's role to micromanage how Defendants do so by limiting exactly what topics may be discussed at the depositions of three percipient witnesses. Both sides are encouraged to keep a narrow focus on the who, what, where, when, and why of the incident in question – as

---

[1] *See, e.g., Harris v. Thompson,* 698 F.3d 609, 642 (7th Cir. 2012) ("We recognize that, in preparing for the testimony of child witnesses, *attorneys* should be especially careful to avoid suggesting answers or otherwise coaching the witness…A variety of procedural safeguards are available to ensure the integrity of children's testimony, such as having a child-witness examiner conduct or observe the interview, *avoiding the use of leading questions*, and of course videotaping the interview.") (emphases added); *Idaho v. Wright,* 497 U.S. 805, 819 (1990) (concluding that no one list of procedural safeguards – including limiting the use of leading questions with child witnesses – can, as a standard practice, assure whether a given statement is sufficiently trustworthy for Confrontation Clause purposes and specifically noting that the "use of leading questions with children, when appropriate, does not necessarily render responses untrustworthy.") (quoting J. Myers, Child Witness Law and Practice § 4.6, pp. 129–134 (1987)). Neither case suggests that the adverse nature of the party asking the questions is a factor to be considered.

[2] Plaintiff's Motion [185] at 15 (citing Questioning Child Witnesses, Nicholas Scurich, Ph.D., Departments of Psychology & Social Behavior and Criminology, Law & Society at the University of California – Irvine, January 31, 2013 (http://www.thejuryexpert.com/2013/01/questioning-child-witnesses/) ("*In general,* open-ended questions tend to elicit longer and richer responses than closed-ended questions, though close-ended questions are sometimes necessary when children are reticent (Lamb, et al., 2008). A potential problem of close ended questions is that they increase the likelihood of children acquiescing to (rather than producing) inaccurate information.") (emphasis added).

[3] The Court recognizes that Plaintiffs and their expert Dr. Berkowitz say Legend should not be asked leading questions only by the defense. But the reasons Dr. Berkowitz gives for that opinion apply equally to leading questions from Plaintiffs' counsel. Declaration of Dr. Berkowitz [185-1] at 6. ("[L]eading questions typically confuse children, especially when they are anxious or stressed. Unwittingly, children Legend's age often respond to authority with agreement in order not to seem disobedient and are confused when later confronted with their prior statement. Furthermore, children have been shown to be highly suggestible and may believe what they are being told by adults, especially adults in positions of authority.")

[4] The Court has reviewed the CBS interviews of all three minors submitted *in camera*. They do not contain any graphic content or video of the August 9, 2018 incident.

well as how it affected the minor Plaintiffs – to produce as concise and helpful a record of each witnesses' recollection and testimony as possible. But the Court cannot prejudge the potential relevance of other events or topics, such as statements the minors may have made to CBS or others about the incident, and conclude now that these subjects are outside the scope of permissible examination. The Federal Rules of Civil Procedure, time limitations on each deposition, and the presence of a neutral during at least one and perhaps the other depositions, all as outlined below, are enough, in the Court's view, to keep both sides squarely on track when questioning Legend, La'Niya, and E'monie.

## II.  Particularized Safeguards Necessary to Protect Each Individual Minor Plaintiff

Beyond the above-described procedures governing all three depositions, certain individualized safeguards are also necessary to account for the different ages and special needs of each minor. The Court now addresses the relevant considerations for Legend, La'niya, and E'monie in turn.

Legend Booth was eight years old at the time of the incident and is now only a few weeks shy of his eleventh birthday. He has been diagnosed with PTSD and OCD, and the heretofore unrebutted medical evidence of record supports the conclusion that Legend has limitations that would affect his ability to sit for a traditional, seven-hour adversarial deposition. In keeping with Plaintiffs' expert's opinion concerning Legend's tolerance for a deposition given his particular needs, which is the only medical evidence of record as of now, Legend's deposition will be limited to a total of three hours, not including breaks. Declaration of Dr. Berkowitz [185-1] at 4-5. Defendants initially are allotted no more than two hours and thirty minutes of the total time for their examination, excluding breaks. The balance of the time – thirty minutes – is left to Plaintiffs for their examination, if any. If, however, Plaintiffs' counsel determines after Defendants' two and a half hours of examination that he will not be conducting any examination of Legend based upon Legend's testimony until that point in time, or that he will not be conducting a trial-ready direct examination, then Defendants may continue their examination for an additional fifteen minutes. If Defendants examine Legend for a total of two hours and forty-five minutes, then Defendants must leave Plaintiff the final fifteen minutes for any examination he wishes to conduct of Legend.[5]

Given Legend's age and documented limitations, the Court also believes it is necessary to have a neutral person, preferably a former judge, present during his deposition. The parties shall therefore agree on an appropriate neutral for Legend's deposition and split the cost of his or her attendance, as a neutral's presence will benefit both sides during the deposition of a minor who

---

[5] The Court has no objection to the parties allocating the final thirty minutes of Legend's deposition differently if it is clear that Plaintiffs' counsel will not be conducting any examination of the witness. If the parties cannot agree to a different allocation of time, however, then the Court's allocation will control even if Plaintiffs' counsel does not use the final fifteen minutes of the deposition to examine the witness.

5

has particular sensitivities as outlined by Plaintiffs' expert. Declaration of Dr. Berkowitz [185-1] at 4-5. The neutral may, of course, exercise his or her discretion to resolve issues that arise during the deposition, but all parties retain their right to make or reserve objections under the Federal Rules and present issues to the Court as necessary, notwithstanding the presence of a neutral at a deposition. If the parties cannot agree on a neutral, then each side may propose a qualified individual and the Court will decide.

La'Niya and E'monie are, in the Court's view, in a different posture than Legend. La'Niya is now thirteen years old, and although she has also been diagnosed with PTSD, Plaintiffs' own medical expert does not recommend procedural safeguards for La'Niya beyond those that are already agreed by the parties. Declaration of Dr. Berkowitz [185-3] at 3. ("In my professional opinion, at this time La'Niya is capable of testifying in a deposition under the following conditions necessary for her welfare: a. If possible, uniformed police or security should not be present so as not to trigger a traumatic reaction. Defendant police officers should also not be present. b. La'Niya should be given the choice of having her mother and/or grandmother present at the deposition in order to offer emotional support."). Even more distinguishable from Legend is E'monie, who is currently fifteen years old and does not have any documented special needs or identified limitations relevant to his ability to sit for a fulsome deposition.[6]

As to La'Niya and E'monie, the parties are limited to a total of five hours for each deposition, excluding breaks. Defendants are allotted up to four hours to question each witness, after which Plaintiffs will have one hour to conduct any examination they want to conduct of either witness. Unlike the situation with Legend, Defendants are limited to the four hours of questioning provided in this Order even if Plaintiffs' counsel does not choose to examine the witness during the depositions, absent agreement of the parties to a different allocation. Under the circumstances, the Court believes that four hours should be enough time for Defendants to elicit La'Niya's and E'monie's testimony about matters relevant to this case. To be clear and for the avoidance of doubt, the parties may, by agreement of both sides and the minor witnesses, extend the deposition of either La'Niya or E'monie beyond the time limits set in this Order or reallocate the time set by the Court for questioning of either witness. Absent such agreement, however, the time limits set in this Order for the depositions of La'Niya and E'monie shall stand.

---

[6] Although Plaintiffs state that E'monie has been diagnosed with PTSD, they have not, as far as the Court can tell, provided any medical or other evidence in support of this assertion. Plaintiffs' Motion [185] at 3 ("As the direct result of this conduct, Lakai'ya, Legend, La'niya and E'monie – ages 4, 8, 11 and 13, respectively, at the time of the incident – now suffer from diagnosed Post-Traumatic Stress Syndrome ("PTSD"). (Declarations of Dr. Steven Berkowitz Regarding Legend Booth and La'Niya Booth, attached as Exhibits A and B, ¶ 4 and ¶ 3, respectively)."). Notwithstanding Plaintiffs' citation to Dr. Berkowitz's declarations, Dr. Berkowitz did not propound any information or diagnoses concerning E'monie, nor does it appear Dr. Berkowitz even had the opportunity to examine him.

Finally, based on the record developed with respect to the pending Motion, the Court is not convinced that the presence of a neutral is necessary during the depositions of either La'Niya or E'monie, even though Plaintiffs would like a neutral to be present for those depositions. If Plaintiffs nevertheless choose to have a neutral present for either deposition, then the Court orders them to utilize the same neutral selected for Legend's deposition. Plaintiffs alone will bear the cost of retaining that individual.

### III. Conclusion

The Court expects all parties to conduct their questioning of all three minors with due consideration of the Court's priorities and guidelines described above, especially those concerning the protection of the emotional well-being of the minors. The Court is confident they will do so. Defendant Officers' counsel stated during the September 17, 2020 hearing that he understands the sensitivity of deposing child witnesses and assured the Court that he will not conduct the same kind of deposition as he would of an adult party opponent. The Court is assuaged not only by this representation, but also by all counsels' statements on the record that the depositions of other minors in similar cases pending in this court involving the same counsel as in this case have proceeded smoothly.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 29, 2020