# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EBONY TATE, et. al.,<br><br>                Plaintiffs,<br><br>     v.<br><br>THE CITY OF CHICAGO, et. al.,<br><br>                Defendants. | No. 18 C 7439<br><br>Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

Relying on information from a confidential informant ("CI"), Chicago Police Officers Higgins and Burmistrz obtained warrants to execute simultaneous searches of two apartments at 5033 and 5039 S. Hermitage Avenue in Chicago, Illinois. Both search warrants targeted the same convicted felon, JaVale Bell ("Bell"), who was alleged to have been in possession of illegal firearms at both properties within forty-eight hours of the issuance of the warrants.

In sum, the warrant for 5033 S. Hermitage described that the CI had known Bell for five years and had seen him inside the residence and in possession of a firearm on multiple occasions. [ECF No. 244, Appendix O]. Specifically, within forty-eight hours of the issuance of the warrant, the CI relayed that he saw Bell inside and outside of the residence with a black semi-automatic handgun on his person and that at one point, he watched Bell take the gun out of his waistband and place it on the living room table. *Id.* According to the warrant, the CI told Officer Higgins that he knew Bell "lived at" the basement apartment of 5033 S. Hermitage and had done so for two years. *Id.* The CI was further shown a photograph of the residence at 5033 S. Hermitage and confirmed it was the same residence inside which he had observed Bell with a firearm. *Id.* At the time of the

warrant, Officer Higgins was also in possession of two photographs from Bell's Facebook page showing Bell standing outside the front door to 5033 S. Hermitage with a black semi-automatic handgun. [ECF No. 260-1] at 2; [ECF No 260-5].

The warrant for 5039 S. Hermitage similarly asserted that the CI had seen Bell in possession of a gun inside that residence within forty-eight hours of the issuance of the warrant. [ECF No. 244, Appendix P]. The CI described that Bell had a different gun in his waistband at that time – a two-tone, chrome and black semi-automatic handgun – and that Bell repeatedly removed it to pose for photos at the residence. *Id.* The CI also stated that he knows Bell to "reside at" the residence at 5039 S. Hermitage and confirmed the same when he was shown a picture of that home. *Id.* At the time of the warrant, Office Burmistrz was also in possession of three photographs from Bell's Facebook page allegedly depicting Bell holding a two-tone handgun outside of 5039 S. Hermitage. [ECF No 260-5].

When the search warrants were executed, CPD Officers located Bell in the basement apartment at 5039 S. Hermitage and recovered the two-tone handgun described in the search warrant for that residence. At 5033 S. Hermitage, however, they located no sign of Bell and no contraband – only Plaintiffs "spending a quiet evening at their apartment" before they were "interrupted by the sound of loud flashbangs going off outside of their front door" and armed SWAT officers breaking down the door. *Tate v. City of Chicago,* 2019 WL 2173802, at *1 (N.D. Ill. 2019) (describing the factual circumstances of the encounter between Defendant Officers and Plaintiffs during the execution of the warrant).

This federal lawsuit followed. As part of ongoing discovery in this case, Plaintiffs moved to compel production of the CI's identity and secure his deposition. [ECF No. 244].[1] Defendants,

---

[1] For consistency, the Court's page citations to Plaintiffs' Motion, Defendants' Joint Response, and Plaintiffs' Reply correspond with the CM/ECF pagination found at the top of each document.

in response, jointly maintained – as they had in response to Plaintiffs' repeated interrogatory requests for the same information – that the informant's privilege shielded the CI's identity and deposition. [ECF No. 260]. The Court agrees with Defendants that Plaintiffs have not met their burden of demonstrating that the privilege should yield and, for the reasons discussed below, denies Plaintiffs' Motion [ECF No. 244].

Squarely at issue, then, is whether the informant's privilege shields discovery of the identity or deposition of the CI under the particular facts of this case. As always, district courts have broad discretion in matters relating to discovery. *Brown–Bey v. United States,* 720 F.2d 467, 470–471 (7th Cir. 1983). And as Rule 26 provides, relevant material is discoverable unless an applicable evidentiary privilege is asserted:

> "Parties may obtain discovery regarding *any nonprivileged matter* that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

FED.R.CIV.P. 26(b)(1) (emphasis added).

The informant's privilege, asserted by Defendants here, has a long history, with "roots" as far back as "the English common law." *Dole v. Loc. 1942, Int'l Bhd. of Elec. Workers*, 870 F.2d 368, 372 (7th Cir. 1989).[2] It allows the government to withhold, as a matter of right, the identity of individuals who furnish information about violations of the law to law enforcement, *United*

---

[2] The parties devote a not insignificant portion of their briefs arguing about whether the privilege in fact belongs to Defendant Officers, the Chicago Police Department, the FBI, or some combination of the three. It is not clear what impact, if any, the name of the government entity asserting the privilege has on the *Roviaro* balancing test, and so the Court will not wade into this corollary debate between the parties. It is enough here that Defendant Officers have properly asserted the privilege as government actors in the context of this case. *See generally, Brimage v. Fowler,* 2019 WL 1619967, at *3 (N.D. Ill. 2019) ("while [the defendants] are being sued in their individual capacities, they are being sued for actions they took as government actors (namely, as police officers), and have standing to invoke the informer's privilege.).

*States v. Jefferson,* 252 F.3d 937, 940 (7th Cir. 2001), and its purpose is "the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). But the privilege is not absolute and can be overcome if the party seeking disclosure demonstrates that the identity of the informant is essential to a balanced measure of the issues and the fair administration of justice. *Dole*, 870 F.2d 372–373 (citing *Roviaro*, 353 U.S. at 60–61). While it "will not yield to permit a mere fishing expedition, nor upon bare speculation that the information may possibly prove useful," *Id.* at 373, the privilege must give way when the requesting party establishes that the need for the identity of the informant outweighs the public's interest in effective law enforcement. *Guzman v. City of Chicago*, 242 F.R.D. 443, 447 (N.D. Ill. 2007).

The scope of the privilege includes both the informant's identity and the contents of his or her communications with the government, at least insofar as those contents would tend to reveal the informant's identity.[3] *Johnson v. City of Chicago,* 2012 WL 3292827, at *2 (N.D. Ill. 2012). The privilege is applicable in both civil and criminal cases. The Seventh Circuit has even suggested that "[i]n civil cases the privilege, which limits the right of disclosure usually called for by the

---

[3] Plaintiffs argue that the Court should consider, as a weight on the *Roviaro* scale, that Plaintiffs are willing to depose the CI with a protective order in place to shield his identity from the public. [ECF No. 273] at 7. The Court is not convinced, however, that Plaintiffs' proposed compromise has any impact on the application of the *Roviaro* balancing test, which places the burden on Plaintiffs to assert enough of a need for the information to overcome the government's interests. That is, although Plaintiffs assert that it is "standard for Courts ordering an informant's deposition to enter a protective order covering his identity," that is only true in cases where the *Roviaro* balancing test already substantively weighs in the plaintiff's favor. [ECF No. 244] at 8, n.2 (citing cases). Plaintiffs have not, as explained in detail in the body of this Memorandum Opinion, made that showing under the facts of this particular case. Nor have Plaintiffs addressed how, given the nature of the informant's relationship with Bell as described in the search warrants and the types of questions Plaintiffs seek to ask, it can reasonably be said that the contents of the CI's communication with Officer Higgins will not tend to reveal the informant's identity in any event. *Johnson,* 2012 WL 3292827, at *2; *see also, Roviaro,* 353 U.S. at 59–60.

Federal Rules of Civil Procedure, is arguably greater…since not all constitutional guarantees which inure to criminal defendants are similarly available to civil defendants." *Dole*, 870 F.2d at 372 (citing *Hampton v. Hanrahan*, 600 F.2d 600, 637 & n. 40 (7th Cir. 1979), reversed in part on other grounds, 446 U.S. 754 (1980); *In re United States*, 565 F.2d 19, 22 (2d Cir. 1977); *Wirtz v. Robinson & Stephens, Inc.,* 368 F.2d 114, 116 (5th Cir. 1966)). At a minimum, there are additional considerations in civil cases that courts should weigh in the balance. *Guzman,* 242 F.R.D. at 447.

A few judges in this district, before "even considering a departure from the general rule of privilege under *Roviaro*," have required a preliminary offer of proof – as would be relevant to a *Franks* determination – that puts "the truth of the affiant's statements regarding the confidential informant in issue." *Krauser v. Scalise*, 1989 WL 158006, at *2 (N.D. Ill. 1989) (Kocoras, J.); *see also, Grayer v. Greenwood*, 2007 WL 1531809, at *3 (N.D. Ill. 2007) (Valdez, J.); *Slaven v. City of Chicago,* 1999 WL 160313, at *3 (N.D. Ill. 1999) (Plunkett, J.) ("Before the issue of the informer's privilege can be decided, however, [a plaintiff] must establish that the warrant affidavit should be pierced. A warrant affidavit is presumptively valid, and a plaintiff seeking to pierce it must make an offer of proof tending to show that the affidavit contained a false statement necessary to establish probable cause, which was included either knowingly or with reckless disregard for the truth.") (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)).[4] This is because, as a practical matter, discovery of an informant's identity and testimony is often the first step in building the information necessary to meet the *Franks* standard and effectively challenge the sufficiency of a warrant in a § 1983 Fourth Amendment claim, which Plaintiffs have asserted in this case. *Grayer,* 2007 WL 1531809, at *3; Plaintiffs' Third Amended Complaint [ECF No. 70].

---

[4] Although one of these judges is the assigned District Judge in this case and both sides cite that Judge's decision in *Krauser*, neither side here seems to be directly asking the Court to apply the two-step analysis espoused in that case. Instead, both sides appear to conform their arguments solely to the *Roviaro* balancing test when discussing whether the informant's privilege should give way in this case.

Most judges in this district, however, have not explicitly engaged in such a two-step analysis and instead focus on the *Roviaro* balancing test. *Guzman*, 242 F.R.D. at 449, n.3 (citing cases).[5]

In a longitudinal sense, however, all the cases in this district appear to subscribe to a similar philosophy: a fulsome balancing analysis under *Roviaro* takes into consideration a party's asserted need for the information being sought and how that information might ultimately be used later in the case. The evidence may be relevant to a plaintiff's ability or desire to challenge the existence or credibility of the informant, the truthfulness of the affiant in obtaining the warrant, or some other purpose under *Roviaro* and its progeny. And while these considerations will often overlap with what evidence might be relevant or probative in a subsequent *Franks* analysis, it may not always be necessary to wade directly into the merits of whether the moving party has made a sufficient *Franks* proffer to justify its discovery request and the piercing of the confidential informant privilege. It is enough for the court, when deciding a discovery motion seeking the informant's identity, as here, to be aware of what evidence might be relevant to the *Franks* issue in a § 1983 Fourth Amendment case and analyze the asserted need for the informant's identity in that context, as well as the broader factual circumstances of that particular case.[6]

On the merits, Plaintiffs outline "two, broad ways" in which the informant's identity and deposition are "material to plaintiffs' claims" such that the informant's privilege should give way.

---

[5] *Jefferson,* 252 F.3d at 941–942; *United States v. Valles,* 41 F.3d 355, 358 (7th Cir. 1994); *United States v. Bender,* 5 F.3d 267, 269 (7th Cir. 1993); *United States v. Spears,* 965 F.2d 262, 273 (7th Cir. 1992); *United States v. Gary,* 2007 WL 257639, at *4 (N.D. Ill. 2007); *United States v. Mikhail,* 2006 WL 3827323, at *5 (N.D. Ill. 2006); *Manning v. Buchan,* 357 F.Supp.2d 1036, 1048 (N.D. Ill. 2004); *Johnson v. Perry,* 1987 WL 5683, at *2 (N.D. Ill. 1987); *see also, Brimage,* 2019 WL 1619967, at *3-4; *Johnson,* 2012 WL 3292827.

[6] Moreover, in the context of this discovery referral [ECF No. 92] and consistent with 28 U.S.C. § 636, this Court is reluctant to wade into the potentially dispositive issue of whether Plaintiffs have made enough of a showing under *Franks* to challenge the validity of the search warrant which is inherent in the two-step analysis. *Guzman,* 242 F.R.D. at 449, n.3. Nevertheless, the Court has taken into consideration in its analysis that some courts assess the need for the identity or deposition of the informant, or the relevance of such information, with reference to what would be relevant or probative to a *Franks* analysis.

[ECF No. 244] at 6. Plaintiffs then clarify in their reply brief that there are, in fact, "three reasons why need [sic] the informant's testimony in order to show that Higgins lacked probable cause for the warrant for their home." [ECF No. 273] at 3. Those reasons are as follows:

1. "First, without the informant's testimony about what statements he made and/or did not make to Higgins about Bell's connection to 5033 – *so that the Court or a jury can determine whether Higgins' reliance on the informant's statement that Bell resided there was reasonable* - plaintiffs will not have the chance to prove an essential element of their count II: namely, that in his affidavit Higgins recklessly relied on the informant's statement that Bell lived at plaintiffs' address when he had reason to doubt it."

2. "Second, without the informant's testimony, plaintiffs will not be able to defeat Higgins' assertion of qualified immunity as to count II on summary judgment; that is to say, plaintiffs will not have the benefit of the informant's testimony about the statements he made and/or did not make to Higgins *so that they can argue either that Higgins' reliance on the informant's statement(s) was unreasonable* or that the statements Higgins attributed to the informant in his complaint for search warrant were false or both."

3. Third, without the informant's testimony plaintiffs will not be able to prove their remaining § 1983 claims, which *largely depend on whether Higgins' reliance on the informant's statement was reasonable.*

Plaintiffs' Reply [ECF No. 273] at 3 (emphasis added).

As suggested by the emphasis added above, Plaintiffs' three reasons are, in fact, readily distilled to one: Plaintiffs believe the informant's deposition may help them prove Officer Higgins' reliance on the informant's statements was unreasonable. This may, in turn, contribute to their attempts to pierce the presumptive validity of the search warrant under *Franks* and prove up their § 1983 Fourth Amendment claim. In the Court's view, however, Plaintiffs' speculation that identifying or deposing the CI may help them show Officer Higgins acted unreasonably in obtaining a search warrant for 5033 S. Hermitage, on the facts of this case and given other information Plaintiffs already have and intend to use to make that argument, is an insufficient reason to abrogate the informant's privilege. Granting Plaintiffs' Motion on that basis would be

7

inconsistent with the law and application of the privilege in this circuit. *See generally, Brimage,* 2019 WL 1619967 (Cox, J.); *Johnson,* 2012 WL 3292827 (Keys, J.); *Grayer*, 2007 WL 1531809 (Valdez, J.); *Guzman*, 242 F.R.F. 443 (Cole, J.); *Thames By and Through Thames v. Chicago Police Officers*, 1994 WL 55656 (N.D. Ill. 1994) (Grady, J.); *Krauser,* 1989 WL 152981 (Kocoras, J.); *Warlick v. Cross*, 1989 WL 51400 (N.D. Ill. 1989) (Kocoras, J.). Plaintiffs have to show that their need for this evidence outweighs the public's interest in effective law enforcement and that the information sought is essential to a balanced measure of the issues and fair administration of justice in this case. <u>Roviaro</u>, 353 U.S. at 60–61; *Dole*, 870 F.2d at 372–73. And as Judge Kocoras put it in *Krauser*, "even the greatest need cannot be an automatic ticket to informant disclosure." *Krauser*, 1989 WL 152981, at *1.

While Plaintiffs may have identified a purported need for the informant's identity or deposition if that information were not shielded by a privilege, their failure to directly confront the question of *how* the requested discovery will produce "essential" information, *Dole*, 870 F.2d at 372–73, or even information Plaintiffs do not already have in their possession, *Guzman,* 242 F.R.D. at 447–48, is fatal to their Motion. The path to the CI's identity or deposition is not as tautological as Plaintiffs seem to assume. As a threshold matter, it is difficult to see how the identity or deposition of the *CI* will answer questions of law in this particular case that turn on *Officer Higgins'* knowledge and the reasonableness of *his* actions in obtaining and executing the search warrant for the 5033 S. Hermitage residence. Plaintiffs do not suggest, for example, that the informant's existence was fabricated, bringing this case out of the realm of *Thames, Krauser,* and *Hampton*. [ECF No. 244] at 23–24; *see Thames,* 1994 WL 55656, at *3 (the plaintiff filed an affidavit suggesting that the police had fabricated the information in the search warrant and questioning whether the informant existed at all); *Krauser,* 1989 WL 158006, at *4–5 (in which

the plaintiff provided an affidavit and objective evidence calling into question the existence of the informant); *Hampton*, 600 F.2d at 637–39 (same). Nor do Plaintiffs argue – or at least, not with enough specificity to meet their burden of proof – that Officer Higgins deliberately falsified information in the affidavit or made up information he knew was untrue and attributed it to the CI.[7] Instead, Plaintiffs focus their argument almost entirely on the theory that Officer Higgins and the Area South Gun Team received dubious information from the CI that was so obviously inaccurate that they should have conducted further investigation into Bell's connection with 5033 S. Hermitage. With this argument, Plaintiffs essentially accept the premise that the CI provided Officer Higgins with the information Officer Higgins says he provided, but argue that Officer Higgins was unreasonable in relying on this information without further investigation and that Officer Higgins ultimately did not have sufficient probable cause to obtain a search warrant.[8]

---

[7] Plaintiffs themselves draw this distinction at the outset of their Motion, pointing out that" [w]hile courts overturn the informant's privilege where there is a question as to whether the police falsified information in the affidavit in support of the warrant, they also do so where there is a question whether police should have doubted the informant's reliability and taken easy steps to corroborate his information." [ECF No. 244] at 10–11 (citations omitted). Plaintiffs then place themselves in the latter category by immediately segueing into their next argument: "Officer Higgins had obvious reasons to doubt the informant's statements regarding Bell's connection to Plaintiffs' residence and failed to take simple steps to corrobrorate, [sic] instead submitting an affidvait [sic] he should have known included a false statement on which probable cause depended[.]" [ECF No. 244] at 11 (emphasis omitted).

[8] Although Plaintiffs do vaguely allude to the possibility that Officer Higgins falsified information in the search warrant affidavit, they do not provide any factual support for this argument in the context of this Motion. *See, e.g.,* [ECF No. 273] at 3 ("either [] Higgins' reliance on the informant's statement(s) was unreasonable or [] the statements Higgins attributed to the informant in his complaint for search warrant were false or both."). Plaintiffs cannot simply put down a marker that Officer Higgins *may* have falsified information he attributed to the CI as a placeholder and then substantively ignore it by proceeding with their primary argument that Officer Higgins should not have relied on the informant given other information he had available to him. Rather than address a superficial and unsupported argument, the Court instead focuses on the heart of Plaintiffs' asserted need for the informant's identity and deposition: to support a showing that Officer Higgins' reliance on the informant's statement was unreasonable. *See, e.g.,* [ECF No. 244] at 11 ("Discovery has shown that officer Higgins had obvious reasons to doubt the accuracy of the informant's statement that the search warrant target, Javale Bell, lived in plaintiffs' apartment, but Higgins included and relied on this statement in his sworn complaint without ever verifying or corroborating it."); [ECF No. 244] at 24 ("Though conflicting statements from the informant had given Higgins obvious reason to doubt the truth of the informant's statement that Bell had long lived there, Higgins recklessly disregarded this information, information of which he should have been aware, and took no steps whatsoever to

9

On that point, Plaintiffs are already armed with "abundant evidence," in their own words, to support their argument that Officer Higgins's reliance on the CI was unreasonable. [ECF No. 273] at 11. For example, as it pertains to the CI's reliability and credibility, Plaintiffs already know the CI is a convicted felon, that he had previously been an informant on only ten cases at the time the warrant was issued, and that he was paid $500 for the successful recovery of the gun next door at 5039 S. Hermitage. Similarly, Plaintiffs say they have already discovered, through Defendant Officers' depositions, that neither Officer Higgins nor Officer Burmistrz ran Accurint searches, conducted controlled buys at the 5033 S Hermitage residence, or took other corroborative steps that Plaintiffs characterize as necessary to verify the warrant was supported by probable cause. So too can Plaintiffs point to the language of the search warrants for 5033 and 5039 S. Hermitage, which they say contain obvious internal contradictions, as well as the contradictions Plaintiffs say they have discovered by deposing the Defendant Officers involved in the search warrant process. [ECF No. 272] at 11–12 (describing five purported contradictions between the language of the search warrants and the depositions). Plaintiffs' own asserted need for the CI's identity or deposition here – namely, to ask the CI why he told Officer Higgins that Bell lived at 5033 S. Hermitage when Plaintiffs in fact live there – seeks information that appears to be largely irrelevant or superfluous in the context of this case. *Krauser,* 1989 WL 158006, at *3 ("whether the informant was right or wrong is irrelevant to the *Franks* inquiry which focuses, instead, on the truth of the affiant."); *see also* [ECF No. 244] at 24 ("Plaintiffs plan to ask the informant what he actually told

---

corroborate any connection whatsoever between Bell and 5033."); [ECF No. 273] at 10 ("Plaintiffs have shown that Higgins recklessly relied on the informant's statement that Bell lived at 5033 when he had reasons to doubt its veracity – reasons that he disregarded by not disclosing them in his affidavit and not investigating them - and that this statement was essential to probable cause for the warrant."); [ECF No. 273] at 13 ("Even with his knowledge of the informant's various and conflicting statements about Bell's connections to 5033 and 5039, Higgins nevertheless failed to investigate to corroborate the informant's statement that Bell resided at 5033.").

the affiants regarding Bell's connection to 5033 and 5039, his tie if any to plaintiffs and their apartment, if and why he told the affiants that Bell lived in both residences and if so how he knew that information, and where he observed Bell in relation to plaintiffs' apartment.).

To be clear, the Court is not weighing the merits of the ultimate question of whether probable cause supported the search warrant for 5033 S. Hermitage or whether Plaintiffs have made a sufficient offer of proof under *Franks* to pierce the presumptive validity of that warrant.[9] The Court's conclusion is only this: with or without the CI's identity and deposition, Plaintiffs ability to argue that it was improper, illegal, or unreasonable for Officer Higgins to rely on the CI is not as hampered or prejudiced as they say it is in their Motion. Allowing Plaintiffs to take the CI's deposition under these circumstances, based only on speculation that the CI's testimony may contain something helpful to Plaintiffs' arguments that Defendant Officers were derelict in their duty to investigate and corroborate the CI's statements before breaking down Plaintiffs' door, is not supported by the law or facts of this particular case. *See, e.g., Warlick,* 1989 WL 51400, at *2 ("The main focus of [the plaintiff's] claim is not how she and her house became a target, but rather how [the police officer's] actions following the tip amounted to gross misconduct.").

Plaintiff relies on only two cases in which a court determined the informant's privilege should fall away absent contemporaneous evidence of purportedly falsified information or an informant who was alleged not to exist. The first is *Coleman-Johnson v. Chicago Police Officers,* 1996 WL 66140 (N.D. Ill. 1996), which is both legally and factually distinguishable. As a matter of law, this Court agrees with Judge Cole's assessment of the holding of *Coleman-Johnson* in a similar case:

---

[9] While the ultimate *Franks* question is not before this Court, the context of *Franks* does at least inform the balancing test articulated by the Supreme Court in *Roviaro*. So, to the extent there are overlapping factual considerations that bear on the essential nature of the requested discovery, the Court has taken note of them.

> "*Coleman-Johnson* relied on the district court's opinion in *Simmons v. City of Racine, PFC (Police and Fire Com'n)*, 37 F.3d 325, 329 (7th Cir. 1994), which "held that determination of the informants' reliability was essential because the police officers totally relied on informants' tips to establish probable cause for searching plaintiff." 1996 WL 66140, *3. **The difficulty with that holding is it radiates a doctrine without avowing it. That is, if the district court was right, the informant's privilege would have to yield in virtually every case except where corroboration existed.** But in that context, the informant's information would be superfluous. Beyond the palpable, analytical unsatisfactoriness of such a rule, the Seventh Circuit's decision in *Simmons* strongly disapproved of the district court's conclusion. The Court of Appeals reluctantly concluded it had no jurisdiction to consider an appeal from the district court's order compelling discovery. 37 F.3d at 327. It emphasized, however, that it was "particularly troubled by the failure of either the magistrate judge or the district judge even to mention this concern in their orders," and that it was "exceedingly troubled by the district court's lack of interest in the safety of the informant...." Id. at 328–329. This is not exactly an endorsement of the result or the mode of analysis by the district court, which was then uncritically relied on by *Coleman-Johnson*."

*Guzman*, 242 F.R.D. at 449 (emphasis added).

*Coleman-Johnson* is also distinguishable on its facts. In that case, the court noted that the police officers had entirely failed to corroborate the informant's statements that formed the basis for the search warrant. Here, by contrast, Defendants point to evidence beyond the CI's statement that they say is corroborative, relevant to probable cause, and probative of whether Bell was engaged in criminal activity at 5033 S. Hermitage. This evidence includes two Facebook photographs of Bell holding a black semi-automatic handgun outside the front door of 5033 S. Hermitage, the CI's independent confirmation that photographs of Bell and the 5033 S. Hermitage residence accurately represented the targets of the search warrant, and Officer Higgins' self-described surveillance of the property. [ECF No. 260] at 6–7. How that evidence may impact any final determination in this case remains to be seen. Plaintiffs argue this evidence is irrelevant to any probable cause inquiry, while Defendants say these facts known to Officer Higgins tended to corroborate what he was told by the CI. However the issue may be decided, the existence of this

evidence differentiates this case from *Coleman-Johnson* and is something this Court has considered as part of the broader *Roviaro* balancing test at play here.

Judge Chang's discovery ruling in *Edwards v. Joliff-Blake,* 13 CV 4558 (N.D. Ill. 2014), the second case on which Plaintiffs rely, also arose out of dissimilar facts. *Edwards* involved a search warrant where the only evidence of criminal activity was a single drug transaction that occurred outside the presence of law enforcement between a confidential informant and the target of the warrant. *Id.* at 1–2. When the warrant was presented to the judge for approval, the judge had a private, five-minute conversation with the informant before making his probable cause determination and issuing the warrant. *Id.* at 2. Because the informant was "the only witness (other than the judge) to that conversation" and that conversation at least partially formed the basis for the warrant, Judge Chang reasoned that the plaintiff's identity and testimony were essential to a balanced measure of the issues. *Id.* at 2. The facts of *Edwards* are incomparable to the circumstances of this case, where, as described above, Defendants have at least identified some evidence they say goes to whether Bell was engaged in criminal activity at 5033 S. Hermitage. Nor is there any allegation in this case that the CI alone knows "essential information" that formed the basis of the warrant to search 5033 S. Hermitage, akin to the private conversation between the informant and the judge in *Edwards*.

At the end of the day, Plaintiffs must demonstrate enough of a need for the informant's identity or deposition such that the government's entitlement to the informant's privilege must give way. In the Court's view, Plaintiffs have not done so here. Discovering the identity of or deposing the CI is not essential to litigating Plaintiffs' causes of action based on the evidence and arguments presented. Instead, Plaintiffs' arguments in this case for deposing the CI seemingly would justify deposing a confidential informant in virtually every case in which law enforcement

relies in some way on information provided by such a person, and that is not the law. On balance, therefore, in this case, "the public interest in encouraging citizens to provide the police with information about illegal gun possession – particularly in a city with a well-publicized gun violence problem – outweighs Plaintiff[s'] need for that information." *Brimage*, 2019 WL 1619967, at *4. The safety concerns for the informant and overarching public interest in encouraging effective law enforcement carry the day. Accordingly, for the foregoing reasons, Plaintiffs' Motion [ECF No. 244] is denied.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 11, 2021