58482-LSK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| EBONY TATE, for herself and on behalf of her minor children, E'MONIE BOOTH, LA'NIYA BOOTH, LEGEND BOOTH and LAKAI'YA BOOTH; and CYNTHIA EASON, | ) | Case No. 18-cv-07439 |
| | ) | Judge Charles P. Kocoras |
| Plaintiffs, | ) | |
| v. | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | Jury Demanded |
| THE CITY OF CHICAGO, et al. | ) | |
| Defendants. | ) | |

**DEFENDANT OFFICERS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants OFFICERS MICHAEL HIGGINS (Star #3766), JENNIFER BURMISTRZ (Star #14060), MATTHEW EVANS (Star 5815), PATRICK KENNEDY (Star #14414), PACHARA SANTISUK (Star #6607); ANDREW CUOMO (Star #5853), ERIC JAMES (Star #4308), EVAN KILPONEN (Star #12854), NICHOLAS LINKER (Star #12858), RICARDO LOPEZ (Star #11987), RYAN MCCALLUM (Star #16333), MICHAEL PANTANO (Star #11886), MARCO ZENERE (Star #17319), SGT. PATRICK BOYLE (Star #975), SGT. JOHN HROMA (Star #1729), and LT. JAMES D. CASCONE (Star #560), ("Defendant Officers"), by and through their attorneys, Querrey & Harrow, Ltd., and for their Memorandum of Law In Support of their Motion for Summary Judgment on all counts, state as follows:

# TABLE OF CONTENTS


**INTRODUCTION** ..... 1

**SUMMARY OF UNDISPUTED FACTS** ..... 1

Procurement and Issuance of the Search Warrants ..... 1

Execution of the Search Warrants ..... 4

**STANDARD OF REVIEW** ..... 5

**ARGUMENT** ..... 6

I. The Search Warrant for Plaintiffs' 5033 Residence Was Valid ..... 6

A. Plaintiffs Have Failed to Overcome the Presumption of the Warrant's Validity ..... 7

B. The Search Warrant Was Supported by Probable Cause ..... 9

C. The Remaining Officers Are Also Entitled to Summary Judgment ..... 14

II. Summary Judgment Is Proper as to Count III of the Third Amended Complaint ..... 14

A. SWAT Assistance Was Necessary to Execute the High Risk Search Warrants and the Initial Entry and Clearing of the Residence Was Reasonable ..... 14

B. It Was Not Unreasonable to Continue Executing the Search Warrant of Plaintiffs' 5033 Residence ..... 19

C. Summary Judgment Is Proper as to Any Property Damage Claim ..... 20

III. Defendants Are Entitled to Summary Judgment on Plaintiffs' Federal and State Law False Arrest/False Imprisonment Claims ..... 22

IV. Officers Should Be Afforded Qualified Immunity on the § 1983 Claims ..... 24

V. Plaintiffs' Assault Claim Fails as a Matter of Law ..... 27

VI. Summary Judgment Is Proper as to Plaintiffs' NIED and IIED Claims ..... 28

VII. The Existence of Probable Cause Defeats the State Law Trespass Claim ..... 30

# TABLE OF AUTHORITIES

Cases

*Sallenger v. City of Springfield, Ill.*, 630 F. 3d 499 (7th Cir. 2010) .......... 6

*Carter v. City of Milwaukee*, 743 F.3d 540 (7th Cir. 2014) .......... 6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 6

*Harney v. Speedway SuperAmerica, LLC*, 526 F 3d 1099 (7th Cir. 2003) .......... 6

*Franks v. Delaware*, 438 U.S. 154 (1978) .......... 7

*Henderson v. City of Chi.*, No. 14 CV 1164, 2016 U.S. Dist. LEXIS 88406 (N.D. Ill. July 8, 2016) .......... 7

*Suarez v. Town of Ogden Dunes, Ind.*, 581 F.3d 591 (7th Cir. 2009) .......... 7, 9

*Molina ex rel Molina v. Cooper*, 325 F.3d 963 (7th Cir. 2003) .......... 7, 21

*Beauchamp v. City of Noblesville*, 320 F.3d 733 (7th Cir. 2003) .......... 7, 13

*London v. Guzman*, 26 F. Supp. 3d 746 (N.D. Ill. 2014) .......... 8

*Horne v. Wheeler*, No. 03 CV 7252, 2005 U.S. Dist. LEXIS 19596 (N.D. Ill. Sept. 6, 2005) .......... 8

*Brock v. City of Chi.*, No. 17 CV 3393, 2018 U.S. Dist. LEXIS 123974 (N.D. Ill. July 25, 2018) .......... 8

*United States v. Peck*, 317 F.3d 754 (7th Cir. 2003) .......... 9, 10

*Junkert v. Massey*, 610 F.3d 364 (7th Cir. 2010) .......... 9, 25

*United States v. Dismuke*, 593 F.3d 582 (7th Cir. 2010) .......... 9

*United States v. Zamudio*, 909 F.3d 172 (7th Cir. 2018) .......... 9

*United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010) .......... 9

*United States v. Glover*, 755 F.3d 811 (7th Cir. 2014) .......... 9, 10, 11, 13

*Illinois v. Gates*, 462 U.S. 213 (1983) .......... 11, 13

*Calhoun v. City of Chi.*, 2010 U.S. Dist. LEXIS 115796 (N.D. Ill. Oct. 28, 2010) .......... 11, 25

*United States v. Johnson*, 125 F. Supp. 2d 308 (N.D. Ill. 2000) .......... 11

*United States v. Searcy*, 664 F.3d 1119 (7th Cir. 2011) .......... 11, 12

*United States v. Garcia*, 528 F.3d 481 (7th Cir. 2008) .......... 11

*United States v. Koerth*, 312 F.3d 862 (7th Cir. 2002) .......... 11

*United States v. Taylor*, 471 F.3d 832 (7th Cir. 2006) .......... 12

*Wade v. Ramos*, No. 16 CV 9022, 2019 U.S. Dist. LEXIS 44591 (N.D. Ill. Mar. 19, 2019) .......... 12, 25

*Edwards v. Jolliff-Blake*, 907 F.3d 1052 (7th Cir. 2018) .......... 13, 19, 24, 25

*Clark v. City of Chi.*, No. 10 CV 1803, 2010 U.S. Dist. LEXIS 121685 (Nov. 17, 2010) .......... 14

*Minix v. Canarecci*, 597 F.3d 824 (7th Cir. 2010) .......... 14

*McDonald v. Vill. of Winnetka*, 371 F.3d 992 (7th Cir. 2004) .......... 16

*Graham v. Connor*, 490 U.S. 386 (1989) .......... 16
*Horton v. Pobjecky*, 883 F.3d 941 (7th Cir. 2018) .......... 16, 17
*Baird v. Renbarger*, 576 F.3d 340 (7th Cir. 2009) .......... 17, 26
*Guzman v. City of Chi.*, 565 F.3d 393 (7th Cir. 2009) .......... 19
*Jacobs v. City of Chi.*, 215 F.3d 758 (7th Cir. 2000) .......... 19
*Washington v. Godinez*, No. 95 C 7612, 1996 WL 599055, at *1 (N.D. Ill. Oct. 17, 1996) .......... 20, 27
*Becerra v. Mauresse*, No. 2011 CV 417, 2011 U.S. Dist. LEXIS 9078, at *1 (N.D. Ill. Jan. 28, 2011) .......... 21
*Lewis v. Anderson*, 308 F.3d 768 (7th Cir. 2002) .......... 21
*Hessel v. O'Hearn*, 977 F.3d 299 (7th Cir. 1992) .......... 21
*Billups v. Kinsella*, No. 08 C 3365, 2010 WL 5110121, at *1 (N.D. Ill. Dec. 9, 2010) .......... 21, 23
*United States v. Clifton Banks*, 628 F. Supp. 2d 811 (N.D. Ill. 2009) .......... 22
*United States v. Jennings,* 544 F.3d 815 (7th Cir. 2008) .......... 22
*Muehler v. Mena*, 544 U.S. 93, 98 (2005) .......... 22, 23, 24
*Michigan v. Summers,* 452 U.S. 692, 705 (1981) .......... 22
*United States v. Burns*, 37 F.3d 276 (7th Cir. 1994) .......... 22
*People v. Edwards*, 144 Ill. 2d 108, 126 (1991) .......... 22
*Simmons v. City of Chi.*, No. 14 CV 9087, 2017 U.S. Dist. LEXIS 17293 (N.D. Ill. Feb. 7, 2017) .......... 22
*Meerbrey v. Marshall Field & Co.*, 189 Ill. App. 3d 1085 (1st Dist. 1989) .......... 23
*Pearson v. Callahan*, 555 U.S. 223 (7th Cir. 2009) .......... 24
*Tangwall v. Stuckey*, 135 F.3d 510 (7th Cir. 1998) .......... 24
*Kisela v. Hughes*, 138 S. Ct. 1148 (2018) .......... 24
*Catlin v. City of Wheaton*, 574 F.3d 361 (7th Cir. 2009) .......... 24
*Draine v. Bauman*, 708 F. Supp. 2d 693 (N.D. Ill. 2010) .......... 24
*Malley v. Briggs,* 475 U.S. 335 (1986) .......... 24, 25
*United States v. Leon,* 468 U.S. 897 (1984) .......... 24
*King v. Avila*, 760 F. Supp. 681 (N.D. Ill. 1989) .......... 25, 26
*Boyce v. Fernandez,* 77 F.3d 946 (7th Cir. 1996) .......... 26
*Archie v. City of Chi.*, 2020 U.S. Dist. LEXIS 176221 (N.D. Ill. Sept. 25, 2020) .......... 27, 28
*Hespe v. City of Chicago*, 307 F. Supp. 3d 874 (N.D. Ill. 2018) .......... 27
*Johnson v. Bishof,* 2015 IL App (1st) 131122 .......... 28
*Prokop v. Hileman*, 588 F. Supp. 3d 825(N.D. Ill. 2022) .......... 28
*Tyagi v. Sheldon*, 2017 U.S. Dist. LEXIS 152150, at *20 (N.D. Ill. 2017) .......... 28

*Feltmeier v. Feltmeier*, 207 Ill. 2d 263 (2003) .......... 28

*Pavlik v. Kornhaber*, 326 Ill. App. 731 (1st Dist. 2001) .......... 28, 29

*Smith v. Dominick's Finer Foods, Inc.*, 2009 U.S. Dist. LEXIS 65715, at *1 (N.D. Ill. July 28, 2009) .......... 29

*Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041 .......... 29

*Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1 (1992) .......... 29

*Campbell v. A.C. Equip. Servs. Corp., Inc.*, 242 Ill. App. 3d 707 (4th Dist. 1993) .......... 29

*Carr v. Vill. of Richmond*, No. 96CV50203, 1996 U.S. Dist. LEXIS 17069 (N.D. Ill. Nov. 15, 1996) .......... 29

*McGrath v. Fahey*, 126 Ill. 2d 78, 88-89 (1988) .......... 29

*Caldwell v. City of Chi.*, No. 08CV710, 2010 U.S. Dist. LEXIS 67992 (N.D. Ill. July 8, 2010) .......... 30

*People v. Goduto*, 21 Ill. 2d 605 (1961) .......... 30

*City of Tuscola v. Otto*, 33 Ill. App. 3d 853, 856 (4th Dist. 1975) .......... 30

*Weeks v. City of Chi.*, No. 12 CV 10056, 2014 U.S. Dist. LEXIS 107660 (N.D. Ill. Aug. 6, 2014) .......... 30

**Statutes**

745 ILCS 10/2-202 .......... 24, 28

Rules

Fed. R. Civ. P. 56(c)(2) .......... 5, 6

# INTRODUCTION

In their Third Amended Complaint, Plaintiffs bring the following seven claims against Defendant Officers arising from the August 9, 2018 search of their residence at 5033 S. Hermitage, Chicago, Illinois: Count II: Unlawful search-Invalid Warrant under § 1983; Count III: Unlawful Search – Unreasonable Manner of Entry/Search under § 1983; Count IV: False Arrest/Imprisonment under § 1983; Count V: Assault under state law; Count VI: False arrest/Imprisonment under state law; Count VII: Intentional Infliction of Emotional Distress/Negligent Infliction of Emotional Distress under state law; and Count VIII: Trespass under state law. Plaintiffs' claims against Defendant Officers fail for multiple reasons. First, the search warrant in question was supported by ample probable cause, including the attestation of an FBI registered confidential informant and a photo of the target next to Plaintiffs' front door with a handgun. The search warrant affiant did all the investigation required under Seventh Circuit case law to corroborate the account, and a judge approved the search warrant. There is no evidence in the record suggesting that the affiant was reckless or in any way dishonest in his application for the warrant. Because the warrant was valid, most of Plaintiffs' other claims also fail. Moreover, the Defendant Officers are entitled to qualified immunity on Plaintiffs' federal claims. For these reasons, Defendant Officers respectfully request summary judgment be entered in their favor.

# STATEMENT OF FACTS

## A. Procurement and Issuance of the Search Warrants

The RCI, who had an extensive history of providing credible and reliable information to the FBI and Chicago Police Officers, informed Officer Higgins that Javale Bell, a convicted felon, was in possession of an all-black semi-automatic handgun in the basement apartment of 5033 S. Hermitage ("Plaintiffs' 5033 residence"). (DSOF 6-12). Specifically, the RCI had observed the black handle to a black semi-automatic handgun sticking out from Bell's waistband before observing Bell place the black semi-automatic handgun on a table, where it remained. (DSOF 10). The RCI even provided Officer

Higgins with a photograph from Bell's Facebook account showing him leaning against the front door to the Plaintiffs' 5033 residence while holding the all-black handgun (as if holding a cell phone). (DSOF 15). The following is that picture:



The RCI also told Officer Higgins that Bell resided at 5033 S. Hermitage and used 5039 S. Hermitage ("5039 residence"), which is next door to 5033 S. Hermitage, to keep narcotics and weapons and that the RCI had observed Javale Bell in possession of firearms in both residences. (DSOF 13, 20). Specifically, the RCI stated that Bell had a second weapon, a two-tone multi-capacity handgun at the neighboring building of 5039 S. Hermitage and possibly a rifle. (DSOF 24). Other

social media photos confirmed that Bell had the two-tone handgun at 5039. (DSOF 38). After learning that the RCI had observed Bell in the basement of 5039 S. Hermitage with another firearm, Officer Higgins asked Officer Burmistrz to handle the search warrant investigation for the 5039 residence. (DSOF 21). Officer Higgins and Officer Burmistrz then conducted their own separate investigations. (DSOF 23, 39-40).

With respect to Plaintiffs' 5033 residence, Officer Higgins conducted an investigation to corroborate the information he received from the RCI. (DSOF 15, 17-18, 28). Upon receiving the information from the RCI, including the above Facebook photo, Officer Higgins searched for the target on police databases based on the RCI's description of the target and located Bell's criminal history and mugshot. (DSOF 17-18). Bell's criminal history report confirmed that Bell was a convicted felon who did not have a FOID card or Concealed Carry License. (DSOF 17). Officer Higgins texted a CPD photo of Bell to the RCI who positively identified him as the individual with the black semi-automatic handgun in the Plaintiffs' 5033 residence. (DSOF 18). Officer Higgins also texted a photo of the two story, three unit apartment building located at 5033 S. Hermitage and the RCI positively identified Plaintiffs' basement apartment from the photo. (DSOF 18).

Officer Higgins also conducted surveillance on three different occasions—once in the morning for about 15 minutes, once in the afternoon for about 5 minutes, and once in the evening for about 15 minutes—during which he parked his car at both corners of the 5000 Block of South Hermitage and watched the block and the target residences. (DSOF 36). Each time he went to the 5000 block of South Hermitage, Officer Higgins drove around the target residences by driving down the street and through the alley but did not observe anyone in front of the target residences or entering or leaving the target residences during his surveillance. (DSOF 36).

After ASA Mescall approved the warrant for Plaintiffs' 5033 residence, Officer Higgins appeared before Judge Sullivan and presented her with the Complaint for Search Warrant, Search

Warrant, the RCI's criminal history, including any pending investigation, as well as any payment, promise, or expectation of payment. (DSOF 29-31). Judge Sullivan then approved the search warrant. (DSOF 30).

**B. Execution of the Search Warrants**

Once both search warrants were approved, they were submitted to SWAT for a risk assessment. (DSOF 37, 44). As the Mission Supervisor and Command and Control, SWAT Sgt. Hroma reviewed the Complaints for Search Warrant and the Search Warrants and completed the Search Warrant Risk Assessment which determines whether or not a search warrant is high risk. (DSOF 44). If the assessment results in a score of 35 or above, the warrant is considered to be high risk. For the 5033 and 5039 S. Hermitage search warrants, Sgt. Hroma searched databases for calls for service and arrests for the addresses and the target's criminal background, and he viewed photos of the target buildings obtained from Google and the Cook County Assessor's website, and had other SWAT officers conduct surveillance. (DSOF 44-48). The risk assessment for the underlying search warrants equaled 108 because: (1) Javale Bell had a documented affiliation with the Black P Stone gang, (2) surveillance revealed a large number of associates outside of the residences, (3) family and gang associates may be on site, (4) there was information that an AR-15 may be in one of the residences, (5) a handgun with an extended magazine and four additional handguns may be present, (6) there were multiple lookouts on the block, and (7) there was a steel security door at 5033 S. Hermitage. (DSOF 45). Sgt. Hroma thus accepted the two warrants for SWAT service as high risk warrants. (DSOF 45).[1]

[1] During the course of his assessment, Sgt. Hroma informed Officer Burmistrz that he observed two meters on 5039 S. Hermitage indicating that it was a multi-unit building and not a family residence following which Officer Burmistrz corrected and re-submitted the search warrant for 5039 S. Hermitage, which was approved by Judge Sullivan on August 8, 2019. (DSOF 47).

It was determined that the search warrants would be executed simultaneously for the safety of the Officers and occupants, including the children possibly located in the basement apartment at 5033 S. Hermitage, because there were social medial photos of the weapons they were looking for, including a semi-automatic gun with an extended magazine and a weapon-mounted light. (DSOF 48). The search warrants were executed simultaneously on August 9, 2018. (DSOF 51-54). Upon entering Plaintiffs' 5033 residence, the entry process slowed down considerably when SWAT officers encountered Plaintiffs and directed them to exit. (DSOF 57).

Plaintiffs were detained outside of their residence during the execution of the search warrant during which none of them were handcuffed. (DSOF 70). Immediately upon exiting the residence, Plaintiffs were directed to the "safe side" of a SWAT truck so that the SWAT vehicle was between them and the target residences. (DSOF 70). When Plaintiff Ebony Tate began experiencing a panic attack and had difficulty breathing, the SWAT medic Officer Bardsley assisted her and an ambulance was called. (DSOF 71). Ms. Tate was then treated by a paramedic. (DSOF 71). While outside, Ms. Eason was provided with a blanket. (DSOF 71). Once the scene was secured, Plaintiffs were permitted to sit on the stairs leading up to the second floor apartment at 5033 S. Hermitage until Officers were finished executing the warrant for their 5033 residence. (DSOF 70). Bell and the two-tone handgun were found in 5039 S. Hermitage. (DSOF 52). Ms. Tate testified that she believed the entire incident lasted approximately 45 minutes, Ms. Eason testified that she believed the incident lasted approximately 1 hour and 15 minutes, and E'monie Booth ranged the event from ninety minutes to two hours. (DSOF 78).

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

*Sallenger v. City of Springfield, Ill.*, 630 F. 3d 499, 503 (7th Cir. 2010) (citing FED. R. CIV. P. 56(c)(2)). When determining whether summary judgment is appropriate, the Court should construe all facts and reasonable inferences in the light most favorable to the non-moving party. *See Carter v. City of Milwaukee*, 743 F.3d 540, 543 (7th Cir. 2014). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *Harney v. Speedway SuperAmerica, LLC*, 526 F 3d 1099, 1104 (7th Cir. 2003) (emphasis added).

## ARGUMENT

### I. The Search Warrant for Plaintiffs' 5033 Residence Was Valid

Plaintiffs claim that the search warrant procured for their residence, the basement apartment at 5033 S. Hermitage, was "invalid." First, it must be noted at the outset that the invalid search warrant claim can only possibly be brought against Officer Higgins, who was the search warrant affiant for Plaintiffs' 5033 residence, because there is zero evidence that any of the other Officers were directly responsible for procuring the warrant or that they knew of any alleged deficiencies in the warrant. (DSOF 22, 34, 39-43).

Although Plaintiffs lodge a host of complaints based solely on the unsupported claim that the warrant was invalid, the ONLY way Plaintiffs can succeed on an "invalid warrant" claim under existing case law is to show that the affiant officer intentionally made false statements or withheld key information. Plaintiffs' claims fall flat here. The undisputed material facts in this case clearly demonstrate that Officer Higgins had probable cause to procure judicially approved search warrant for Plaintiffs' 5033 residence after receiving information from a reliable and credible RCI that Javale Bell was engaging in criminal activity there by being a convicted felon in possession of a handgun.

Plaintiffs' claims, therefore, cannot withstand summary judgment because the undisputed facts establish that Defendant Officers were operating in good faith under the legally valid search warrants.

**A. Plaintiffs Have Failed to Overcome the Presumption of the Warrant's Validity**

The search warrant in the case at bar and the affidavit supporting it are presumed valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). "Challenging a search warrant based solely on the veracity of the supporting affidavit is 'tough sledding' because "to survive summary judgment the plaintiffs must provide evidence that the officers knowingly or intentionally or with a reckless disregard for the truth made false statements to the judicial officer and show that the false statements were necessary to the judicial officer's determination that probable cause existed."' *Henderson v. City of Chi.*, 2016 U.S. Dist. LEXIS 88406, at *13-14 (N.D. Ill. July 8, 2016) (Kendall, J.) (quoting *Suarez v. Town of Ogden Dunes, Ind.*, 581 F.3d 591, 596 (7th Cir. 2009); *Molina ex rel Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003)); *Beauchamp v. City of Noblesville*, 320 F.3d 733, 742 (7th Cir. 2003) (citing *Franks*, 438 U.S. at 155-56). In this case, Plaintiffs have not introduced any evidence that Officer Higgins knowingly, intentionally, or with a reckless disregard for the truth, made false statements to or withheld evidence from Judge Sullivan. Nor have Plaintiffs shown that any such statements were necessary to the judicial determination that probable cause existed.

Rather, the Third Amended Complaint shows Plaintiffs are critical of the fact that there were two search warrants for Javale Bell at neighboring residences and that each search warrant complaint stated that he resided at that address. These grievances are nothing more than a red herring intended to distract from the indisputable fact that the search warrant for Plaintiffs' 5033 residence was supported by probable cause. First, the record contains no evidence that Officer Higgins believed or should have believed that there was a possibility that Bell was said to have resided at 5039. His search warrant investigation was conducted independently of that of Officer Burmistrz, and each had separate conversations with the RCI. (DSOF 23, 39). The RCI told Officer Higgins that Bell resided

at Plaintiffs' 5033 residence and stashed drugs and weapons at 5039. (DSOF 20). For her part, Officer Burmistrz said that the RCI told her that Bell would be at 5039 but never told her that Bell "resided" there; she said she used that word in her search warrant application on her own. (DSOF 25).[2]

Second, even if Officer Higgins had been aware that Bell was described as having resided at 5039, it would have been possible for Bell to have resided part-time both at Plaintiffs' 5033 Residence and at 5039. Indeed, multiple Defendant Officers, including Officers Higgins and Burmistrz, and Sgt. Boyle, testified that, in their experience, it was not unusual for criminals to use multiple places as their residence, to move around frequently, or to engage in criminal activity in multiple locations. (DSOF 27). Notably, there is no constitutional requirement that the target of a search warrant actually reside at the residence to be searched. *See London v. Guzman*, 26 F. Supp. 3d 746, 754 (N.D. Ill. 2014); *Horne v. Wheeler*, No. 03 CV 7252, 2005 U.S. Dist. LEXIS 19596, at *9-13 (N.D. Ill. Sept. 6, 2005) (explaining whether a target actually resides at the target residence is not material to the determination of probable cause). Rather, there only needs to be sufficient evidence, which there was here, for Officer Higgins to think Bell was engaging in criminal activity at Plaintiffs' 5033 residence. *Brock v. City of Chi.*, No. 17 CV 3393, 2018 U.S. Dist. LEXIS 123974, at *10 (N.D. Ill. July 25, 2018) (Feinerman, J.).[3]

Finally, and perhaps most significantly, the undisputed facts establish that Judge Sullivan reviewed the materials for the search warrants for Plaintiffs' 5033 Residence and 5039 within minutes of each other and approved both warrants. (DSOF 30-31). The fact that each search warrant stated that Bell resided at that address is immaterial in light of Judge Sullivan's approval and the fact that the information was provided by a reliable RCI who had witnessed Bell engaging in criminal conduct in

---

[2] Officer Burmistrz was told by the informant "that's where he'd be" and chose the word "resided" to describe same in her complaint for search warrant (DSOF 25). Officer Burmistrz had zero personal involvement with the 5033 warrant. (DSOF 39).

[3] It should also be noted that while the police databases did not specifically tie Bell to 5033 S. Hermitage, they also did not tie him to the basement apartment at 5039 S. Hermitage where he was in fact found during the execution of that search warrant. (DSOF 26). Notably, Bell's ID contained a Wisconsin address. (DSOF 26).

both locations, and the social media photos showed Bell committing crimes at the target residences by possessing firearms. (DSOF 6-10, 15, 19-21, 24-25, 28, 30-31). Plaintiffs, therefore, cannot overcome the presumption that the search warrant for their 5033 residence was valid, especially since *Glover* is satisfied as discussed below.

**B. The Search Warrant Was Supported by Probable Cause**

Officer Higgins' Complaint for Search Warrant for Plaintiffs' 5033 residence sufficiently established the existence of probable cause. "When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." *United States v. Peck*, 317 F.3d 754, 755-56 (7th Cir. 2003). "An affidavit submitted in support of a search-warrant application will be sufficient to support a probable-cause finding if, 'based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime.'" *Junkert v. Massey*, 610 F.3d 364, 367-68 (7th Cir. 2010) (quoting *United States v. Dismuke*, 593 F.3d 582, 586 (7th Cir. 2010)); *Suarez*, 581 F.3d at 595. A search warrant affidavit, therefore, only needs to contain facts that "allow for a reasonable inference that there is a fair probability that evidence will be found in a particular place." *United States v. Zamudio*, 909 F.3d 172, 176 (7th Cir. 2018) (quoting *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010)).

The totality of the circumstances turns on the informant's "reliability, veracity, and basis of knowledge," and thus Courts analyze the following factors when considering search warrant affidavits premised on facts provided by an informant: "[1] the level of detail, [2] the extent of firsthand observation, [3] the degree of corroboration, [4] the time between the events reported and the warrant application, and [5] whether the informant appeared or testified before the magistrate." *United States v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014); *Junkert*, 610 F.3d at 367. No one factor is determinative so "a deficiency in one factor may be compensated for by a strong showing in another or by some other

indication of reliability." *Peck*, 317 at 756. A consideration of the *Glover* factors shows that the search warrant for Plaintiffs' 5033 residence was supported by probable cause.

First, the Complaint for Search Warrant and Search Warrant were sufficiently detailed and specific because they included the target's name, address, and the items to be seized, and the Complaint for Search Warrant also contained a detailed account of the criminal activity observed first hand by the RCI in that the RCI had personally observed Bell with black semi-automatic handgun while in Plaintiffs' 5033 residence. (DSOF 8-10, 13). It also explained that the RCI had previously seen and handled guns and was thus able to determine that the gun was real. (DSOF 11). It further provided that the RCI had known Bell for over five years and knew Bell to be in possession of firearms and to always have a firearm with him even though he was a convicted felon and did not have a FOID card or Concealed Carry License. (DSOF 12). The RCI further stated that Bell had lived in the basement apartment at 5033 S. Hermitage for two years and that the RCI had observed the black semi-automatic handgun multiple times while in that residence. (DSOF 13).

Officer Higgins' corroboration of the information provided by the RCI satisfied the third *Glover* factor. It must first be noted that Officer Higgins was able to concretely corroborate the fact that Bell was engaging in criminal activity at Plaintiffs' 5033 residence with the above social media photograph showing him standing at the front door to that residence while holding the black handgun. (DSOF 15-16). Officer Higgins also searched for the target through the police databases based on the RCI's description and nickname for the target and determined that Bell was the target. (DSOF 17). Bell's criminal history report confirmed that he was a convicted felon who did not have a FOID card or Concealed Carry License. (DSOF 17). The RCI then positively identified Bell and Plaintiffs' 5033 residence from photographs Officer Higgins provided. (DSOF 18). Officer Higgins also conducted surveillance on three different occasions, but did not observe anyone in front of the target residences or entering or leaving the target residences. (DSOF 36).

These undisputed facts demonstrate that Officer Higgins sufficiently corroborated the information he received relative to the RCI's firsthand observations of criminal activity occurring in Plaintiffs' 5033 residence, and that the search warrant was supported by probable cause. *See Illinois v. Gates*, 462 U.S. 213, 234 (1983) (explaining that criminal activity observed first-hand affords greater weight to an informant's information); *Calhoun v. City of Chi.*, No. 09 CV 2200, 2010 U.S. Dist. LEXIS 115796, at *9-10 (N.D. Ill. Oct. 28, 2010) (finding informant's statements established probable cause as they were based on personal observations and corroborated by officer). *See also U.S. v. Johnson*, 125 F. Supp. 2d 308, 311 (N.D. Ill. 2000) ("Although corroboration by an officer's independent investigation bolsters a finding of reliability, firsthand observations of a CI alone are enough.").

Next, the fourth *Glover* factor is also satisfied because the RCI had observed the target with the black handgun in the in Plaintiffs' 5033 residence during the 48 hours leading up to August 7, 2018. (DSOF 8-10). The RCI had even returned to the residence to obtain fresh information. (DSOF 9). The search warrant was approved on August 7, 2018, and executed on August 9, 2018. (DSOF 30, 49). The information was thus fresh and timely. *See United States v. Searcy*, 664 F.3d 1119, 1122 (7th Cir. 2011) ("This information was [] transmitted within a relatively short period of time—72 hours—before the application for the search warrant and certainly was not stale."); *United States v. Garcia*, 528 F.3d 481, 483, 487 (7th Cir. 2008) (reasoning information was fresh because drugs had been observed in the target residence three days before the warrant was approved and executed).

Finally, after ASA Mescall approved the warrant, Officer Higgins appeared before Judge Sullivan and presented her with the Complaint for Search Warrant, Search Warrant, the RCI's criminal history, including any pending investigation, as well as any payment, promise, or expectation of payment. (DSOF 29-31). Judge Sullivan then approved the search warrant. (DSOF 30). The fact that Judge Sullivan approved the search warrant weighs in favor of finding it was supported by probable cause. *See United States v. Koerth*, 312 F.3d 862, 866-67 (7th Cir. 2002) ("A judge's decision to issue a

warrant is given considerable weight and is overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, fails to allege specific facts and circumstances to allow the judge to reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.") (internal quotations omitted).

Finally, the RCI was not required to appear before Judge Sullivan because he was a registered confidential informant. (DSOF 31). Although the RCI did not appear before Judge Sullivan, the Complaint for Search Warrant coupled with the Officers' testimony, unequivocally establish that the RCI had a lengthy history of providing credible and reliable information to Officers leading to the recovery of contraband, arrests, and criminal prosecutions. (DSOF 6-7). After encountering the RCI during a traffic stop, Officer Higgins brought the RCI to the attention of the FBI-CPD Joint Task Force at which point the FBI vetted the RCI, determined the RCI had useful information, and registered the RCI. (DSOF 5-6). After being registered with the FBI, the RCI provided information to Chicago Police Officers regarding locations known to have narcotics or firearms on at least 10 occasions in 2018 alone prior to the search warrants in this case. (DSOF 7). As the RCI had a history of providing credible and reliable information to the FBI and to Chicago Police Officers for years, the RCI's reliability and credibility are beyond dispute. This is further illustrated by the fact that the RCI did provide accurate information regarding Bell in this case as Bell and the two-tone firearm were found in the 5039 residence. (DSOF 52). It is thus immaterial that the RCI did not appear before Judge Sullivan. *See United States v. Taylor*, 471 F.3d 832, 840 (7th Cir. 2006) (deeming search warrant valid because the informant's track record was strong evidence that he was a reliable source of information). *See also Searcy*, 664 F.3d at 1123 ("An informant's previous dealings with the police may lend credibility to [his] story."); *Wade v. Ramos*, No. 16 CV 9022, 2019 U.S. Dist. LEXIS 44591, at *22 (N.D. Ill. Mar. 19, 2019) (Pallmeyer, J.) ("[T]he fact that [the informant] was a trusted informant for another law enforcement agency [the ATF] may have bolstered his credibility.").

A consideration of the *Glover* factors indisputably demonstrates that the RCI was reliable, and the search warrant was supported by probable cause. When deciding if probable cause existed, Courts "'look only at what the officer knew at the time he sought the warrant, not at how things turned out in hindsight.'" *Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1057 (7th Cir. 2018) (quoting *Beauchamp*, 320 F.3d at 743). Great deference is given to the probable cause finding made by the judge who evaluated the warrant application, and it will be upheld if "there is a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Id.* (quoting *Gates*, 462 U.S. at 236). Officer Higgins, therefore, acted reasonably in procuring the search warrant for Plaintiffs' 5033 residence.

To the extent Plaintiffs have brought their Unlawful Search-Invalid Warrant claim against Sgt. Boyle and Lt. Cascone, summary judgment is also proper. First, neither Sgt. Boyle nor Lt. Cascone participated in the search warrant investigations. Although Sgt. Boyle, who was Officers Higgins and Burmistrz's supervisor, was informed by the Officers that they were conducting search warrant investigations and was kept updated, he did not have any interaction with the RCI and did not assist with either investigation. (DSOF 22). Moreover, Sgt. Boyle had knowledge regarding the RCI's history of providing very good information and considered the RCI to be the most credible and reliable informant he had ever known. (DSOF 22). Sgt. Boyle believed there was probable cause to enter and search Plaintiffs' 5033 residence and 5039 due to his knowledge of the RCI's reliability and credibility, coupled with the fact that Officers Higgins and Burmistrz are experienced officers. (DSOF 22).

Next, Lt. Cascone had zero involvement in the procurement of the search warrants. (DSOF 34). In fact, his review and approval of the search warrants occurred *after* they had already been approved by the Assistant Cook County State's Attorney and Judge Sullivan. (DSOF 32). Moreover, Lt. Cascone, who was aware that the information was provided by a reliable FBI RCI, believed probable cause existed for the search warrants for Plaintiffs' 5033 residence and 5039 based on his

conversations with the Officers and his review of the materials. (DSOF 33-34). He thus approved the two search warrants. (DSOF 32). Summary judgment is thus proper as to Sgt. Boyle and Lt. Cascone.

### C. The Remaining Officers Are Also Entitled to Summary Judgment

In order for an officer to be found liable pursuant to § 1983, "a plaintiff must establish the [officer's] personal involvement in the alleged constitutional deprivation." *Clark v. City of Chi.*, No. 10 CV 1803, 2010 U.S. Dist. LEXIS 121685, at *9 (Nov. 17, 2010) (quoting *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)) (internal citations omitted). Summary judgment should be granted as to the remaining Officers because they lacked any personal involvement in the procurement of the search warrant for Plaintiffs' 5033 residence.

First, Officer Burmistrz had no involvement with procuring the search warrant for Plaintiffs' residence. *See supra*. Rather, her sole involvement was to investigate and procure the search warrant for 5039. (DSOF 39-40). Next, Officer Kennedy merely assisted in conducting surveillance with Officer Higgins and had no other involvement. (DSOF 41). All other Defendant Officers have also testified that they did not assist with the investigation for or the procurement of the search warrant for Plaintiffs' residence. (DSOF 42-43). Summary judgment in their favor is thus appropriate.

## II. Summary Judgment Is Proper as to Count III of the Third Amended Complaint

In Count III of their Third Amended Complaint, Plaintiffs bring a § 1983 claim for Unlawful Search-Unreasonable Manner of Entry and Search in which they bring a myriad of claims. Specifically, Plaintiffs contend that the manner in which Officers entered and searched their apartment was unreasonable because they failed to knock and announce their office, deployed flash bang devices, pointed guns, unnecessarily damaged or destroyed Plaintiffs' property, continued searching after Bell was arrested at 5039, and unreasonably detained Plaintiffs. (Dkt. 70). Summary judgment is appropriate as to these claims.

### A. SWAT Assistance Was Necessary to Execute the High Risk Search Warrants and the Initial Entry and Clearing of the Residence Was Reasonable

Once Judge Sullivan approved the search warrants for Plaintiffs' 5033 residence and 5039 on August 7, 2018, Officers Burmistrz and Higgins' search warrant materials were submitted to SWAT for a risk assessment. SWAT Sgt. Hroma reviewed the Complaints for Search Warrant and the Search Warrants and completed the Search Warrant Risk Assessment which determines whether or not a search warrant is high risk. (DSOF 37, 44). The risk assessment established that the search warrants were high risk because: (1) Bell had a documented affiliation with the Black P Stone gang, (2) surveillance revealed a large number of associates outside of the residences, (3) family and gang associates may be on site, (4) there was information that an AR-15 may be in one of the residences, (5) a handgun with an extended magazine and four additional handguns may be present, (6) there were multiple lookouts on the block, and (7) there was a steel security door at 5033 S. Hermitage. (DSOF 45-46). SWAT thus accepted the two warrants for service as high risk warrants. (DSOF 45).

Sgt. Hroma then prepared a comprehensive Mission Plan detailing the SWAT teams' roles, providing important information, and showing various social media photos of Bell in the possession of firearms at the two target residences. (DSOF 48). It was determined that the search warrants would be executed simultaneously for the safety of the Officers and occupants, including the children possibly located in Plaintiffs' 5033 residence. (DSOF 48). Although the initial plan was to make a dynamic entry (rapid entry), the process slowed down considerably and was no longer a dynamic entry once Plaintiffs were encountered and called out by officers. (DSOF 48, 57).

As part of their claim that the initial entry was unreasonable, Plaintiffs contend that flash bang devices were deployed outside of their residence before Officers made entry. (Dkt. 70). The undisputed facts, however, establish that flashbang device was deployed at the front door of the basement apartment at *5039 S. Hermitage* and another flashbang device was deployed near the *5039 S. Hermitage* residence. (DSOF 51). No flashbang devices were deployed at or in Plaintiffs' residence because Officers had received information that children may be present at that location. (DSOF 51).

Apart from hearing the flashbang devices and believing they were close, Plaintiffs have offered no evidence, other than pure speculation, that they were actually deployed at their residence. Summary judgment is thus proper as to any claim that the search warrant was unreasonably executed because of flashbang devices. *See McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004) (explaining that mere speculation is insufficient to defeat summary judgment).

Prior to making entry into Plaintiffs' 5033 residence, SWAT Officers knocked and announced their office while there was an announcement over the PA system of a SWAT vehicle that police were executing search warrants at the target residences. (DSOF 53). After a brief amount of time and no answer, SWAT Officer Linker used a halligan bar in conjunction with SWAT Officer Pantano using a ram in order to open the steel security door. (DSOF 54). The interior door was already open. (DSOF 54). SWAT Officers Linker and Pantano then stepped aside so the other SWAT officers could enter with the shield officer, SWAT Officer Santisuk, entering first. (DSOF 54).

Next, the undisputed facts show that summary judgment is also warranted with respect to Plaintiffs' claim that Officers briefly pointed rifles at them after entering the residence.[4] (DSOF 68). Courts analyze gun pointing claims under the Fourth Amendment reasonableness standard. Specifically, Courts "pay careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The totality of the circumstances is assessed "from the perspective of a reasonable officer on the scene" by considering "the pressures of time and duress, and the need to make split-second decisions under intense, dangerous, uncertain, and rapidly changing circumstances," and without the benefit of hindsight. *See Horton v. Pobjecky*, 883 F.3d 941, 950 (7th Cir.

[4] Although Plaintiffs have not brought a separate excessive force claim against Defendant Officers, the same arguments set forth in this Section would also apply to any excessive force claim.

2018) (reasoning that Courts "must refuse to view the events through hindsight's distorting lens"). Significantly, the Seventh Circuit has provided that police officers are entitled to point their guns at citizens "when there is a reason to fear danger," as in execution of a warrant based on "crimes that contain the use of force as an element, crimes involving *possession of illegal weapons*, and drug crimes, all of which are associated with violence." *See Baird v. Renbarger*, 576 F.3d 340, 344-46 (7th Cir. 2009) (emphasis added) (collecting cases in which gun pointing for a significant period of time accompanied by threats was deemed unreasonable as well as cases deeming the pointing of guns reasonable when there is potential danger to officers).

First, it should be noted that no member of the Area South Gun Team (Boyle, Higgins, Burmistrz, Evans, or Kennedy) was involved in the initial entry and clearing of Plaintiffs' 5033 residence and were stationed away from the target residences until the residences were cleared. (DSOF 34, 72, 80). SWAT Officers Santisuk, Cuomo, James, Kilponen, Linker, Lopez, McCallum, Pantano, and Zenere were tasked with the entry and clearing of Plaintiffs' 5033 residence due to the high risk nature of the warrant. (DSOF 53-65). Officers' testimony establishes that SWAT officers held their firearms consistent with their SWAT training on muzzle safety, selector safety (rifle safety switch) and trigger safety and did not intentionally point their firearms at any of the occupants when executing the search warrant at Plaintiffs' 5033 residence. (DSOF 66). The undisputed facts in this case prove that it was reasonable for SWAT Officers to have their guns displayed when making entry into Plaintiffs' residence to execute the high risk search warrant and that any minimal, inadvertent gun pointing during this short duration was not unlawful. *Baird*, 576 F.3d at 344-46. It is undisputed that when entering Plaintiffs' 5033 residence, Officers needed to walk down several stairs in order to reach the living room and it appeared dark inside as they were entering after being outside in the sunlight. (DSOF 54). Significantly, it is undisputed that the search warrant was a high risk search warrant due to the fact that Bell, a convicted felon and gang member who was expected to be armed, could be

found in either Plaintiffs' 5033 residence or at 5039 and because the search warrant was for an illegal firearm. (DSOF 45). Given the inherently dangerous circumstances, it would have been reasonable for SWAT Officers to have their weapons displayed.

Plaintiffs' own accounts relating to the alleged brief rifle-pointing on entry fail to defeat summary judgment. Specifically, Plaintiffs claim the alleged rifle-pointing occurred inside of the residence. Plaintiff Ebony Tate testified that she exited the residence within 15-20 seconds of the Officers entering and that one Officer briefly pointed a rifle at her for 3-5 seconds. (DSOF 67). La'Niya Booth saw her mother exit and she also left the house quickly, with an officer guiding them out of the house. (DSOF 69). She further testified that a firearm was pointed at her for "a quick second." (DSOF 68). E'monie Booth recognized it was the police in the house almost immediately after he got to the kitchen where he waited a couple seconds and then left the house within 15-20 seconds with Legend Booth in front of him and his grandmother Cynthia Eason behind him. (DSOF 69). The three of them exited at the same time. (DSOF 69). Ms. Tate saw her mother, Ms. Eason, only 30 seconds later outside by the truck, being assisted by another SWAT officer. (DSOF 69). Thus, all Plaintiffs quickly left the residence as soon as SWAT officers entered and directed them to leave so the home could be safely cleared.

Finally, the undisputed facts further establish that certain SWAT Officers could not have been involved in any alleged rifle pointing because they were either not equipped with a rifle or not near Plaintiffs at the time Plaintiffs claim any rifle-pointing occurred. Specifically, Officer Santisuk's only firearm was a pistol. (DSOF 55). Officer Pantano did not carry a rifle because he had a ram. (DSOF 56) Sgt. Hroma had no involvement in the entry and clearing of Plaintiff's Residence. (DSOF 80) Officer Cuomo was in the back of the line of officers and did not enter Plaintiffs' Residence until after the alleged rifle-pointing would have taken place. (DSOF 60). The following officers either did not enter Plaintiffs' 5033 residence at all or not until after the initial officers entered and cleared the

residence, which is when Plaintiffs claim the alleged rifle-pointing took place: Officer James, Officer Kilponen, Officer Zenere, and Officer Linker. (DSOF 61-64). Therefore, at the very least, summary judgment is warranted as to these officers, as well as Lt. Cascone, Sgt. Boyle, and Officers Higgins, Burmistrz, Kennedy, and Evans because they could not have been one of the officers alleged to have pointed a rifle. Finally, there is no evidence that the manner in which Plaintiffs were detained was unreasonable as they were lawfully detained incident to the valid search warrant as discussed below in Section III.

### B. It Was Not Unreasonable to Continue Executing the Search Warrant of Plaintiffs' 5033 Residence

Officers were not required to call off the search of Plaintiffs' 5033 residence simply because Bell was found at 5039. Officers had a valid search warrant and there was still reason to believe the black semi-automatic handgun could be found at Plaintiffs' 5033 residence. Most cases concerning whether officers should call off searches involve search warrants that did not plainly describe the residence to be searched and the officers thus executed the warrant at the wrong address. *Edwards*, 907 F.3d at 1059 (citing *Guzman v. City of Chi.*, 565 F.3d 393, 397-98 (7th Cir. 2009); *Jacobs v. City of Chi.*, 215 F.3d 758, 771 (7th Cir. 2000)). There was no confusion here as to where the search warrant was to be executed. (DSOF 8-10, 20-21, 24, 30, 43). Moreover, the search warrants were not just for Bell, they were for the two residences themselves. (DSOF 30).

Plaintiffs' claim overlooks the fact that the warrants were for different firearms as the warrant for Plaintiffs' 5033 residence was for a black semi-automatic handgun, and the 5039 warrant was for a tone-tone semi-automatic handgun. (DSOF 8-10, 20-21, 24). The handgun identified in the warrant for Plaintiffs' residence was not recovered at 5039 and Officers were legally authorized to conduct a systematic search of Plaintiffs' residence incident to the warrant. Further, Officer Higgins was unaware a gun was found at 5039 until his search was finished. (DSOF 79). Summary judgment is thus proper as to any claim that Officers should have called off or terminated the search of Plaintiffs' residence.

### C. Summary Judgment Is Proper as to Any Property Damage Claim

Plaintiffs have not set forth sufficient evidence to support their property damage claim. Plaintiffs contend that Officers made a mess while searching the residence and damaged the front screen door and door frame, a closet door, and the door to a utility room, iPads, an Xbox battery pack, and the volume button on a karaoke machine. (Dkt. 70, ¶¶ 99-106). These claims, however, do not amount to a constitutional violation.

While executing a search warrant, officers on occasion, must damage property. *Dalia v. United States*, 441 U.S. 238, 258 (1979). The Constitution does not preclude officers from making a mess while conducting a search incident to a search warrant. *See generally Washington v. Godinez*, No. 95 C 7612, 1996 U.S. Dist. LEXIS 15373, at *4-5 (N.D. Ill. Oct. 17, 1996) (finding it reasonable to remove insulation, tear down ceiling tiles, and go through food because the contraband could be hidden in small containers or out-of-reach areas). Plaintiffs do not claim that Officers searched areas where the contraband could not be hidden. Moreover, as set forth above, SWAT Officers Linker and Pantano needed to make forced entry into the residence and then into a closet or room in order to clear it and, as such, any alleged damage to doors or door frames was reasonable.

Next, Plaintiffs' claim that Officers damaged items belonging to the children sounds in negligence. Specifically, Plaintiffs allege that the children had iPads that where in a tote or plastic trunk and that officers dumped out the contents while searching the residence and that a battery pack and karaoke machine were damaged. (Dkt. 70, ¶¶ 104-106). It is undisputed that Officers Higgins, Kennedy, and Evans deny damaging any property, let alone intentionally damaging property, and do not recall specifically seeing those items in the residence. (DSOF 74-75). Plaintiffs have notably not offered any evidence that these items were intentionally damaged by the Officers. With respect to the iPads, Plaintiffs simply allege that the tote or trunk was dumped out. They do not even allege that Officers were aware that iPads were in the tote or trunk when the item was dumped out. At most,

Plaintiffs' property damage claim with respect to the iPads, battery pack, and karaoke machine amounts to negligence, which is insufficient to prove a § 1983 claim. *See Becerra v. Mauresse*, No. 2011 CV 417, 2011 U.S. Dist. LEXIS 9078, at *6 (N.D. Ill. Jan. 28, 2011) (citing *Lewis v. Anderson*, 308 F.3d 768, 773 (7th Cir. 2002)) ("Mere negligence nor gross negligence are sufficient to give rise to liability under Section 1983.").

Furthermore, in order to prevail on a claim of excessive and unnecessary property damage, a plaintiff must be able to connect certain officers to the wrongful conduct. *See Molina ex rel. Molina*, 325 F.3d at 973-74 (granting summary judgment because one officer's admission to being in truck that was damaged was insufficient to link him to the damage as there were other officers present); *Hessel v. O'Hearn*, 977 F.3d 299, 305 (7th Cir. 1992) (finding summary judgment proper because plaintiffs could not identify which of the 14 defendant officers stole their property); *Billups v. Kinsella*, No. 08 C 3365, 2010 WL 5110121, at *3-4 (N.D. Ill. Dec. 9, 2010) (granting summary judgment because plaintiff did not know which individual officers were involved in destroying her personal property). Thus, mere "proximity to a wrongdoer does not authorize punishment." *Hessel*, 977 F.3d at 305.

Although Officers Higgins, Kennedy, and Evans were the only Officers to conduct a systematic search of Plaintiffs' 5033 residence (DSOF 74), multiple other Officers entered Plaintiffs' residence at some point. Apart from the breach Officers who needed to make forced entry, Plaintiffs have not identified any specific officer who allegedly damaged the property. As mere "proximity to a wrongdoer does not authorize punishment.," the Court should grant summary judgment in Defendants' favor on this claim. Summary judgment is also appropriate to Lt. Cascone, who was not present on scene, Officer Burmistrz and Sgt. Hroma who never entered Plaintiffs' residence, Sgt. Boyle, who did not conduct any search of Plaintiffs' residence, and SWAT Officers Santisuk, Cuomo, James, Kilponen, Linker, Lopez, McCallum, Pantano, and Zenere as they did not assist with the systematic search (DSOF 34, 65, 76-77, 80).

### III. Defendants Are Entitled to Summary Judgment on Plaintiffs' Federal and State Law False Arrest/False Imprisonment Claims

Defendant Officers should be afforded summary judgment as to Plaintiffs' § 1983 and state law False Arrest/False Imprisonment claims because they were lawfully and reasonably detained incident to the execution of a valid search warrant. The Fourth Amendment authorizes police officers who are executing a search warrant "to 'take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search.'" *United States v. Clifton Banks*, 628 F. Supp. 2d 811, 815 (N.D. Ill. 2009) (quoting *United States v. Jennings,* 544 F.3d 815, 819 (7th Cir. 2008)). Officers, therefore, have the authority "to detain the occupants of the premises while a proper search is conducted." *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (quoting *Michigan v. Summers,* 452 U.S. 692, 705 (1981)). *See also United States v. Burns*, 37 F.3d 276, 280 (7th Cir. 1994) (finding detention during the execution of the search warrant reasonable under the Fourth Amendment); *People v. Edwards*, 144 Ill. 2d 108, 126 (1991) (explaining that "a warrant to search for contraband, founded on probable cause, implicitly carries with it the authority to detain occupants of the premises while the search is being conducted").

Police officers' authority to detain the occupants of a residence incident to a search is categorical. *Muehler*, 544 U.S. at 98. Officers may "detain occupants of the premises without probable cause or particular suspicion that an individual is involved in criminal activity or poses a specific danger to the officers." *Simmons v. City of Chi.*, No. 14 CV 9087, 2017 U.S. Dist. LEXIS 17293, at *12 (N.D. Ill. Feb. 7, 2017) (citing *Summers*, 452 U.S. at 702-705; *Muehler*, 544 U.S. at 98). Additionally, Officers' authority to use reasonable force, such as handcuffing, to effectuate a detention is inherent in their authority to detain incident to a search. *Id.*; *Muehler*, 544 U.S. at 98.

Here, Plaintiffs' claim for False Arrest and False Imprisonment stem from their detention incident to the valid search warrant. Plaintiffs were detained outside of their residence during the execution of the search warrant during which none of them were handcuffed. (DSOF 70). Immediately upon exiting the residence, Plaintiffs were directed to the "safe side" of a SWAT truck

so that the SWAT vehicle was between them and the target residences. (DSOF 70). When Plaintiff Ebony Tate began experiencing a panic attack and had difficulty breathing, SWAT medic Officer Bardsley arrived to assist her and an ambulance was called and Ms. Tate was then treated by a paramedic. (DSOF 71). Within in a couple of minutes of being outside, Ms. Eason was provided a blanket. (DSOF 71). Plaintiffs were then permitted to sit on the stairs in front of their residence until Officers were finished searching their residence. (DSOF 70). Ms. Tate testified that the entire incident lasted about 45 minutes, whereas Ms. Eason testified that it lasted about 1 hour and 15 minutes, and E'monie Booth ranged the event from ninety minutes to two hours. (DSOF 78).

The above precedent unequivocally establishes that Defendant Officers could lawfully detain Plaintiffs incident to the execution of the search warrant. Moreover, neither the length of Plaintiffs' detention—at the outer limit two hours—nor the circumstances of their detention renders their detention incident to the search warrant unlawful. *See Muehler*, 544 U.S. at 102 (emphasis added) (finding detention reasonable when plaintiff was handcuffed in a garage for *two to three hours*); *Billups*, 2010 U.S. Dist. LEXIS 130345, at *16-17 (emphasis added) (finding detention and handcuffing of plaintiff for three hours, the duration of the search, was reasonable). The Court should thus grant summary judgment in favor of Defendant Officers because the undisputed facts unequivocally show that Plaintiffs' detention comported with the Fourth Amendment and was lawful.

Plaintiffs' state law False Arrest and False Imprisonment claim relating to their detention incident to the execution of the search warrant similarly cannot survive summary judgment. Under Illinois law, false arrest is the unlawful restraint of an individual's personal liberty whereas false imprisonment is an unreasonable restraint of an individual's liberty against his will caused or procured by the defendant. *Meerbrey v. Marshall Field & Co.*, 189 Ill. App. 3d 1085, 1090 (1st Dist. 1989). Plaintiffs must also prove that the Officers' conduct was willful and wanton because the Local Governmental and Governmental Employees Tort Immunity Act ("Illinois Tort Immunity

Act"), immunizes police officers for their "act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. Plaintiffs, however, cannot prove their claim because, as set forth above, the Supreme Court has held that "officers executing a search warrant for contraband have the authority "to detain the occupants of the premises while a proper search is conducted." *Muehler,* 544 U.S. at 98. The Officers were thus acting in conformity with the law by detaining Plaintiffs incident to the execution of the valid search warrant and their conduct falls far short of being willful and wanton. Summary judgment should thus be granted as to the state law False Arrest and False Imprisonment claim.

## IV. Officers Should Be Afforded Qualified Immunity on the § 1983 Claims

The doctrine of qualified immunity shields officers from liability under § 1983 when they perform their duties reasonably. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). *See also Tangwall v. Stuckey*, 135 F.3d 510, 514 (7th Cir. 1998) (explaining qualified immunity protects officers from interferences with their duties and threats of liability). Qualified Immunity "protects all but the plainly incompetent or those who knowingly violate the law," and even applies where officers make "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). To overcome qualified immunity, Plaintiffs must establish that: (1) their allegations amount to a constitutional violation, and (2) if their allegations do amount to a constitutional violation, that the right at issue was clearly established at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232. *See also Catlin v. City of Wheaton*, 574 F.3d 361, 365 (7th Cir. 2009). Clearly established law cannot be defined "at a high level of generality." *Edwards*, 907 F.3d at 1060.

With respect to search warrants, qualified immunity rests on whether "a reasonably well-trained officer would have known that the search was illegal despite the judge's authorization." *Draine v. Bauman*, 708 F. Supp. 2d 693, 707 (N.D. Ill. 2010); *Malley v. Briggs,* 475 U.S. 335, 345 (1986); *United States v. Leon,* 468 U.S. 897, 924 (1984). Defendant Officers may be personally liable only if: (1) a Court

has previously held that a materially similar affidavit in a case with facts indistinguishable from the matter before the court failed to establish probable cause; or (2) "the affidavit is so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345; *Junkert*, 610 F.3d at 369. Based on this test, qualified immunity is proper here.

First, there is no controlling case law in which a police officer has been held liable for procuring a search warrant in circumstances akin to the case at bar. In fact, Courts have "time and again . . . upheld warrants based on an informant's recent and firsthand account of criminal activity." *See Edwards*, 907 F.3d at 1060 (collecting cases in which courts have upheld a warrant based on an informant's tip). *See also Wade*, 2019 U.S. Dist. LEXIS 44591, at *32-35; *Calhoun*, 2010 U.S. Dist. LEXIS 115796, at *9-10 (finding search warrants supported by probable cause when based on an informant's first-hand knowledge of recent criminal activity).

Here, as analyzed above, the Complaint for Search Warrant for Plaintiffs' 5033 residence was based on the reliable RCI's detailed recent and firsthand account of criminal activity in that residence which was corroborated with social media photos, and Officer Higgins' investigation. (DSOF 8-14, 17-18, 36). Therefore, the Complaint for Search Warrant was not so lacking that a reasonably well-trained officer would have known it failed to establish probable cause as evidenced by the fact that Judge Sullivan approved the search warrant and because Officer Higgins believed the RCI's information to be credible and the other Officers all believed they were executing a valid search warrant. (DSOF 19, 28, 30, 43); *Edwards*, 907 F.3d at 1061. *See also King v. Avila*, 760 F. Supp. 681, 685 (N.D. Ill. 1989) ("[P]olice acting under color of a facially valid warrant are immune from damages for violation of civil rights."). This is especially true given the fact that Officer Higgins and other officers knew the RCI to be incredibly accurate and reliable. (DSOF 5-7, 22). Defendant Officers are thus entitled to qualified immunity as to Plaintiffs' Unlawful Search-Invalid Warrant claim. For these same

reasons, Lt. Cascone, who reviewed, approved and signed the search warrant after it was approved by the ASA and Judge Sullivan, is also entitled to qualified immunity on any potential Supervisory claim.

Next, qualified immunity should also be afforded to the remaining Defendant Officers who assisted in executing the search warrant because they were "acting under color of a facially valid warrant and are immune from damages . . . ." they are also entitled to qualified immunity. *King*, 760 F. Supp. at 685. The search warrant for Plaintiffs' 5033 residence was not facially defective as set forth above, and Defendant Officers believed they were assisting in executing a valid search warrant. (DSOF 43). Finally, Officers acted reasonably in continuing the execution of the search warrant after Bell and the two-tone firearm were found at 5039 because they still had a valid search warrant for Plaintiffs' 5033 residence that was for a different firearm. Accordingly, because probable cause existed for the warrant, Officer Higgins acted in good faith in procuring the warrant, and the warrant was not facially defective, the Defendant Officers are entitled to qualified immunity on the Invalid Warrant claim. *See generally Boyce v. Fernandez*, 77 F.3d 946 (7th Cir. 1996).

Next, Defendant Officers are also entitled to qualified immunity as to Count III of the Third Amended Complaint regarding the manner in which the search warrant for Plaintiffs' 5033 residence was executed. First, as set forth above, Defendant Officers believed at all times that they were executing a valid search warrant. Then, based on the information obtained from the RCI and through the Officers' investigations, and the SWAT risk assessment, the search warrant was categorized as being high risk due to the fact that they were to be executed simultaneously and because Bell, a convicted felon, was expected to be armed. (DSOF 45, 48). In those circumstances, it was reasonable to have SWAT Officers conduct the initial entry and clearing and for those Officers to have their weapons displayed, including any possible unintentional incidental pointing, while making entry given that "there was a reason to fear danger" *Baird*, 576 F.3d at 344-46.

Defendant Officers should also be afforded qualified immunity with respect to any property damage claim because forced entry was necessary and any unintentional property damage allegedly occurred during the search of the residence, a situation that Courts have recognized may result in property damage. *Washington*, 1996 U.S. Dist. LEXIS 15373, at *4-5. Additionally, the manner in which Plaintiffs were detained outside first by the SWAT vehicle for their safety and then on the stairs to their residence was reasonable. (DSOF 70-71). Plaintiffs cannot point to any case law in which the exact same circumstances were deemed unreasonable.

Finally, Defendant Officers are entitled to qualified immunity for Plaintiffs' § 1983 False Arrest/False Imprisonment claim because the clearly established case law analyzed above confirms that Officers reasonably believed that Plaintiffs' detention incident to the search warrant was reasonable and lawful. *See Archie v. City of Chi.*, No. 19 CV 4838, 2020 U.S. Dist. LEXIS 176221, at *17-18 (N.D. Ill. Sept. 25, 2020) (Gettleman, J.) (affording officers qualified immunity on plaintiff's false arrest claim that arose from her hour long detention incident to the execution of a search warrant during which she was handcuffed). Accordingly, for the reasons set forth above and in this Section, Defendant Officers are entitled to qualified immunity on all of Plaintiffs' § 1983 claims.

## V. Plaintiffs' Assault Claim Fails as a Matter of Law

Pursuant to Illinois law, an assault is an intentional, unlawful offer of corporal injury by force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented. *Hespe v. City of Chicago*, 307 F. Supp. 3d 874 (N.D. Ill. 2018). As argued above, the undisputed facts show that Lt. Cascone, Sgt. Boyle, Sgt. Hroma, and Officers Higgins, Burmistrz, Evans, Kennedy, Santisuk, Pantano, Cuomo, James, Kilponen, Zenere, and Linker were either not equipped with rifles, not near Plaintiffs at the time the pointing is claimed to have occurred, or both. Furthermore, the remaining SWAT Officers were able to have their firearms displayed in order to secure the premises as they

executed the high-risk search warrant for a firearm during which they knew they may encounter Bell, a convicted felon and gang member who was expected to be armed. (DSOF 45). Plaintiffs' assault claim, which is based on the alleged rifle-pointing, fails as a matter of law. Alternatively, the Court should decline supplemental jurisdiction over this claim.

## VI. Summary Judgment Is Proper as to Plaintiffs' NIED and IIED Claims

Plaintiffs have brough claims for IIED and NIED in Count VI of their Third Amended Complaint. (Dkt. 70). The Court should grant summary judgment as to both claims. First, the NIED claim cannot survive summary judgment because Illinois applies a general negligence approach to NIED claims. *Johnson v. Bishof*, 2015 IL App (1st) 131122, ¶ 62. The Illinois Tort Immunity Act, however, provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful or wanton conduct." 745 ILCS 10/2-202. "Because negligence is by definition a lesser state of mind than willful and wanton, 'negligence claims are barred by the Illinois Tort Immunity Act.'" *Prokop v. Hileman*, 588 F. Supp. 3d 825, 839-40 (N.D. Ill. 2022) (quoting *Tyagi v. Sheldon*, No. 16 CV 11236, 2017 U.S. Dist. LEXIS 152150, at *56 (N.D. Ill. 2017) (dismissing NIED claim). As Defendant Officers were acting within the course and scope of their duties as police officers during the underlying incident, the Tort Immunity Act applies and Plaintiffs' NIED claim fails as a matter of law.[5]

Next, summary judgment should similarly be granted as to Plaintiffs' IIED claim. In order to prove their IIED claim, Plaintiffs are required to show that: (1) the conduct was truly extreme and outrageous, (2) that the actor intended that his conduct inflict severe emotional distress or knew that there was a high probability that his conduct would inflict such distress, and (3) "the conduct must in fact have caused severe emotional distress." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 269 (2003); *Pavlik v.*

[5] Plaintiffs' counsel in this case agreed in a similar case to voluntarily dismiss a negligent infliction of emotional distress claim because it failed as a matter of law. *See Archie v. City of Chi.*, No. 19 CV 4838, 2020 U.S. Dist. LEXIS 176221, at *21 (N.D. Ill. Sept. 25, 2020) (Gettleman, J.)

*Kornhaber*, 326 Ill. App. 731, 743-744 (1st Dist. 2001). If any one of these elements is missing, Plaintiffs cannot establish their IIED claim. *See, e.g., Smith v. Dominick's Finer Foods, Inc.*, No. 05 C 4461, 2009 U.S. Dist. LEXIS 65715, at *20-21 (N.D. Ill. July 28, 2009).

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, ¶ 51. *See also Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 21 (1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 242 Ill. App. 3d 707, 713 (4th Dist. 1993). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining the severity." *Schweihs*, 2016 IL 120041, ¶ 51; *Campbell*, 242 Ill. App. 3d at 713. Moreover, when an IIED claim arises from abuse of police power, "there must be allegations of more than a misuse of police authority to support a claim of extreme and outrageous behavior." *Carr v. Village of Richmond*, No. 96 C 50203, 1996 U.S. Dist. LEXIS 17069, at *23-24 (N.D. Ill. Nov. 15, 1996).

The undisputed facts establish that Defendant Officers' conduct did not amount to conduct that is utterly intolerable in a civilized society. Rather, they show that the Officers were executing a valid high risk search warrant for a firearm that was based on the RCI's recent and first-hand knowledge of criminal activity at Plaintiffs' 5033 residence and was approved by a Judge. (DSOF 8-10, 15, 30). SWAT Officers are alleged to have briefly pointed their rifles at Plaintiffs when entering and clearing the residence pursuant to the search warrant for which the target was a convicted felon and expected to be armed. (DSOF 45). The alleged conduct does not rise to extreme and outrageous or utterly intolerable in a civilized society. *See generally McGrath v. Fahey*, 126 Ill. 2d 78, 88-89 (1988) (noting greater latitude given to defendant pursuing reasonable objective even if that pursuit results in some distress for a plaintiff). Summary judgment on the IIED claim is thus proper.

## VII. The Existence of Probable Cause Defeats the State Law Trespass Claim

In order to set forth a valid trespass claim under Illinois law, Plaintiffs must show Defendant Officers' entry onto their property was unauthorized or that the Officers unlawfully remained on their property. *Caldwell v. City of Chi.*, No. 08 C 710, 2010 U.S. Dist. LEXIS 67992, at *14 (N.D. Ill. July 8, 2010) (citing *People v. Goduto*, 21 Ill. 2d 605, 609 (1961)). Plaintiffs' trespass claim first fails as a matter of law as to Officer Burmistrz and Sgt. Hroma because they did not enter Plaintiffs' residence.

With respect to the remaining Officers, Illinois law clearly establishes that police officers cannot be held liable for trespass when they are executing a valid search warrant. *Id.* "It cannot be contended that going upon the land pursuant to an express order of the court would constitute a trespass." *See Archie*, 2020 U.S. Dist. LEXIS 176221, at *4, 23 (dismissing trespass claim in search warrant case) (citing *City of Tuscola v. Otto*, 33 Ill. App. 3d 853, 856 (4th Dist. 1975)). When dismissing the trespass claim, the *Archie* Court reasoned that "[e]ntering someone's property without permission is not trespass when done pursuant to a valid search warrant," even if the application for the warrant is flawed. *Id.* at *4, 22-23; *Weeks v. City of Chi.*, No. 12 CV 10056, 2014 U.S. Dist. LEXIS 107660, at *15 (N.D. Ill. Aug. 6, 2014) (Kennelly, J.) (same). As set forth above, Officers were executing a valid search warrant and believed they were on Plaintiffs' property and in their residence pursuant to the valid search warrant. (DSOF 43). Thus, Plaintiffs' trespass claim cannot survive summary judgment.

WHEREFORE, Defendant Officers respectfully ask this Honorable Court to grant them summary judgment on all Counts II-VIII of the Third Amended Complaint, and for any other relief that the Court deems appropriate.

Respectfully Submitted,

*/s/Larry S. Kowalczyk*
Special Assistant Corporation Counsel

Larry S. Kowalczyk, Special Assistant Corporation Counsel
Megan K. Monaghan, Special Assistant Corporation Counsel
QUERREY & HARROW, LTD.,120 N. LaSalle St., Suite 2600, Chicago, IL 60602; (312) 540-7000
*Attorneys for Defendant Officers*