IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EBONY TATE, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18 CV 7439 |
| v. | ) | |
| | ) | Judge John J. Tharp |
| THE CITY OF CHICAGO, et al. | ) | |
| | ) | Jury Demanded |
| Defendants. | ) | |

**PLAINTIFFS' EMERGENCY MOTION TO COMPEL
WITNESS RAHM EMANUEL TO TESTIFY AND FOR SANCTIONS**

NOW COMES Plaintiffs, by their undersigned attorneys, and moves on an emergency basis for an immediate Order enforcing this Court's January 15 and January 28, 2026 pretrial rulings regarding, and plaintiffs' trial subpoena to, former Mayor Rahm Emanuel, compelling his appearance on Tuesday, February 3, 2026 at 9:00 a.m., and for evidentiary sanctions. At the final pretrial conferences on both January 15 and 28, the Court denied the City's motions to bar Mr. Emanuel's testimony and stated he can be called as a witness to testify at trial. On the record on January 28, 2026, counsel for the City expressly agreed to accept service of plaintiffs' trial subpoena for Mr. Emanuel, additionally said that no subpoena was necessary, represented that she had spoken with him and that he is available to testify next week. Relying on all of these commitments, Plaintiffs that same evening issued a trial subpoena to the City's counsel. At the end of the following day, however, the City's counsel suddenly refused to accept service or produce him next week and asserted that Mr. Emanuel had retained private counsel. When Plaintiffs' counsel immediately contacted Mr. Emanuel's newly retained counsel and sent him the subpoena, he did not accept service, advised that he is in London, and did not indicate any return date—completely contradicting the City's earlier agreements and representations and

1

jeopardizing the Court's orders and Plaintiffs' case on the eve of trial. In support of this motion, Plaintiffs state as follows:

## Introduction

On the eve of trial, defendant City has turned a straightforward compliance issue into a shell game. This case is nearly a decade old. Plaintiffs are entitled to try it now—on the schedule the Court set and on the evidence that the Court allowed—not on a timetable dictated by last-minute maneuvering by the City. The City, through serial motions in *limine*, fought to bar Mr. Emanuel's testimony and lost. Having failed to exclude his testimony, the City now disclaims responsibility for producing the very witness that it told this Court and Plaintiffs' counsel, on the record, that it would produce. This about-face, on the brink of opening statements, threatens severe prejudice to plaintiffs' presentation of the evidence that cannot be cured after the fact. The Court should enforce its Orders, Plaintiffs' trial subpoena, hold the City to its in-court commitment, and order Mr. Emanuel to appear to testify on February 3 at 9:00 a.m., the return date and time in Plaintiffs' trial subpoena.

## Timeline of Events

What follows is a concise chronology of the City's shifting positions—promises made then broken, subpoenas accepted then rejected, positions stated then reversed, and obstacles erected—so the Court can see, step by step, how this simple compliance issue became a shell game on the eve of trial. Each entry documents a representation that the Plaintiffs relied on and the subsequent conduct that undermined it.

1. **Jan. 15, 2026 — Court denies bar; Plaintiffs begin service.**

The City moved to bar Mr. Emanuel. At the January 15 pretrial conference, the Court denied the request and stated Mr. Emanuel would testify to relevant statements. However, the City

2

refused to accept service or confirm that it would produce him on request for trial, indicating that it was planning to file some further motion on the issue. Plaintiffs then began attempting service of Mr. Emanuel.

    **2.   Jan. 23, 2026 — "Cease and desist," with a promise to accept service later.**

During Plaintiffs' service efforts, the City's counsel sent a chastising letter invoking the Illinois Rules of Professional Conduct and accusing Plaintiffs' counsel of improper service attempts. Counsel wrote: "**I demand that you immediately cease and desist from making any further communications with City officials or representatives regarding this case. As counsel for the City, I assure you that, if the testimony of these officials is ordered, I will accept service of a subpoena on their behalf and facilitate their appearance for trial.**" (Ex. A, 1/23/26 email from Marion Moore).

    **3.   Jan. 23–26, 2026 — Plaintiffs continue, City still refuses; second threat follows.**

Because the Court had already said Mr. Emanuel would testify, Plaintiffs understood the City to be improperly giving a conditional acceptance of service, so Plaintiffs continued attempting service on Mr. Emanuel. On January 26, the City's counsel sent a second, threatening email, again demanding that Plaintiffs "cease and desist" attempts to serve Mr. Emanuel.

    **4.   Jan. 26, 2026 — Plaintiffs stand down in reliance on City's promise.**

To avoid unnecessary motion practice, Plaintiffs relied on the City's representation that Ms. Moore would accept service on Mr. Emanuel's behalf and suspended further attempts. (Ex. B, 1/26/26 counsel email).

    **5.   Jan. 27, 2026 — City renews the bar request.**

The City then filed a renewed or second motion in *limine* to bar Mr. Emanuel's testimony. (Dkt. 561).

6. **Jan. 28, 2026 — Court denies again; City commits on the record.**

At the final pretrial conference, the Court again denied the City's renewed or second motion in limine to bar Mr. Emanuel's testimony and confirmed Mr. Emanuel would testify regarding his "code of silence" remarks. In response to Plaintiffs' counsel's request on the record for express confirmation that the City would accept service of Plaintiffs' trial subpoena to Mr. Emanuel, the City's counsel replied, "Oh, yes." (Ex. C, 1/2826 Tr. 49:7-11). In addition, the City's stated that **"he's being called in his official capacity so we don't even need to send a subpoena."** *Id*. Finally, *as to the crucial issue of scheduling*, the City's counsel represented: **"I know for a fact he's going to be out of the country February 6th through 12th."** (Ex. C, 1/28/26 Tr. 48:15–16). On that basis, Plaintiffs set Tuesday, February 3 at 9:00 a.m. as the return date of the trial subpoena that Plaintiffs' counsel sent to the City that same evening at 6:19PM out of an abundance of caution. (Trial subpoena attached as Ex. E).

7. **Jan. 29, 2026 — Refusal to accept; new counsel;**

At the end of the next day, January 29, the City's counsel emailed Plaintiffs' counsel to send the subpoena to Mr. Emanuel's attorney, Ed Siskel. Plaintiffs' process server then learned Mr. Siskel is in London with no certain return date, and the City continued to refused to accept service—despite its earlier promises, its representations both on and off the record, and this Court's rulings. Out of an abundance of caution, plaintiffs emailed the subpoena to Mr. Siskel. (Ex. E).

8. **Jan. 30, 2026 — Private counsel disclaims City representations.**

Later, Mr. Emanuel's counsel, Ed Siskel, emailed Plaintiffs' counsel: **"I do not know what the City may or may not have said in this matter regarding the potential testimony of Former Mayor Emanuel. I represent him and will need to discuss with my client."** (Ex. D,

4

1/30/26 email). This underscores the City's shifting positions and the sudden reversal and refusal to commit to appearing to testify on February 3 at 9:00AM.

**Argument**

This is not a misunderstanding; it is gamesmanship. The City first threatened Plaintiffs' counsel—invoking the Rules of Professional Conduct—and demanded we "cease and desist" serving the former Mayor. Then, when the Court twice ruled Mr. Emanuel is "in play," the City pivoted: it promised to accept service and "produce" him, only to disclaim those commitments the very next day and erect a new hurdle—private counsel abroad, no return date, no acceptance. And now, as of January 30, Mr. Emanuel's own counsel disclaims any knowledge of what the City "may or may not have said" about his testimony and will "need to discuss with [his] client," confirming that the City's representations cannot be relied upon. Plaintiffs will not play that shell game on the eve of trial. The Rules require simple, good-faith compliance with the Court's orders, not tactical obstruction designed to run out the clock.

The Court has the tools to stop this now. Where a party abandons prior positions, weaponizes threats of professional discipline to chill lawful service, and then retreats to "not really" when the order issues, Rule 16(f), Rule 45's enforcement authority, and the Court's inherent power warrant prompt, targeted relief to protect the trial schedule, plaintiffs' ability to present relevant evidence. and the integrity of the proceedings. The City should be held to the representation it made in open court—and Mr. Emanuel's testimony should proceed on February 3 at 9:00 a.m.

**I.     The Court should enforce Plaintiffs' trial subpoena and compel Mr. Emanuel to appear.**

Rule 45(g) authorizes the Court to order relief when a person "fails without adequate excuse to obey a subpoena or an order related to it." Here, the Court has twice ordered that Mr. Emanuel

5

may testify, and Plaintiffs promptly issued a trial subpoena for Feb. 3 at 9:00 a.m., a time when Mr. Emanuel confirmed he is available. The City's about-face the very next day—refusing acceptance and interposing new counsel/travel hurdles—threatens noncompliance with both the subpoena and the Court's orders. An immediate Order compelling Mr. Emanuel to appear is warranted.

> II. **Service has been effected or should be deemed effected in light of the City's representations, acceptance, and interference.**

Rule 45's service requirement exists to provide actual notice and a fair opportunity to comply. Plaintiffs tried in good faith to serve Mr. Emanuel for weeks; the City demanded that Plaintiffs stop, promised to accept service if the Court ordered his testimony, and then refused to accept service or cooperate even after the Court did so—twice. On those facts, the Court should deem service effective *via* delivery to the City's counsel (who agreed to *accept* service as well as "produce" him without subpoena) and *via* email to Mr. Emanuel's private counsel identified by the City. Equity permits the Court to prevent a party from benefitting from its own interference with service and to give effect to in-court commitments on which the opposing party reasonably relied.

> III. **The City's "we don't represent him" pivot does not excuse compliance with the Court's schedule.**

Having told the Court it would produce Mr. Emanuel on Feb. 3, the City should be held to that representation. Rule 45 does not authorize a party to manufacture noncompliance by erecting a new "private-counsel" gate the day after losing a motion in *limine* and the day before trial — particularly where the same party demanded Plaintiffs stop personal service and promised to accept service itself. The Court may enforce its trial management orders under Rule 16 and its

6

inherent authority and use Rule 45(g) to compel the witness's appearance notwithstanding the City's late-stage disavowal.

To ensure testimony is preserved on the timetable the Court set, Plaintiffs request that the Court order: live appearance by Mr. Emanuel on Feb. 3 at 9:00 a.m. (primary relief); and, if it does not deem service effectuated, immediate disclosure (under seal) of his current location/itinerary/contact information sufficient to accomplish service and scheduling.

### IV. Order to show cause.

Given the short timeline, the Court should also issue a Rule to Show Cause directing the City (and, if the Court prefers, Mr. Emanuel through identified counsel) to explain why they have not complied with the subpoena and the Court's pretrial rulings and why sanctions should not issue under Rule 45(g) (contempt), Rule 16(f), and the Court's inherent authority.

### V. Evidentiary sanctions are warranted to compensate Plaintiffs for unnecessary time spent addressing the City's gamesmanship instead of preparing for trial.

On the eve of trial, Plaintiffs should be preparing a complex, multi-day presentation—not diverting resources to compel compliance with orders the Court has already entered and commitments the City already made. The City's shifting positions and refusal to accept service after promising to do so forced this emergency motion and related service efforts. Rule 16(f)(2) requires the Court to order the noncompliant party or its attorney to pay reasonable sanctions for costs "incurred because of" the failure to obey a pretrial order, unless the conduct was substantially justified or an award would be unjust. Additionally, Rule 37 authorizes appropriate sanctions, including evidentiary sanctions. A targeted, evidentiary sanction, which Plaintiffs' counsel will propose, both remedies the prejudice and deters further obstruction.

## Conclusion

On the brink of trial, the City's shifting positions threaten to nullify the Court's rulings and prejudice Plaintiffs' ability to present their case. The remedy is straightforward: enforce the orders already entered, hold the City to the commitments it made in open court, and set concrete compliance mechanisms that ensure Mr. Emanuel's testimony proceeds on February 3 at 9:00 a.m. Prompt relief will protect the schedule, the integrity of these proceedings, and the jury's right to hear the evidence the Court has allowed.

**WHEREFORE**, Plaintiffs respectfully ask the Court to enforce its pretrial rulings and Plaintiffs' valid trial subpoena to Mr. Emanuel by compelling the City to produce former Mayor Rahm Emanuel for live testimony on February 3, 2026 at 9:00 a.m.; deem service effective (and authorize alternative service as needed) with immediate disclosure under seal of his location/itinerary to facilitate appearance, if service is not deemed effective; issue a rule to show cause and award appropriate evidentiary sanctions; and grant such further relief as is just.

/s/ Al Hofeld, Jr.
Al Hofeld, Jr.

Al Hofeld, Jr.
Zachary James Hofeld
LAW OFFICES OF AL HOFELD, JR., LLC
53 West Jackson Boulevard, Suite #204
Chicago, IL 60604
Office: 773-241-5844
Fax: 312-988-0057
Email: al@alhofeldlaw.com

/s/ Andrew Stroth
Andrew Stroth

Andrew M. Stroth
ACTION INJURY LAW GROUP, LLC
One South Dearborn Street, Suite 1400
Chicago, IL 60603
Office: 844-878-4529

Email: astroth@actioninjurylawgroup.com

/s/ Chaka Patterson
Chaka Patterson

Chaka M. Patterson
Managing Partner
THE CHAKA PATTERSON LAW FIRM, LLC
220 N. Green Street, Suite 225
Chicago, IL 60607
Office: 773-575-4704
Email: chaka@chakapattersonlaw.com

/s/ Julian Johnson
Julian Johnson

Julian M. Johnson
THE LAW OFFICE OF JULIAN JOHNSON, LLC
125 S. Wacker Drive, Suite 300
Chicago, IL 60606
Office: 312-487-1711
Email: julian@johnsonlaw.com

**CERTIFICATE OF SERVICE**

      The undersigned, attorney of record herein, hereby certifies that on January 30, 2026, the foregoing PLAINTIFFS' **EMERGENCY MOTION TO COMPEL WITNESS RAHM EMANUEL TO TESTIFY AND FOR SANCTIONS** was electronically filed with the Court's electronic filing system, which will serve notification of the filing by email to all counsel of record.

/s/ Al Hofeld, Jr