IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EBONY TATE, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18 CV 7439 |
| v. | ) | Judge John J. Tharp |
| | ) | Jury Demanded |
| THE CITY OF CHICAGO, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR RECONSIDERATION
CONCERNING FORMER MAYOR EMANUEL**

NOW COME Defendants OFFICERS MICHAEL HIGGINS (Star #3766), MATTHEW EVANS (Star 5815), PATRICK KENNEDY (Star #14414), PACHARA SANTISUK (Star #6607); ANDREW CUOMO (Star #5853), ERIC JAMES (Star #4308), EVAN KILPONEN (Star #12854), NICHOLAS LINKER (Star #12858), RICARDO LOPEZ (Star #11987), RYAN MCCALLUM (Star #16333), MICHAEL PANTANO (Star #11886), MARCO ZENERE (Star #17319), and SGT. PATRICK BOYLE (Star #975), ("Defendant Officers"), by and through their attorneys, Mohan Groble Scolaro, P.C., and Defendant City of Chicago ("the City"), by and through one of its attorneys, Marion C. Moore, Chief Assistant Corporation Counsel, (collectively, "Defendants") and for their Motion for Reconsideration Concerning Former Mayor Emanuel, state as follows:

**INTRODUCTION**

Defendants have raised numerous objections to the potential introduction of 2015 statements made by Former Mayor Rahm Emanuel about the existence of a code of silence and his potential testimony on that subject in their motion *in limine* No. 37 and in their motion to bar witnesses. See Dkt. 525, 562. In the wake of three pretrial conferences, the Court is inclined to have Former Mayor Emanuel testify despite Defendants' arguments. Defendants acknowledge that the Court said that

Former Mayor Emanuel "put himself in play" by making statements that a code of silence exists in 2015.

Plaintiffs have just informed Defendants of the specific statements that they seek to introduce from former Mayor Emanuel, per this Court's order, and Defendants are scheduled to respond with potential additional objections to those statements in a filing by February 2, 2026. The Court is then scheduled to issue rulings as to what portions of those statements may come in.

Defendants respectfully ask the Court to reconsider its ruling that Former Mayor Emanuel appear to testify live on several grounds.

## STANDARD OF REVIEW

Rule 54(b) provides the court "inherent authority to reconsider its interlocutory orders because such orders 'may be revised at any time before the entry of judgment adjudicating all the claims.'" *Geraty v. Village of Antioch*, No. 09 C 6992, 2015 WL 127917, *1 (N.D. Ill. Jan. 8, 2015) (quoting Fed. R. Civ. P. 54(b)). Motions to reconsider are appropriate when manifest errors of fact or law occur, which happen when "'the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Heyer v. Pierce & Associates, P.C.*, No. 14 C 854, 2017 WL 2404978, *2 (N.D. Ill. Jun. 2, 2017) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)).

## ARGUMENT

*I. Plaintiffs' Failure to Disclose Former Mayor Emanuel is a sufficient to preclude his testimony in this case.*

It is undisputed that Plaintiffs failed to disclose former Mayor Emanuel to testify as a *witness* in this case on any of Plaintiffs' 26(a) disclosures and not until the pretrial order as a "may call" witness[1]. Defendants believe the Court misunderstood their argument relating to this lack of disclosure, especially considering this Court's ruling as it pertains to Former Mayor Lightfoot and

---

[1] Plaintiffs only listed the <u>statements</u> themselves.

Former Inspector General Ferguson. Because indeed such failure to disclose is clearly sufficient to justify the preclusion of Former Mayor Emanuel's testimony just as it was as a basis for this court to bar Former Mayor Lightfoot's testimony as well as that of Former City Inspector General Ferguson. In fact, the non-disclosure argument is even stronger here. Plaintiffs had the veneer of an argument that they had disclosed former Mayor Lightfoot and former IG Ferguson under the catch-all phrase of other members of the PATF.

Here, there is no argument that they had in any way listed Mayor Emanuel as a potential witness prior to recently (and obviously they knew of the potential – they disclosed the statements as materials they may use so they chose not to disclose Emanuel as a witness). The Court rightly rejected Plaintiffs' argument as to the catch-all phrase. It therefore is unclear to Defendants why the same would not apply to Former Mayor Emanuel's testimony here and why Plaintiffs' non-disclosure of him as a potential witness would be excusable here. The normal sanction for failure to disclose a witness on 26(a)s is for that witness to be barred, unless the failure to disclose is substantially harmless. Fed. R. Civ. P. 37(c)(1). "The determination of whether a Rule 26 violation is justified or harmless is entrusted to the broad discretion of the district court." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (cleaned up). Here, Plaintiffs cannot say that Defendants are not harmed by the late disclosure. Among other harms, the City will be forced to spend a disproportionate amount of time and resources litigating this issue and preparing for the possible testimony of Former Mayor Emanuel. Moreover, as with Lightfoot and Ferguson, had Former Mayor Emanuel been disclosed as a potential witness during the discovery period, the City most certainly would have filed a motion related to that disclosure then.

Importantly, Defendants also believe the Court may be either misinformed or may not be aware of the scope of the disclosure related to Former Mayor Emanuel. The disclosure Plaintiffs made was the contents of the statements themselves. Thus, Plaintiffs never disclosed the potential for any

3

other area of testimony. And this Court has ordered as such. See Docket No. 556 at p. 2. However, what this means in practice is that Former Mayor Emanuel can only testify as to the substance of the statements, not what is behind them or any further exploration of them. Indeed, anything other would be non-disclosed testimony that should be barred. Therefore, if Former Mayor Emanuel's sole purpose of testimony is to confirm that he said what he said, then having him present in Court to say that is completely unnecessary and unjustified since Defendants have stated they will stipulate to the contents of the statements that are allowed in.

Finally, as discussed more fully below, the Defendants will be unduly prejudiced by Former Mayor Emanuel's presence turning the case into a media circus when he has nothing to do with the claims against them.

II.    *The Apex Doctrine Applies To Former Officials And Justifies The Preclusion Of Live Testimony From Former Mayor Emanuel In This Case.*

The Court has stated that Former Mayor Emanuel "put himself in play" by having made the statements concerning the code of silence. Plaintiffs' counsel has contended in court that the apex doctrine does not apply to former officials. Respectfully, case law says otherwise.

The federal case law recognizes that "depositions of public officials create unique concerns" in discovery. *Stagman v. Ryan*, 176 F.3d 986, 994 (7th Cir. 1999). These officials have "greater duties and time constraints than other witnesses," and courts should take care to "protect officials from the constant distraction of testifying in lawsuits." *In re United States*, 985 F.2d 510, 512 (11th Cir. 1991). Courts have repeatedly rejected the attempts to depose public officials based upon matters on which a plaintiff has not shown specific, actual, and unique knowledge regarding the claims at issue. Accordingly, high-ranking officials should not be subjected to deposition without a "real need" for their testimony. *Olivieri v. Rodriguez*, 122 F.3d 406, 409 (7th Cir. 1997). That "real need" does not exist when the information sought can be obtained through other discovery methods or other deponents. *See Cornejo v. Landon*, 524 F. Supp. 118, 122 (N.D. Ill. 1981) (granting protective order

4

shielding acting commissioner where plaintiffs did not show "that the information they seek is not available from depositions of other defendants or persons"); *see also Bogan v. City of Boston*, 489 F.3d 417, 424 (1st Cir. 2007) (affirming a protective order because the plaintiffs "did not pursue other sources to obtain relevant information before turning to the Mayor."). While these cases discuss depositions, the same reasoning would apply just as much to live testimony at trial, if not more.

The apex doctrine is rooted in the notion that a top policy maker cannot put himself into play through his statements when there are alternatives to get the information that they would provide. It is the result of multiple public policy considerations. The busy schedule of active officials is but one of them. Equally important are protecting the ability of government officials to deliberate on issues and avoiding a chilling effect that would come if apex officials knew that they could be hauled into court to testify about anything and everything under their purview years later.

That is why it is "well-settled that '[t]he apex doctrine is no less applicable to former officials than to current officials.'" *Lee v. City of Chicago*, 2021 WL 2399999 at * 3 (N.D.Ill. October 1, 2025)(Cummings, J.)(citing to *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, 2015 WL 5602342 at * 4 (D.D.C. Sept. 4, 2015); *Thomas v. Cate*, 715 F.Supp.2d 1012, 1049-50 (E.D.Cal. 2010); *United States v. Wal-Mart Stores, Inc.*, 2002 WL 562301 at #3-4 (D.Md. Mar. 29, 2002)). This is because the other rationales for the doctrine, such as "the need to protect the integrity of the underlying decision-making process . . . and encourage public service by protecting officials from indiscriminate depositions . . . continue to persist after the official leaves government service." *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (quotation omitted). The rationale behind the apex doctrine applying to former officials is laid out well in the above cases, among others. For instance,"[t]he integrity of administrative proceedings and the underlying decisionmaking process of agency officials are just as important where the official to be questioned no longer serves in the same position. And 'indiscriminate depositions of high-ranking government officials would ... likely discourage' people 'from accepting positions as

public servants' irrespective of whether those deposed were current or former officials." *Fed. Deposit Ins. Corp.*, 2015 WL 5602342 at * 4.

That rationale applies here to the potential testimony of Former Mayor Emanuel. Admittedly, Former Mayor Emanuel does potentially have more knowledge as to why he made the statements. But, in addition to the non-disclosure argument made above, there also can be no dispute that the information he possesses on that subject is available through less burdensome means. Indeed, it already exists in the form of the interrogatory answers he has provided to those questions. Plaintiffs offer no reason why to the extent they may have additional questions for Former Mayor Emanuel why those questions cannot be simply posed in the form of new interrogatories. Defendants therefore respectfully request this Court to reconsider that the apex doctrine should apply.

Moreover, it must be noted that the Court's ruling on this matter will have high potential ramifications beyond Former Mayor Emanuel and this case. Should Former Mayor Emanuel be required to testify here about a statement he made more than 10 years ago and that is at best tangentially related to the case, there is no telling how many cases it will affect. In any civil rights case, will a plaintiff or a defendant be able to call a former mayor or superintendent because they made a generic statement completely unrelated to the underlying facts of the case? Shall courts require governors and presidents to testify about their thoughts behind each and every press conference and press release? Is the public ready to endure the invasion into the deliberative process of government officials that would come from requiring such testimony? What about the chilling effect that likely will arise when top public servants learn that they can be required to give testimony about comments they made a decade later? The Court should reconsider any decision to have Former Mayor Emanuel testify live in light of issues such as these.

III.     *Other Considerations Should Bar The Testimony of Former Mayor Emanuel.*

Defendants raised several other arguments to bar the testimony of Former Mayor Emanuel, including the following:

A) that even if the statements themselves should come in, the need for the live testimony of former Mayor Emanuel is minimal. No one is contesting that Former Mayor Emanuel made the videotaped statements that he made. No one is questioning foundation for the statements. The statements speak for themselves. Defendants expect that Former Mayor Emanuel would testify similar to the interrogatory answers he gave on the subject: that he did not possess any special knowledge when noting the code of silence existed in at least some instances, and that he in no way meant to suggest that the code of silence was widespread, and that he had no belief that it was applicable to most officers, and that the fact that at least some officers have not reported wrongdoing or attempted to cover it up does not mean that it happens every time or even most of the time. See Defendant City of Chicago's Response to Plaintiff's Interrogatories to Mayor Emanuel, attached as Exhibit A, at No. 2 and 8. It is unclear to Defendants why the statements themselves, either paired with Former Mayor Emanuel's interrogatory answers explaining his statements or just on their own, would not suffice. It is also unclear why it would not be an option for Former Mayor Emanuel to provide a stipulation or further answers to interrogatories, subject to the disclosure and other arguments made above.

B) Defendants also raised a number of arguments under FRE 401 and 403, including, but not limited to, the statements having little to no relevance to the state of affairs in 2018 or a code of silence as to the use of excessive force against children 0-14 and the prejudice to Defendant Officers in having a former mayor paraded before a jury on matters that have nothing to do with them.

Defendants respectfully request clarification and/or reconsideration as to whether the Court has ruled on these arguments against the potential testimony of Former Mayor Emanuel.

IV.     *Plaintiffs' Subpoena And News Stories On The Subpoena Raise Concerns of Prejudice and Fairness.*

Plaintiffs have issued a subpoena for Former Mayor Emanuel to testify on the date certain on February 3, 2026. See Exhibit B (subpoena copy). It is baffling to Defendants that Plaintiffs have done this for multiple reasons. First, the Court has urged the parties to work together on trial issues in general, but also specifically as to the scheduling of witnesses – something Defendants stand ready to do. It should have been plain against that backdrop that a subpoena was at best premature and at least subject to the witness's availability, as it has been for every other witness. Indeed, every other time Defendants have expressed that a witness may have a scheduling issue – including for the Individual Defendants actually accused of misconduct in this lawsuit – Plaintiffs have been agreeable to working with their schedules. And yet, here come Plaintiffs seeking to invoke the power of this Court to compel Former Mayor Emanuel's testimony. Second, in issuing the subpoena, Plaintiffs have not sought to accommodate the busy schedule of Former Mayor Emanuel to ask when he is potentially available to testify, even after they were told that he had an extremely busy schedule. Instead, they appear to be seeking to have him be the first witness in a trial that is likely to take three or more weeks. This suggests an inauspicious start to the parties' ability to cooperate as to the scheduling of witnesses. Rather, it suggests trial by ambush. Fourth, this move shows that Defendants' concerns about Plaintiffs seeking to use former Mayor Emanuel's testimony for more than the limited probative value it may offer are well-founded.

Shortly after Plaintiffs issued the subpoena, WTTW ran a news story about it that was riddled with bias and inaccuracies. See https://news.wttw.com/2026/01/29/rahm-ordered-testify-about-cpd-s-code-silence-during-trial-over-botched-raid (last checked January 29, 2026). The WTTW news story begins: "A federal judge has ordered former Mayor Rahm Emanuel to testify next week in an upcoming trial about allegations that a 'code of silence' among Chicago Police Department officers led to a botched August 2018 raid of a Back of the Yards apartment that violated the civil rights of a

family with four children." The Court had not ordered Former Mayor Emanuel to testify "next week." Plaintiffs have issued a subpoena for that testimony. The article proceeds to quote, across about a dozen paragraphs, the allegations Plaintiffs have made, but almost none of the Defendants' defenses. It characterizes the case as a "botched raid" even though the Court has ruled that the underlying search warrant is valid. It quotes the COPA report, something that the Court has agreed at the insistence of both parties should not be part of the case. It talks about a former defendant who has been cleared of wrongdoing.  In short, it is the very sort of prejudicial publicity that Defendants sought to avoid with their Motion in limine No. 51. The Court denied that motion, saying, "At this juncture, I have no basis for concern about the compromise of fairness of this proceeding. Obviously if some issues arise in that regard during the course of the trial, I'll endeavor to address that." See Transcript of January 15, 2026 pretrial conference, attached as Exhibit C, at p. 58.

This article is a prime example of that issue. There can be no reasonable doubt that a member of Plaintiffs' legal team alerted the reporter to the subpoena of Former Mayor Emanuel. As a result, just before the parties are scheduled to pick a jury, lo and behold there is a story with information biased toward Plaintiffs, with information that the Court has barred, and with incorrect information. A second story has been published by the Chicago Sun-Times about the potential testimony of Former Mayor Emanuel. https://chicago.suntimes.com/politics/2026/01/29/former-mayor-rahm-emanuel-could-be-on-the-hook-to-testify-about-cpds-code-of-silence-in-federal-trial (last checked January 29, 2026). It is likely more will follow, and there will be an increased media presence on both February 2, 2026 and February 3, 2026.

As a result, Defendants respectfully request the Court reconsider its ruling denying their Motion in Limine No. 37.

## CONCLUSION

WHEREFORE, Defendants respectfully request this Honorable Court reconsider any ruling to the extent it would require former Mayor Emanuel testify in this matter, and reconsider its denial of Defendants' Motion in Limine No. 37, and for any other such relief as the Court deems appropriate and just.

Respectfully submitted,

CITY OF CHICAGO,

By: /s/ *Marion C. Moore*
Chief Assistant Corporation Counsel

Marion C. Moore, Chief Assistant Corporation Counsel
Raoul Vertick Mowatt, Assistant Corporation Counsel Supervisor
Maxwell Lisy, Assistant Corporation Counsel Supervisor
Simerdeep Kaur, Assistant Corporation Counsel
City of Chicago, Department of Law
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
312.744.5170
Atty No. 6302566
**Attorneys for Defendant City**

DEFENDANT OFFICERS,

By: /s/ *Larry S. Kowalczyk*
Assistant Corporation Counsel

Larry S. Kowalczyk, Special Assistant Corporation Counsel
Megan K. Monaghan, Special Assistant Corporation Counsel
Mohan Groble Scolaro P.C.
55 W. Monroe, Suite 1600
Chicago, IL 60603; (312) 422-9999
**Attorneys for Defendant Officers**