# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL A. LAPORTA, as Guardian of the estate and person of Michael D. LaPorta, a disabled person, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, a municipal corporation, PATRICK KELLY; GORDON LOUNGE, INC, d/b/a BREWBAKERS; RUTH G., INC., d/b/a McNALLY's <br><br> Defendants. | Case No.: 14 C 9665 <br><br> Judge Leinenweber |

**DEFENDANT CITY OF CHICAGO'S RESPONSE TO PLAINTIFF'S INTERROGATORIES TO MAYOR RAHM EMANUEL**

Defendant City of Chicago ("City"), by its attorney, Stephen R. Patton, Corporation Counsel of the City of Chicago, hereby submits responses to Plaintiff's Interrogatories to Mayor Rahm Emanuel, based on his personal knowledge, as follows:

**RESPONSES TO INTERROGATORIES**

**Interrogatory No. 1:** State the full name, employer, title, and address of the person or persons who helped in the preparation of any answers herein, providing their name and employment title or position.

**Answer:** Naomi Avendano, Managing Deputy Corporation Counsel, Steffanie Garrett, Deputy Corporation Counsel, and Jessica Higgins, Deputy Chief of Staff, assisted in the preparation of these responses.

**Interrogatory No. 2:** You used the term "code of silence" in a speech to the City Council on December 9, 2015 (a copy of the speech is attached hereto as <u>Exhibit A</u>, RB LaPorta 828-837). (a) Please define and explain what you meant by the term/phrase/words "code of silence" in that speech. (b) Please explain the basis for your statements in your December 9, 2016 speech that a

"code of silence" exists and has existed in the Chicago Police Department, a transcript of which is attached as **Exhibit A**. In answering, please identify how and from whom you learned of the basis for these statements.

**Answer:** The City objects to this interrogatory because the term "basis" is vague and ambiguous. Subject to and without waiving the foregoing objection, Mayor Emanuel states:

I explained what I meant by the term "code of silence" immediately after I first used that term in my speech: "The problem is sometimes referred to as the Thin Blue Line. The problem is other times referred to as the Code of Silence. It is the tendency to ignore; it is the tendency to deny; it is the tendency in some cases to cover-up the bad actions of a colleague or colleagues. No officer should be allowed to behave as if they are above the law just because they are responsible for upholding the law. Permitting and protecting even the smallest acts of abuse by a tiny fraction of our officers leads to a culture where extreme acts of abuse are more likely, just like what happened to Laquan McDonald." As suggested in my speech, I do not believe that this term and the phenomenon it describes are limited to the Chicago Police Department or even to police in general. I believe that the reluctance of individuals to "tell" or "rat" on one of their coworkers and the corresponding inclination to support the "story" of a coworker who is accused of wrongdoing can, and probably does, occur in all kinds of settings.

The basis for this statement was my own general belief and understanding. It was not based on any special knowledge or information unique to me, or even knowledge or information I've gained as Mayor. Nor was it based on any investigation or report. I felt it was important that I acknowledge publicly a generally held belief that has been talked about in public culture and the media for many years, that officers sometimes do not report or attempt to cover up the bad actions of their colleagues. The fact that at least some officers, on some occasions do not report or attempt to cover-up wrongdoing, does not mean that it happens every time or even most of the time. But

2

as I stated in my speech, permitting and protecting even the smallest acts of abuse by a tiny fraction of our officers leads to a culture where extreme acts of abuse are more likely and public trust is undermined.

**Interrogatory No. 3:** (a) Are you familiar with the term the "blue shield" as used in the context when hearing a discussion about police officers or police departments in the City of Chicago? (b) If your answer to 3(a) is yes, do you believe the "code of silence" and/or "blue shield" can be used interchangeably? (c) If your answer to 3(b) is no, please define what you mean or understand the term "blue shield" to mean, as used in the context as defined in 3(a) above.

**Answer:** No, I am not familiar with the term "blue shield."

**Interrogatory No. 4:** Did you, Mayor Emanuel, give the December 9, 2106 [sic] speech, a transcript of which is attached as **Exhibit A**, in your official capacity?

**Answer:** The City objects to this interrogatory because the term "official capacity" is vague and undefined and because it seeks a legal conclusion. Subject to and without waiving the foregoing objections, Mayor Emanuel states:

Yes.

**Interrogatory No. 5:** Who wrote this specific language of The Paragraph in your December 9, 2015 speech, a copy of which is attached as **Exhibit A**? Please identify all individuals who comprise a part or all of this answer, providing their name and employment title or position.

**Answer:** Steven Silver, whose title was "speechwriter," drafted the December 9, 2015 speech, with input from others, including members of my staff. Steven was the person I dealt with in reviewing and editing the speech. I do not know the author of every paragraph in the speech, including the paragraph this interrogatory references.

**Interrogatory No. 6:** Do you vouch for the accuracy of the words in The Paragraph of your December 9, 2015 speech, a transcript of which is attached as **Exhibit A**?

**Answer:** The City objects to this interrogatory because the term "accuracy" is vague and undefined and ambiguous as used in this interrogatory. Subject to and without waiving the foregoing objections, Mayor Emanuel states:

The words accurately reflect my opinion on the subject. Please see my answer to Interrogatory 2 above.

**Interrogatory No. 7:** Did you say these words in The Paragraph of your December 9, 2015 speech, a transcript of which is attached as **Exhibit A**, because you believed the words to be true?

**Answer:** Yes. Please see my answer to Interrogatory 2 above.

**Interrogatory No. 8:** When you used the term "code of silence" in your City Hall speech from December 9, 2015, you were referring to a "code of silence" in the Chicago Police Department, correct? If you were not referring to a code of silence in the Chicago Police Department, please identify or explain why you included the paragraph in your speech?

**Answer:** Yes, I was acknowledging that I believe that the code of silence exists within the Chicago Police Department, at least in some instances, with some officers. I did not state, nor do I believe, that the code of silence is unique to CPD, or even to police officers in general, or that as to CPD it applies to all or even most officers. Please see my answer to Interrogatory 2 above.

**Interrogatory No. 9:** When you used the term "code of silence" in your City Hall speech from December 9, 2015, a copy of the transcript of which is attached as **Exhibit A**, you did not specify a time period as to how far back the "code of silence" existed. Are you familiar as to when the "code of silence" you referenced in your speech, and more specifically, The Paragraph, began to exist within the Chicago Police Department? If your answer is yes, please state when you believe it began to exist within the Chicago Police Department and please identify any examples or explanations that form the basis for this belief.

**Answer:** The City objects to this interrogatory to the extent it assumes that Mayor Emanuel has personal knowledge regarding actions taken by other individuals over an undefined, vague and overbroad time period. Subject to and without waiving the foregoing objections, Mayor Emanuel states:

4

No.

**Interrogatory No. 10:** Will you accept as true that in 2007 and prior, there was a longstanding belief by members of Chicago's City Council that there existed a "code of silence" within the Chicago Police Department?

**Answer:** The City objects to this interrogatory because the term "longstanding belief by members of Chicago's City Council" is vague and undefined and because it seeks a legal conclusion. The City also objects to this interrogatory because it assumes that Mayor Emanuel has personal knowledge regarding beliefs of unidentified persons over an overbroad and undefined period of time. Subject to and without waiving the foregoing objections, Mayor Emanuel states:

No, I do not accept that as true, and to my knowledge, the City Council never stated, let alone endorsed or condoned, such a belief.

**Interrogatory No. 11:** Will you accept as true that in 2011 and prior, there was a longstanding belief by members of Chicago's City Council that there existed a "code of silence" within the Chicago Police Department?

**Answer:** The City objects to this interrogatory because the term "longstanding belief by members of Chicago's City Council" is vague and undefined and because it seeks a legal conclusion. The City also objects to this interrogatory because it assumes that Mayor Emanuel has personal knowledge regarding beliefs of unidentified persons over an overbroad and undefined period of time. Subject to and without waiving the foregoing objections, Mayor Emanuel states:

No, I do not accept that as true, and to my knowledge, the City Council never stated, let alone endorsed or condoned, such a belief.

**Interrogatory No. 12:** Does there exist any training, guidelines, general orders, memorandums, legal opinions, directives or any other writings within the control of the City of Chicago or its police department which prohibit the code of silence? If your answer is yes, please identify all that you know of that exist.

5

**Answer:** The City objects to this interrogatory to the extent it assumes that Mayor Emanuel has personal knowledge regarding the "training, guidelines, general orders, memorandums, legal opinions, directives or any other writings within the control of the City of Chicago or its police department which prohibit the code of silence." The City further objects to this interrogatory to the extent that it asks about "legal opinions, directives or any other writings" that are protected by the attorney client and attorney work product privileges. The City further objects to the term "code of silence" in the context of this interrogatory as being vague and ambiguous. Subject to and without waiving the foregoing objections, Mayor Emanuel states:

I believe that there are training, guidelines, general orders, memorandums, legal opinions, directives and/or other writings within the control of the City or the CPD that prohibit the code of silence. I do not know and cannot identify what those specific training, guidelines, general orders, legal opinions, directives and other writings are. However, my general understanding is that there are rules or policies that prohibit false statements and false reports, and that require officers to report misconduct of other officers that they observe. My understanding is that officers who do not observe those rules face discipline up to and including discharge.

**Interrogatory No. 13:** Do you contend that the "code of silence" described in the "The Paragraph" of your December 9, 2015 speech did not exist prior to your taking office in May 2011. If you do so contend, please state every fact with specificity upon which you will rely to support that contention. Further answering, please identify in detail what evidence you have that there did **not** exist a "code of silence" within the City of Chicago Police Department in the:

(a) One year prior to your taking the Office of Mayor in May 2011.
(b) Five years prior to your taking the Office of Mayor in May 2011.
(c) Ten years prior to your taking the Office of Mayor in May 2011.

**Answer:** No. Please see my answers to Interrogatories 2 and 8 above.

**Interrogatory No. 14:** Please identify all the Chicago Police Department officers that have been made known to you who you know or believe to be a part of the code of silence that you referenced in your speech/comments of December 9, 2015, a copy of which is attached as Exhibit

6

A, or that support your statements that the code of silence or blue line and/or shield that you referenced exists.

**Answer:** I understand that certain officers involved in the Laquan McDonald shooting may have been participants in what people commonly refer to as a code of silence. This belief is based on my view of what the video shows and my understanding of what those officers stated in their official reports and statements. My understanding is that CPD recently reached that same conclusion and recommended discharge and/or other serious discipline as a result of that determination. I do not recall the names of the individual officers for whom discipline was recommended, other than Jason Van Dyke and Dave McNaughton.

I'm sure there are other police officers throughout the years who have been involved in misconduct that falls within the term "code of silence" as I described it in my speech, but I do not recall whether I learned their names, and if I did, I do not presently recall them.

**Interrogatory No. 15:** Please identify who (any and all CPD member, mayoral staff or City Council members) updated you on the officers and situations that supported your statements in your December 9, 2015 speech, a transcript of which is attached as **Exhibit A**, that a code of silence or blue shield exists in the Chicago Police Department.

**Answer:** The City objects to this interrogatory to the extent it assumes that Mayor Emanuel was "updated … on the officers and situations." The City further objects because the term "situations" is vague and undefined. Subject to and without waiving the foregoing objections, Mayor Emanuel states:

No one updated me on any particular officers or situations before I made the speech. Please see my answers to Interrogatories 2 and 8 above.

**Interrogatory No. 16:** Was any investigation conducted to support or ensure that the statements in The Paragraph of your December 9, 2015 speech, a transcript of which is attached as **Exhibit A**, were accurate? Identify every individual of CPD or City of Chicago office or

7

department that you, the Mayor, or member of your staff spoke with to verify the accuracy of the statements of The Paragraph.

**Answer:** The City objects to this interrogatory to the extent it assumes that Mayor Emanuel has personal knowledge regarding actions taken by other individuals. Subject to and without waiving the foregoing objection, Mayor Emanuel states:

No. Please see my answer to Interrogatory 2 above. As I explained there, I was publicly acknowledging a generally held belief and understanding that has been talked about in public culture and the media for many years.

**Interrogatory No. 17:** Please identify and [sic] all steps you have taken in response to your finding and statements that the code of silence and/or blue shield and/or Thin Blue Line exists within the CPD.

**Answer:** The City objects to this interrogatory because the term "your finding and statements" is vague, undefined and ambiguous. Subject to and without waiving the foregoing objections, Mayor Emanuel states:

I did not make or state any "findings" regarding the code of silence in my speech. As explained above in my answer to Interrogatory 2, I stated my own general belief and understanding.

The steps I have taken in response or relating to the statements in my speech regarding the code of silence include expressing my full support for efforts that CPD and IPRA have taken, and are taking, to identify officers who make false statements or reports or who fail to report the misconduct of other officers that they have witnessed. I also have taken and supported numerous steps in response to problems and/or public concerns with respect to CPD, including the code of silence. This includes the following:

8

- In 2013, I commissioned a blue-ribbon panel to review the City's police disciplinary system. The December 2014 report that resulted from that review, "Preventing and Disciplining Police Misconduct, An Independent Review and Recommendations Concerning Chicago's Disciplinary System," made recommendations that fell into two categories. The first set of recommendations were designed to prevent misconduct from occurring in the first place, primarily by focusing on education and training, making the consequences of misconduct more certain, and involving direct supervisors in preventing and detecting misconduct. The second category consisted of recommended improvements to the system for addressing misconduct when it does occur, including making that system more certain and transparent and reducing the time from complaint to resolution. My recollection is that by the one-year anniversary of the report, more than one-half of its recommendations had either been implemented or were in the process of being implemented. Since then, the City has continued to work to implement the report's recommendations.

- On December 1, 2015, I formed the Police Accountability Task Force ("PATF"), comprised of five leaders in the criminal justice system and police oversight, to perform a comprehensive review of CPD's existing systems, policies, and practices with respect to oversight, accountability, discipline, training, and transparency. The Task Force issued its report and numerous recommendations on April 13, 2016. CPD and other City departments and agencies are currently in the process of implementing those recommendations.

- Starting in December 2015, CPD instituted a zero tolerance policy for patrol officers who fail to properly engage the dashboard cameras in their vehicles.

- CPD expanded the use of body-worn cameras to several police districts, and recently announced that it will equip every officer in the Bureau of Patrol with a body-worn camera by 2018.
- I initiated the search for a new Superintendent to lead the work of changing the culture within the Police Department, which culminated in my selection of Eddie Johnson as that new Superintendent.
- Over the past several months, CPD, working with subject matter experts, drafted new use of force policies. Those draft policies were recently announced and posted online for comment by both CPD officers and the public. They provide clear direction for officers when the use of force is necessary, while placing a heavy emphasis on the sanctity of life. As part of Superintendent Johnson's commitment to building public trust and transparency, the department has instituted a 45-day public comment period to allow all Chicagoans to provide their input on the draft policy. In addition, the policy was made available internally to all department members for anonymous input regarding the policy revisions. At the end of the comment period, CPD Command Staff, as well as legal and technical experts, will review the feedback and draft a final version of the new policy. This represents the first time the department has sought public comment for a draft policy.
- I requested that a new police accountability ordinance be drafted and presented to City Council for approval. This new ordinance was passed on October 5, 2016. It implements the recommendations of the PATF and was the result of an unprecedented level of public input and community engagement. This included nine public hearings in neighborhoods across the City, as well as numerous meetings with a wide spectrum

of stakeholders, including civil rights attorneys, public interest groups, community activists, the police unions, and aldermen. The ordinance creates a new agency called the Civilian Office of Police Accountability ("COPA") to investigate allegations of serious police misconduct, and a new Deputy Inspector General for Public Safety, who will audit and oversee the City's entire police accountability system, including COPA, the Police Department, and the Police Board. The new investigative agency, COPA, will have expanded jurisdiction, including the power to investigate complaints concerning improper searches and seizures and denial of access to counsel, the power to investigate patterns and practices of misconduct and to make department-wide recommendations as to policy and training, and an expanded ability to reopen closed investigations in specified circumstances. The ordinance also imposes increased transparency, public engagement, and reporting obligations on the new agency, and provides it with additional, guaranteed funding and greater independence.

- The City worked with the PATF to develop, and the Independent Police Review Authority to implement, a new video release policy. This policy requires the release to the public of video and audio recordings, and various police reports, relating to all officer-involved shootings, officer-involved taser use that results in death or great bodily harm, and incidents of death or great bodily harm in police custody, within 60 days of the date of the incident.

**Interrogatory No. 18:** Please identify all general orders, rules, regulations, policies, procedures or directives you have sought to create within the City of Chicago prohibiting or managing the code of silence or blue shield.

**Answer:** The City objects to this interrogatory because the terms "managing" and "blue shield" are vague and undefined. Subject to and without waiving the foregoing objections, Mayor Emanuel states:

Creating, or seeking to create, general orders, rules, regulations, policies, procedures, or directives for CPD, or for that matter any other city Department, is not something that I do as Mayor, nor is it an area as to which I have experience or expertise. As to CPD, the Police Board, the Independent Police Review Authority, and soon the new Civilian Office of Police Accountability, are the entities that have the subject matter expertise to deal with those tasks, as well as any disciplinary matters relating to the code of silence. However, in my role as Mayor I have taken and supported a number of steps and initiatives to address the code of silence referenced in my speech, as well as other public concerns and problems with respect to the CPD. Please see my answer to Interrogatory 17 above.

**Interrogatory No. 19:** List what steps have been taken by the Chicago Police Department in response to officers within the CPD who have been deemed part of the "code of silence" and/or blue shield and/or Thin Blue Line that you reference in your speech attached as Exhibit A.

**Answer:** The City objects to this interrogatory because the term "blue shield" is vague and undefined, and to the extent it assumes that Mayor Emanuel has personal knowledge of actions taken by other individuals. Subject to and without waiving these objections, Mayor Emanuel states:

I am generally aware that CPD has rules and/or policies that prohibit officers from making false statements and preparing false reports, and requiring that officers report misconduct by other officers that they observe. My general understanding is that when those rules and/or policies are violated, CPD and IPRA can and do recommend discipline, including termination, to CPD or the Police Board.

As I mentioned in my answer to Interrogatory 14 above, I am also generally aware of the actions taken against officers involved in the Laquan McDonald shooting. I am also generally aware that other officers throughout the years have been disciplined for engaging in misconduct that falls within or relates to the "code of silence" as I used that phrase in my December 9, 2015 speech, although I do not recall the names of those officers or the discipline imposed. In addition, as discussed in my answer to Interrogatory 17 above, the City has taken, and is in the process of taking, numerous steps to address problems and concerns with respect to CPD, including the code of silence. Please refer to my answer to Interrogatory 17.

**Interrogatory No. 20:** State the name of the individual(s) within the Chicago Police Department in charge of training of officers from recruitment to enforcement regarding the rules, regulations and policies of the CPD regarding the code of silence and/or blue shield within the CPD. For each officer, please state:

(a) Their name,
(b) Their rank,
(c) Their star number.

**Answer:** The City objects to this interrogatory because the term from "recruitment to enforcement" is vague, undefined and overbroad. The City further objects to this interrogatory to the extent it assumes that Mayor Emanuel has personal knowledge regarding the training conducted within the Chicago Police Department. Subject to and without waiving the foregoing objections, Mayor Emanuel states:

Superintendent Eddie Johnson and his First Assistant, Kevin Navarro, have ultimate responsibility for all functions and aspects of the Police Department, including training. It is my understanding that Chief Anne Kirkpatrick and Deputy Chief Keith Calloway are directly responsible for training. Beyond that, I do not know the names of all of the individuals within CPD who are in charge of training officers, including those who are involved in training regarding rules, regulations, and policies related to the code of silence.

13

**Interrogatory No. 21:** Has any CPD officer(s) been reprimanded, suspended, separated and/or terminated from the CPD for conduct pertaining to the code of silence and/or blue shield within the CPD that you reference in your speech attached as Exhibit A in the past 10 years. For each officer identified in response to this Interrogatory, please state:

(a) Their name,
(b) Their rank,
(c) their star number,
(d) date of allegation which caused the reprimand, suspension or separation and/or termination;
(e) date of the reprimand, suspension, separations and/or terminations.

**Answer:** The City objects to this interrogatory to the extent it assumes that Mayor Emanuel has personal knowledge of the information requested. The City further objects because the time frame of this interrogatory is overbroad, and in the context of this interrogatory, the terms "code of silence and/or blue shield" are vague and undefined. Subject to and without waiving the foregoing objections, Mayor Emanuel states:

I am aware that the City has moved to terminate and/or suspend Officer Van Dyke and other officers involved in the Laquan McDonald shooting. I am also generally aware that other officers have been discharged, suspended, and/or otherwise disciplined for conduct pertaining to the code of silence, as I referenced that term in my speech. However, I do not recall whether I learned the names of any of those officers, or their star numbers, rank, or dates of any misconduct or discipline, and if I did, I do not presently recall them.

**Interrogatory No. 22:** In a press conference given on December 1, 2015, you stated that there were some "challenges" with regards to the City of Chicago's collective bargaining agreement with the Fraternal Order of Police. A copy is attached hereto as **Exhibit** C. Please define and explain what you meant with regard to these "challenges," and when these challenges in the bargaining process arose, identifying any examples or explanations forming the basis for your belief.

**Answer:** The City objects to this interrogatory because the term "challenges" is vague, undefined and ambiguous. Subject to and without waiving the foregoing objection, Mayor Emanuel states:

Counsel has provided me, and I have reviewed, the transcript of the December 1, 2015 press conference. I do not recall what I was referring to when I used the word "challenges" in the quoted statement from that press conference.

| | |
|---|---|
| Dated: November 4, 2016 | Respectfully submitted, |

<div style="margin-left: 50%;">

THE CITY OF CHICAGO

By:   /s/    *Eileen E. Rosen*
Eileen E. Rosen
Stacy A. Benjamin
James B. Novy
Theresa Berousek Carney
Rock Fusco & Connelly, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654
312.494.1000
312.494.1001- fax
eerosen@rfclaw.com

</div>

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Mayor Rahm Emanuel, verify under penalty of perjury,

That the foregoing interrogatory answers are true and correct to the best of my knowledge.

Executed on November 4, 2016

*[signature]*

Mayor Rahm Emanuel